IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SAMSUNG ELECTRONICS CO. LTD.,       )
SAMSUNG ELECTRONICS AMERICA, INC.,  )
SAMSUNG TELECOMMUNICATIONS          )
  AMERICA GENERAL, LLC,            )
SAMSUNG SEMICONDUCTOR, INC., and    )
SAMSUNG AUSTIN SEMICONDUCTOR LLC,   )
                                  )    C.A. No.  06-720 (***)
      Plaintiffs,                   )
                                    )    **REDACTED**
    v.                              )    **PUBLIC VERSION**
                                    )
ON SEMICONDUCTOR CORP. and          )
SEMICONDUCTOR COMPONENTS            )
INDUSTRIES, LLC,                    )
                                    )
      Defendants.                   )

## DEFENDANTS' REPLY BRIEF IN
## SUPPORT OF THEIR MOTION TO DISMISS

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs Louden (#2881)
Richard J. Bauer (#4828)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
klouden@mnat.com
  Attorneys for Defendants

OF COUNSEL:
Kenneth R. Adamo
JONES DAY
2727 North Harwood Street
Dallas, TX  75201-1515
(214) 220-3939

T. Gregory Lanier
Behrooz Shariati
JONES DAY
2882 Sand Hill Road, Suite 240
Menlo Park, CA  94025

Original Filing Date: January 22, 2007
Redacted Filing Date: January 29, 2007

i.

## TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF CITATIONS | iii |
| INTRODUCTION/SUMMARY OF ARGUMENT | 1 |
| ARGUMENT | 2 |
|    A.   Samsung Did Not Have An Objectively Reasonable Apprehension of Suit. | 2 |
|       1.   Samsung Has the Burden of Proof Here. | 2 |
|       2.   Samsung's Complaint Cannot Survive ON Semiconductor's Facial Attack To The Allegations Of Subject Matter Jurisdiction. | 4 |
|       3.   Samsung Had No Objectively Reasonable Apprehension of Suit. | 5 |
|          a.   There Was No Objectively Reasonable Apprehension Of Suit While Negotiations Continued. | 7 |
|          b.   Samsung Cannot Rely On Facts That Occurred After It Filed This Action To Establish An Objectively Reasonable Apprehension of Suit. | 9 |
|       4.   The Facts Of Record Demonstrate That Samsung Had No Objectively Reasonable Apprehension Of Suit. | 11 |
|          a.   The Uncontested Facts Show No Objectively Reasonable Apprehension. | 11 |
|          b.   Samsung's Declarations Are Insufficient To Carry Samsung's Burden. | 13 |
|             (i)   Samsung's Declarations Are Questionable On Their Face. | 14 |
|             (ii)   Samsung's Declarations Are Contradicted By ON Semiconductor's Rebuttal Evidence. | 15 |

ii.

<u>TABLE OF CONTENTS</u> (continued)

<u>Page</u>

     c.    Samsung's Own Evidence Shows That it Expected
More Negotiation, Not Litigation.    17

B.    Even If This Court Determines Reasonable Apprehension
Existed, It Should Exercise Its Discretion To Dismiss The
Action.    17

    1.    This Action Flaunts The Purposes Of The Declaratory
Judgment Act Because It Was Filed To Gain Leverage In
Ongoing Negotiations.    17

    2.    Allowing This Action To Proceed Would
Punish ON Semiconductor For Reasonably Pursuing
Negotiation Rather Than Litigation.    18

CONCLUSION    19

iii.

TABLE OF CITATIONS

Case(s)                                                                                                         Page(s)

*AngioDynamics, Inc. v. Diomed Holdings, Inc.,*
   No. 06-02-GMS, 2006 U.S. Dist. LEXIS 64214 (D. Del. Sept. 7, 2006)...................................3

*BP Chems. Ltd. v. Union Carbide Corp.,*
   4 F.3d 975 (Fed. Cir. 1993)........................................................................................................6, 7

*C.R. Bard, Inc. v. Schwarz,*
   716 F.2d 874 (Fed. Cir. 1983)......................................................................................................10

*Carpet Group Int'l v. Oriental Rug Importers Ass'n,*
   227 F.3d 62 (3d Cir. 2000).........................................................................................................3-4

*Clay Paky, S.p.A. v. Vari-Lite, Inc.,*
   No. 99-11401 (BSJ), 2000 U.S. Dist. LEXIS 9802 (S.D.N.Y. July 12, 2000).........................8

*Davox Crop. v. Digital Sys. Int'l, Inc.,*
   846 F. Supp. 144 (D. Mass. 1993) .............................................................................................18

*Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.,*
   297 F.3d 1343 (Fed. Cir. 2002)....................................................................................................2

*Dow Chem. Co. v. Exxon Chem. Patents,*
   No. 94-572-SLR, 1995 U.S. Dist. LEXIS 13888 (D. Del. Aug. 16, 1995) .................................4

*EMC Corp. v. Norand Corp.,*
   89 F.3d 807 (Fed. Cir. 1996).............................................................................................9, 17-18

*Epic Sys. Corp. v. Acacia Research Corp.,*
   No.06-255-JJF, 2006 WL 3355185 (D. Del. Nov. 16, 2006) ....................................................3

*Fairplay Elec. Cars, LLC v. Textron Innovations, Inc.,*
   431 F. Supp. 2d 491 (D. Del. 2006).............................................................................................9

*Fresenius USA, Inc. v. Transonic Sys., Inc.,*
   207 F. Supp. 2d 1009 (N.D. Cal. 2001) .......................................................................................8

*Goodyear Tire & Rubber Co. v. Releasomers, Inc.,*
   824 F.2d 953 (Fed. Cir. 1987)....................................................................................................10

*Indium Corp. of Am. v. Semi-Alloys, Inc.,*
   781 F.2d 879 (Fed. Cir. 1985).....................................................................................................6

*Ivoclar Vivadent, Inc. v. Hasel,*
   No. 02-CV-0316E(F), 2003 U.S. Dist. LEXIS 12611 (W.D.N.Y. June 30,
   2003) ............................................................................................................................................8

iv.

*Jervis B. Webb Co. v. Southern Sys., Inc.,*
    742 F.2d 1388 (Fed. Cir. 1984)................................................................4

*Livorsi Marine, Inc. v. Nordskog Publishing, Inc.,*
    268 F. Supp. 2d 994 (N.D. Ill. 2003) ...................................................7

*Matsushita Battery Indus. Co. v. Energy Conversion Devices, Inc.,*
    No. 96-101-SLR, 1996 U.S. Dist. LEXIS 8153 (D. Del. Apr. 23, 1996)...............18

*MedImmune, Inc. v. Centocor, Inc.,*
    409 F.3d 1376 (Fed. Cir. 2005)...............................................................9

*Metro Optics, Inc. v. Contex, Inc.,*
    No. 95-CV-2157-T, 1996 U.S. Dist. LEXIS 11081 (N.D. Tex. Mar. 14, 1996) ...........18

*Millennium Prods, Inc. v. Gravity Boarding Co., Inc.,*
    127 F. Supp. 2d 974 (N.D. Ill. 2000) .....................................................3

*Nokia Corp. v. Interdigital Comm'n,*
    No. 05-16-JJF, 2005 U.S. Dist. LEXIS 34899 (D. Del. Dec. 21, 2005)...................3

*Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha,*
    57 F.3d 1051 (Fed. Cir. 1995)..........................................5, 7, 8-9

*Rana v. Ashcroft,*
    112 Fed. Appx. 214 (3d Cir. 2004)........................................................15

*Rotec Indus. v. Mitsubishi Corp.,*
    215 F.3d 1246 (Fed. Cir. 2000)...............................................................15

*Shell Oil Co. v. Amoco Corp.,*
    970 F.2d 885 (Fed. Cir. 1992)............................................................5, 8

*Syngenta Crop Protection, Inc. v. Monsanto Co.,*
    No. 03-1062 (KAJ) (D. Del. Apr. 6, 2004) ...........................................10

*West Interactive Corp. v. First Data Resources, Inc.,*
    972 F.2d 1295 (Fed. Cir. 1992)...............................................................9

1.

## INTRODUCTION/SUMMARY OF ARGUMENT

Plaintiff Samsung Electronics Co. Ltd. ("Samsung") responds to the motion to dismiss of defendants ON Semiconductor Corp. and Semiconductor Components Industries, LLC (collectively "ON Semiconductor") by misstating the law and distorting the facts.

Samsung gets the law wrong by emphasizing the supposed *subjective* reactions of Samsung's Mr. Shim to the licensing offers made by ON Semiconductor to justify the filing of this action. Even if one believes, despite significant contrary evidence, that Mr. Shim was genuinely "flabbergasted," or that he found ON Semiconductor's license offers "outlandish" and "astonishing," it would still make no difference, because the controlling legal standard for apprehension is an objective one. The non-controverted facts in this case alone suffice to show Samsung did not have an *objectively* reasonable apprehension of suit by ON Semiconductor on November 30, 2006. Samsung also gets the law wrong in arguing that when facts supporting jurisdiction are in dispute, the Court should resolve them in favor of finding jurisdiction. When it comes to *subject matter* jurisdiction, particularly in the context of a declaratory judgment action, Samsung has the burden to show the existence of jurisdiction, a burden that it has failed to carry. Finally, Samsung's continued reliance on an event that occurred after Samsung filed this action – the later Texas action – is also misplaced and finds no support in the law.

Even if Samsung had stated the law correctly, which it did not, undisputed facts and Samsung's own documents show that Samsung had no reasonable apprehension of suit. Indeed, Samsung does not dispute that two days before Samsung filed this action, both parties confirmed that they preferred not to litigate and Mr. Shim said that he needed to convey ON Semiconductor's latest offer to his board in Korea and would contact ON Semiconductor again after he had done so. Samsung also does not dispute that it conveyed its first counteroffer only

after telling ON Semiconductor that it had filed this action, and offered to delay service of process in order to settle the matter. With regard to the disputed facts, Samsung's witnesses, including Mr. Shim, are far from credible and their testimony cannot be believed. Both Samsung witnesses claim under oath to have *first-hand* knowledge of meetings they *never* attended, and their statements about meetings that they did attend are squarely contradicted by the testimony and documentary evidence offered by other witnesses.

At the end of the day, neither Samsung's misstatements of the law, nor its attempted distortion of the facts, can carry Samsung's burden of proving that it had an objective, reasonable apprehension of being sued by ON Semiconductor on November 30, 2006. This case should be dismissed.

## ARGUMENT

### A.  Samsung Did Not Have An Objectively Reasonable Apprehension of Suit.

Samsung has failed to carry its burden to show that the Declaratory Judgment complaint, facially, or factually, establishes the legally requisite apprehension of suit for Samsung to have filed this action.

### 1.  Samsung Has the Burden of Proof Here.

Samsung incorrectly asserts that any evidentiary conflicts in ON Semiconductor's factual challenge to subject matter jurisdiction should be resolved in favor of jurisdiction. (D.I. 27 at 13.) Accordingly, Samsung claims to have won this motion merely by having submitted declarations contesting some of the facts averred in ON Semiconductor's declarations.[1]

---

[1]  Samsung attempts to support this proposition with a case discussing *personal* jurisdiction, *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1349 (Fed. Cir. 2002), and a case from the Northern District of Illinois, in
(continued . . .)

Samsung has the law wrong. It has the burden of establishing *subject matter* jurisdiction under both facial and factual challenges to the Court's subject matter jurisdiction. *Epic Sys. Corp. v. Acacia Research Corp.*,No. 06-255-JJF, 2006 WL 3355185, at *2 (D. Del. Nov. 16, 2006) (subject matter jurisdiction may be challenged both facially and factually, and "[o]nce the Court's subject matter jurisdiction over a complaint is challenged, *the plaintiff bears the burden of proving that jurisdiction exists*.") (emphasis added); *AngioDynamics, Inc. v. Diomed Holdings, Inc.*, No. 06-02-GMS, 2006 U.S. Dist. LEXIS 64214, at *6 (D. Del. Sept. 7, 2006) ("[D]eclaratory judgment plaintiff bears the burden of proving the existence of facts underlying its allegations of the existence of an actual controversy"); *Nokia Corp. v. Interdigital Comm'n*, No. 05-16-JJF, 2005 U.S. Dist. LEXIS 34899, at *4-5 (D. Del. Dec. 21, 2005) ("When a Court considers factual challenges to jurisdiction . . . the existence of disputed material facts will not preclude the court from evaluating for itself the merits of jurisdiction claims" and that "plaintiff has the burden of proof that jurisdiction does in fact exist.").

In a factual challenge to subject matter jurisdiction, "as opposed to an attack on the allegations on the face of the complaint, the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case." *Carpet Group Int'l v. Oriental Rug Importers Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000). In such a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and . . . the burden of proving the existence of subject matter jurisdiction lies with the plaintiff." *Id.* "The existence of disputed material facts will not preclude the trial

---

(. . . continued)
    which the court noted that it applied the guidance of a *personal* jurisdiction case to one involving subject matter jurisdiction because no other authority had been cited to it, *Millennium Prods, Inc. v. Gravity Boarding Co., Inc.*, 127 F. Supp. 2d 974, 979 (N.D. Ill. 2000). Particularly in view of the subject matter jurisdiction cases ON Semiconductor cites herein, the cases cited by Samsung are inapposite.

court from evaluating for itself the merits of jurisdictional claims." *Id*; *see also Jervis B. Webb Co. v. Southern Sys., Inc.*, 742 F.2d 1388, 1399 (Fed. Cir. 1984) (explaining where "the declaratory defendant (patentee) has denied the factual allegations that allegedly support the existence of the case or controversy, the declaratory plaintiff must prove the existence of facts underlying such allegations"). Indeed, this Court has specifically held that where a factual challenge is made to the court's jurisdiction in a declaratory action, "it is plaintiff's burden to establish jurisdiction by the preponderance of the evidence" with "facts existing at the time the complaint under consideration was filed." *Dow Chem. Co. v. Exxon Chem. Patents*, No. 94-572-SLR, 1995 U.S. Dist. LEXIS 13888, at *17 (D. Del. Aug. 16, 1995).

The weight of the precedent places the burden of proof on Samsung. Unlike baseball, in a factual dispute over subject matter jurisdiction, the tie does not go to the runner.

> 2. Samsung's Complaint Cannot Survive ON Semiconductor's Facial Attack To The Allegations Of Subject Matter Jurisdiction.

Samsung incorrectly asserts that ON Semiconductor's motion to dismiss only raises a factual challenge (D.I. 27, at 13), when it in fact squarely challenges the sufficiency of the allegations of the complaint on their face to support subject matter jurisdiction. (*See* D.I. 15 at 15 ("None of Samsung's allegations, even if accepted as true, amount to an actual controversy . . . .").) Even accepting the factual allegations of the complaint as true, they do not support a reasonable apprehension of suit.

As Samsung admits, it has only alleged that:

> (1) Defendants accused SEC of infringing the '594, '644, and '001 patents; (2) Defendants demanded that SEC license the patents for exorbitant sums of money; (3) Defendants informed SEC that they will not go away unless SEC enters into a patent license with Defendants; and (4) SEC informed Defendants that it will not pay Defendants the exorbitant sums they are seeking.

(D.I. 27 at 13, fn 3.)  As explained in ON Semiconductor's opening brief, a mere accusation of infringement does not create a reasonable apprehension. (D.I. 15 at 16-17.)  Moreover, Samsung has not alleged that ON Semiconductor threatened suit if Samsung did not pay "exorbitant sums of money," only that Defendants initially sought such sums.  (D.I. 27 at 13, fn 3.)  Similarly, Samsung has not alleged that Samsung said it would not license the patents, only that it would not do so for "exorbitant sums." (*Id.*)  In short, all Samsung has alleged is that Samsung rejected an initial license offer, but has not alleged, nor can it allege, that the negotiations had concluded or that there was no possibility that the parties would consider further offers or counteroffers. The Federal Circuit has recognized that "to create an actual controversy there must be more than ongoing license negotiations." *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1053 (Fed. Cir. 1995).  In fact, it has explicitly held that rejection of an initial offer during a negotiations does not create a reasonable apprehension. *See Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 889 (Fed. Cir. 1992).  Samsung has cited no authority that the size of an opening offer in and of itself can create a reasonable apprehension.

> 3.   Samsung   Had   No   Objectively   Reasonable
>      Apprehension of Suit.

Samsung's witness, Mr. Shim, sets out a litany of personal fears and apprehensions he allegedly felt because of ON Semiconductor's demand for "outrageous and unacceptable" sums of money (D.I. 29 ¶ 6) and ON Semiconductor's purported "patent troll" tactics  (*id.* at ¶ 5).  Specifically, Mr. Shim claims he was "shocked that [ON Semiconductor] would make such an unreasonable offer" (*id.*), was "flabbergasted" by ON Semiconductor's second offer (*id.* at ¶ 9), and found that offer "astonishing" (*id.*).  Mr. Shim's reliance on a thesaurus does not change the fact that, even if he were to be believed, his supposed personal inner turmoil and strong reaction to these offers have no legal significance.  Even Samsung does

not, and indeed cannot, dispute that Samsung must show apprehension under an "objective [test] – reasonable apprehension, like other jurisdictional prerequisites, must exist at the time suit is filed." *Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 883 (Fed. Cir. 1985) (dismissing a declaratory judgment action for lack of subject matter because "although [declaratory plaintiffs'] apprehension may have been real, we do not agree that it was reasonable on the present record") (citation omitted). The Federal Circuit has emphasized that for such reasonable apprehension to exist, "[t]here must *be action by the patent holder* sufficient to create an *objectively reasonable* apprehension that suit will be brought against the declaratory plaintiff." *Philips Plastics*, 57 F.3d at 1053 (emphasis added); *see also BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977, 979 (Fed. Cir. 1993) ("The element of threat or reasonable apprehension of suit turns on the conduct of the patentee . . . . Indeed, it is the objective words and actions of the patentee that are controlling."). "[A] purely subjective apprehension of an infringement suit is insufficient to satisfy the actual controversy requirement." *Indium Corp.*, 781 F.2d at 883.

Mr. Shim's subjective reaction to a licensing offer he says he considered too high, but had not even attempted to counter, does not meet this requirement. Samsung has cited no authority that it can satisfy its burden of establishing jurisdiction by pointing to a supposedly "exorbitant" offer for a patent license. Moreover, the Court need not simply accept Samsung's word as to the reasonableness of ON Semiconductor's offer. As Samsung itself points out, ON Semiconductor had proposed a ███████████████████████████████████

████████████████████████████████████████████████

████████ (D.I. 27 at 23.) Samsung's bald assertion that ON Semiconductor's offer was "exorbitant" does not prove that it was; nor does it demonstrate that even exorbitant offers, standing alone, give rise to an objectively reasonable apprehension of suit.

Nor does Mr. Shim's purely subjective belief that the parties were "too far apart to reach a settlement" (D.I. 27 at 10,17) satisfy the reasonable apprehension requirement. At the time Mr. Shim purportedly formed this conclusion, Samsung could not have possibly known how ON Semiconductor would have reacted to a counteroffer it had not yet made. Samsung does not dispute that first offers in negotiations are often rejected. (D.I. 17 ¶ 12.) Samsung's speculation as to how ON Semiconductor *might* have responded to a counteroffer that Samsung *may* have been *contemplating* but had not yet communicated (Shim ¶ 12), is far from objectively reasonable. *See Philips Plastics*, 57 F.3d at 1053-54 ("The 'reasonable apprehension of suit' test requires more than the nervous state of mind of a possible infringer; it requires that the objective circumstances support such an apprehension."); *BP Chems.*, 4 F.3d at 977 ("The controversy must be actual, not hypothetical or of uncertain prospective occurrence.").

        a.      There Was No Objectively Reasonable Apprehension Of Suit While Negotiations Continued.

Contrary to Samsung's current litigation position, the evidence here shows that the licensing negotiations were ongoing when Samsung filed its declaratory judgment action. Even the September 6, 2006 letter from ON Semiconductor that mentions "other paths to enforce [ON Semiconductor's] legal rights and remedies" goes on to assure Samsung that negotiations would continue as long as Samsung continued to participate in licensing discussions. (D.I. 17, Ex. 9.) Indeed, Samsung continued to participate in licensing discussions *even after* it filed this action, by presenting its first offer under the "protection" of this lawsuit (D.I. 29 ¶ 13). *See Philips Plastics*, 57 F.3d at 1053 ("When there are proposed or ongoing license negotiations, a litigation controversy normally does not arise."); *Livorsi Marine, Inc. v. Nordskog Publishing, Inc.*, 268 F. Supp. 2d 994, 998 , (N.D. Ill. 2003) (finding negotiations ongoing because "neither party had expressly rejected all possibility of a license at the time [declaratory plaintiff] filed this action");

*Fresenius USA, Inc. v. Transonic Sys., Inc.*, 207 F. Supp. 2d 1009, 1012 (N.D. Cal. 2001) (holding it was "objectively unreasonable" for plaintiff to fear imminent suit while negotiations were ongoing even though there was "an underlying threat that [patentee] would litigate if negotiations failed").

The only cases that Samsung cites to rebut this principle, both district court cases from the Second Circuit, are readily distinguishable. *See Ivoclar Vivadent, Inc. v. Hasel*, No. 02-CV-0316E(F), 2003 U.S. Dist. LEXIS 12611 (W.D.N.Y. June 30, 2003); *Clay Paky, S.p.A. v. Vari-Lite, Inc.*, No. 99-11401 (BSJ), 2000 U.S. Dist. LEXIS 9802 (S.D.N.Y. July 12, 2000). In both of these cases, the patentee dragged the declaratory judgment plaintiff into negotiations by sending pre-negotiation letters that threatened suit. *Ivoclar*, 2003 U.S. Dist. LEXIS 12611, at *17, 19-20 (finding a reasonable apprehension of suit existed during ongoing negotiations based on the "threatening language contained within [patentee's notice] letter . . . it was reasonable for Ivoclar to interpret the letter as a threat . . . ."); *Clay Paky*, 2000 U.S. Dist. LEXIS 9802, at *13 (finding a reasonable apprehension of suit existed during ongoing negotiations where "defendant's first letter . . . clearly threatened litigation"). As a result, in both cases, the negotiations were clouded at the outset by a threat of imminent suit that was never dispelled. *Ivoclar*, 2003 U.S. Dist. LEXIS 12611, at *22; *Clay Paky*, 2000 U.S. Dist. LEXIS 9802, at *15. This is not the case here; even Samsung does not claim that it was dragged into negotiations under the explicit threat of a lawsuit.

As the Federal Circuit has held, once negotiations commence, many "alleged 'charges of infringement [ar]e merely 'jawboning which typically occurs in licensing negotiations," *Shell Oil*, 970 F.2d at 889, and that "proposed or ongoing license negotiations" in themselves are insufficient to ground declaratory judgment jurisdiction. *Philips Plastics*, 57 F.3d at 1053 ("[T]o

create an actual controversy, there must be more than ongoing license negotiations.")).  This is because all licensing negotiations necessarily involve some threat of litigation.  *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 811 (Fed. Cir. 1996) ("To be sure, any time parties are in negotiation over patent rights, the possibility of a lawsuit looms in the background. . . .  The threat of enforcement . . . is the entire source of the patentee's bargaining power.").

        b.      **Samsung Cannot Rely On Facts That Occurred After It Filed This Action To Establish An Objectively Reasonable Apprehension of Suit.**

Recognizing that the licensing negotiations between the parties do not support an objectively reasonable apprehension, Samsung relies heavily on the later filing of the Texas Action as justification for filing this suit.  Samsung, once again, has the law wrong.  It is well established under Federal Circuit law that facts that occur after a declaratory judgment suit is initiated cannot be used to establish an objectively reasonable apprehension of suit.  *West Interactive Corp. v. First Data Resources, Inc.*, 972 F.2d 1295, 1297 (Fed. Cir. 1992) (refusing to consider a subsequent filed suit by patentee for reasonable apprehension "[b]ecause this court examines [a] declaratory judgment action at the time of its filing, [patentee's] subsequent action is irrelevant"); *see also MedImmune, Inc. v. Centocor, Inc.*, 409 F.3d 1376, 1381 (Fed. Cir. 2005) ("[T]he presence or absence of a case or controversy is based on facts at the time the complaint was filed.") (citing *GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 483 (Fed. Cir. 1996) ("Later events may not create jurisdiction where none existed at the time of filing.")); *Fairplay Elec. Cars, LLC v. Textron Innovations, Inc.*, 431 F. Supp. 2d 491, 493 (D. Del. 2006) (finding declaratory judgment plaintiff "cannot rely on [a] letter to establish reasonable apprehension, because the letter was sent after the instant lawsuit was filed").

Samsung, ironically, relies upon two Federal Circuit cases that in fact are in accordance with this rule, in an attempt to circumvent it. In both *C.R. Bard, Inc. v. Schwarz*, 716 F.2d 874, 881 (Fed. Cir. 1983) and *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 955-56 (Fed. Cir. 1987), the Federal Circuit held that the declaratory judgment plaintiff had a reasonable apprehension of suit based on events that had occurred *prior to filing*. In both cases, the Court considered post-suit statements by the patentees only to illustrate that the patentees' affidavits could not preempt the Court's finding of reasonable apprehension after the fact. *C.R. Bard*, 716 F.2d at 881 (citing counsel's post-suit statements to discount patentee's argument that pre-suit events showing reasonable apprehension were "negligible in light of the affidavit he signed"); *Goodyear*, 824 F.2d at 956 (citing counsel's post-suit statements to demonstrate the district court's improper reliance on an affidavit by the patentee's president, which asserted that a suit had never been expressly authorized).

Furthermore, contrary to Samsung's assertion, Judge Jordan's oral opinion in *Syngenta Crop Protection, Inc. v. Monsanto Co.*, No. 03-1062 (KAJ) (D. Del. Apr. 6, 2004), is consistent with this precedent. (D.I. 27, Ex. 2). In *Syngenta*, Judge Jordan was "persuaded that there was a reasonable apprehension that [Syngenta] will be sued on these patents" based on the patentee's threats of suit, its contributions to an analyst's report suggesting that it was likely to sue, and the previous litigation history of the parties. *Id.* at 37-39. Judge Jordan only finally mentioned Monsanto's subsequent suit as confirmation that *Syngenta* had a reasonable apprehension before it filed suit based on *pre-suit* events. *Id.* at 39. ("[I]t only verifies that [the apprehension of suit] was not unreasonable."). By contrast, Samsung cannot demonstrate that it possessed an objectively reasonable apprehension of suit when it filed its original declaratory judgment action,

and thus, it cannot point to ON Semiconductor's infringement suit in Texas as confirming that Samsung reasonably apprehended suit, because there was nothing to confirm.

4.     The Facts Of Record Demonstrate That Samsung Had No Objectively Reasonable Apprehension Of Suit.

Samsung's failure to overcome the facial challenge to the complaint and its misguided reliance on the nonexistent principle that factual disputes should be resolved in favor of finding subject matter jurisdiction suffice to dismiss this case. If the Court chooses to examine the underlying facts, however, those facts further confirm that this action must be dismissed.

a.     The Uncontested Facts Show No Objectively Reasonable Apprehension.

Facts which Samsung has not contested, and many of which Samsung has itself actually confirmed, demonstrate that ON Semiconductor and Samsung were engaged in ongoing license negotiations and no objectively reasonable apprehension was created by ON Semiconductor's conduct. The uncontested facts include:

- There are no allegations of any prior litigation history between Samsung and ON Semiconductor.

- ON Semiconductor's pre-negotiation notice letters did not threaten suit. (D.I. 17, Exs. 1, 6.)

- At the time this suit was filed, ON Semiconductor and Samsung had been in negotiation for over a year regarding a license for the patents at issue. (*See* D.I. 17; D.I. 28.) Samsung continued the negotiations even after the suit was filed. (D.I. 28, Ex. 1 ¶¶ 16-17; D.I. 29, ¶¶ 12-13.)

12.

- ON Semiconductor made its first license proposal on August 16, 2006; Samsung's representatives, including Jay Shim, immediately rejected this offer. (D.I. 17 ¶¶ 11-12; D.I. 28, Ex. 1 ¶ 10; D.I. 29 ¶¶ 4-6; Second Botsch Dec. ¶ 7.) Such an initial rejection is common in licensing negotiations. (D.I. 17 ¶ 12.)

- Three days before Samsung filed this action, Samsung's representative Patrick Muir sent ON Semiconductor an e-mail stating that "[m]y understanding is that both parties agreed to make reasonable proposals at this next meeting [proposed for December 1, 2006]. I have not heard anything from Samsung to indicate that it has moved away from this agenda." (D.I. 17, Ex. 12.)

- Two days before Samsung filed this action, the parties both said they preferred not to litigate this matter. (D.I. 16 ¶ 4, D.I. 17 ¶ 22; *but cf.* D.I. 29 ¶10 (Mr. Shim states "I also never told [ON Semiconductor] or led them to believe Samsung would not file suit, and I never told them or led them to believe that Samsung was interested in continuing licensing discussions indefinitely until an agreement could be reached").) ON Semiconductor then made its second license offer, ███████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████ (D.I. 16 ¶ 5; D.I. 17 ¶ 22; D.I. 29 ¶ 9.) Samsung did not reject this offer or end negotiations. (D.I. 16 ¶ 6; D.I. 23 ¶ 23; D.I. 29 ¶ 10; Second Botsch Dec. ¶¶ 14-16; Second Cave Dec. ¶ 8.) To the contrary, Mr. Shim responded that he would get back to ON Semiconductor after speaking with Samsung management about this offer. (D.I. 16 ¶ 6; D.I. 23 ¶ 23; Second Botsch Dec. ¶ 15; Second Cave Dec. ¶ 8; *see also* D.I. 29 ¶ 10.)

- The day before Samsung filed this action, Mr. Shim called ON Semiconductor's Mr. Botsch and discussed a possible meeting on December 1, 2006. (D.I. 17 ¶ 25; D.I. 29 ¶ 11.)

- Samsung filed this action on November 30, 2006 "in order to protect itself." (D.I. 29 ¶12; D.I. 27 at 10; *see also* D.I. 16 ¶ 7). In the same call in which Mr. Shim advised Mr. Botsch that Samsung had filed this action, he said Samsung was withholding service of process in hopes of settling the matter, and also made Samsung's first counteroffer for a license of some of ON Semiconductor's patents. (D.I. 17 ¶ 25; D.I. 29 ¶ 13.)

As these uncontested facts alone show, the parties were engaged in serious and vigorous license negotiations. During these negotiations, ON Semiconductor had made the only concrete licensing offers to Samsung and Samsung was able to reject the first offer without fearing a suit. ON Semiconductor then presented a ███████ second offer after Samsung rejected the first offer and had pressed Samsung to make an offer in response. Mr. Shim does not deny that the parties expressed a *preference* for licensing over litigation; he only says that *Samsung* was not prepared to negotiate "indefinitely."

In sum, Samsung has presented no evidence, let alone objective evidence, that ON Semiconductor was about to file suit against Samsung; instead, Samsung relies on Mr. Shim's personal feelings as to the size of the offers presented by ON Semiconductor and his subjective belief that the parties were too far apart. At most, these facts demonstrate that negotiations were ongoing at the time Samsung filed this action. As ON Semiconductor explained in its opening brief (D.I. 15 at 17-18), and *supra*, the fact that negotiations were ongoing alone shows that there could be no objectively reasonable apprehension of suit, and hence no subject matter jurisdiction for a declaratory action.

                 b.    Samsung's Declarations Are Insufficient To Carry Samsung's Burden.

The uncontested evidence discussed *supra* sufficiently shows that this case should be dismissed. In addition, the declarations that Samsung submitted in an attempt to rebut the

14.

declarations of ON Semiconductor's witnesses either lack credibility or tend to support ON Semiconductor's account of the events.

(i)      Samsung's Declarations Are Questionable On Their Face.

Although each of Samsung's declarants, Mr. Muir and Mr. Shim, declares "under penalty of perjury" that the contents of the declarations are "true and correct" (D.I. 28 at p. 3; D.I. 28, Ex. 1 at p. 5; D.I. 29 at p. 5), each includes information about which he has no *first-hand knowledge*. Specifically, Mr. Muir describes a September 29, 2006 meeting he did not attend, as well as November 28 and 30, 2006 telephone calls (D.I. 28, Ex. 1 ¶¶ 13, 15, 17) in which he did not participate (*see* D.I. 16 ¶ 4; D.I. 17 ¶¶ 15, 21, 22, 25; D.I. 29 ¶¶ 7, 9, 13; Second Botsch Dec. ¶¶ 4, 5; Second Cave Dec. ¶ 3). Likewise, Mr. Shim describes the December 1, 2005 and February 15, 2006 meetings (D.I. 29 ¶ 4), even though he did not attend either meeting (D.I. 17 ¶ 4, 6; D.I. 28, Ex. 1 ¶¶ 4, 6; Polansky Dec. ¶ 5; Polansky Dec., Ex. 1 at p. 1). The willingness of both Mr. Muir and Mr. Shim to declare facts as to which they have no personal knowledge calls into question the veracity and reliability of Samsung's witnesses.

Further, Mr. Shim's declaration contains an important inconsistency. Mr. Shim states that after hearing ON Semiconductor's November 28, 2006 offer and invitation for a counteroffer, he "told Mr. Botsch and Mr. Cave that [he] would pass their offer along." (D.I. 29 ¶10). He further alleges that the reason for this was "[b]ecause I am required to report all offers back to Samsung." (D.I. 29 ¶ 10.) However, approximately three months earlier, after ON Semiconductor made its August 15, 2006 offer, Mr. Shim did not tell ON Semiconductor that he would pass its offer along but rejected it loudly and vehemently without consulting anyone else. (D.I. 29 ¶¶ 5-6; see also D.I. 17 ¶ 12; D.I. 28, Ex. 1 ¶ 10; Second Botsch Dec. ¶¶ 7, 15.) If Mr. Shim did report the August offer back to his management, he made no mention of this to ON

Semiconductor. (Second Botsch Dec. ¶ 16.) This casts doubt on Mr. Shim's assertion that purportedly the only reason he told Mssrs. Cave and Botsch that he needed to consult with his board is that he is "*required* to report *all offers* back to Samsung." (emphasis added).

Additionally, Mr. Muir states that during conversations with Mr. Botsch on November 21 and 27, 2006, Mr. Muir responded to the request that Samsung make the next offer in the negotiations by telling Mr. Botsch that "Samsung had no interest in negotiating against itself." (Muir Ex 1, ¶ 14.) As Samsung had not made any counter at the time, only ON Semiconductor could be negotiating against itself at that point.[2] (*See* D.I. 17; D.I. 28, Ex. 1; D.I. 29.)

These contradictions, particularly the statements allegedly made on personal knowledge and under penalty of perjury where the declarants did not attend the meetings in question, show less-than-rigorous attention to accuracy on the part of the witnesses and cast doubt on the veracity of their entire statements. *See, e.g., Rana v. Ashcroft,* 112 Fed. Appx. 214, 217 (3d Cir. 2004) (upholding a finding that a witness was not credible due to contradictory testimony); *Rotec Indus. v. Mitsubishi Corp.,* 215 F.3d 1246, 1256 (Fed. Cir. 2000) (district court properly excluded declaration evidence based on hearsay rather than personal knowledge).

           (ii)    Samsung's Declarations Are Contradicted By ON Semiconductor's Rebuttal Evidence.

ON Semiconductor's rebuttal declarations cast further doubt on the credibility of Samsung's witnesses. Mr. Botsch denies saying that ON Semiconductor "would select their litigation targets carefully" at the February 15, 2006 meetings (D.I. 17 ¶¶ 6-7), as alleged only by Mr. Muir (D.I. 28 ¶ 3; D.I. 28, Ex. 1 ¶ 7). Mr. Bostch's account is confirmed by the recollections

---

[2]      Indeed, ON Semiconductor specifically told Samsung in an email dated November 28, 2007 that "ON [Semiconductor] does not want to negotiate against itself." (D.I. 17, Ex. 12.)

and detailed contemporaneous meeting notes of Paul Polansky, another in-person meeting participant. (Polansky Dec. ¶¶ 6-8; Polansky Dec. Ex. 1.) Patent licensing "has been a significant part of [Mr. Polanksy's] practice for over ten years," and Mr. Polansky is "sensitive to words like 'litigation' during licensing negotiations." (Polansky Dec. ¶¶ 1, 7.) Not only does Mr. Polansky not remember "litigation" or related words being mentioned in the February meeting, but there is also no reference to such a word in the highly detailed, six pages of notes Mr. Polansky took during the meeting, despite Mr. Polansky's testimony that he believes he would have noted the use of such a word. (Polansky Dec. ¶ 7; Polanksy Dec. Ex. 1.)

Second, Mr. Botsch's description of the August 15, 2006 meeting is confirmed by the similar description of the meeting by another meeting participant, Peter Green. (Green Dec. ¶¶ 2-4.) Further, Mr. Botsch's description should be given more weight because Mr. Botsch gave a similar description of the meeting to Mr. Cave within an hour of the meeting. (Second Botsch Dec. ¶ 9; Second Cave Dec. ¶ 4.)

Finally, Mr. Botsch's statement that Mr. Shim told him "I want to give value to your patents" at the September 29, 2006 meeting merits more weight than Mr. Shim's denial of this statement, because Mr. Botsch reported this conversation, just as described in the declaration, twice shortly after it happened – once to Mr. Cave within an hour of the meeting, and again to Mr. Polansky about four days after the conversation. (Second Botsch Dec. ¶ 11; Second Cave Dec. ¶ 5; Polansky Dec. ¶ 10.)

As discussed *supra*, Samsung has the burden of proving facts to support the Court's jurisdiction by the preponderance of the evidence. Here, the uncontested evidence shows that negotiations were ongoing when Samsung filed this suit and it had no reasonable apprehension at the time. With regard to the disputed facts, Samsung offers the testimony of witnesses whose

credibility has been challenged, both by their own inconsistent statements, and by the testimony of ON Semiconductor's witnesses.  Even if the credibility of the witnesses were not at issue, at most, there is equal and opposite evidence on many of the key facts underlying Samsung's claim of reasonable apprehension.  This does not suffice for Samsung to carry its burden.

      c.  Samsung's Own Evidence Shows That it Expected More Negotiation, Not Litigation.

   Samsung's own evidence actually contradicts Mr. Shim's assertion that Samsung had an objective apprehension of being sued by ON Semiconductor.  Samsung's representative, Mr. Muir, wrote in his November 27, 2006 to ON Semiconductor's Brad Botsch: "My understanding is that both parties agreed to make reasonable proposals at this next meeting.  I have not heard anything from Samsung to indicate that it has moved away from this agenda." (D.I. 17, Ex. 12.) This email sent by Samsung's own representative only three days before Samsung filed this action supports Mr. Botsch's Declaration (D.I. 17 ¶ 25), contradicts Mr. Shim's (D.I. 29, ¶ 7), and demonstrates that Samsung anticipated more negotiation and was even expecting further concessions from ON Semiconductor.  This is not the posture of a party objectively, or even subjectively, apprehensive about being sued.  Samsung expected more negotiation, not a lawsuit.

     B.  Even If This Court Determines Reasonable Apprehension Existed, It Should Exercise Its Discretion To Dismiss The Action.

      1.  This Action Flaunts The Purposes Of The Declaratory Judgment Act Because It Was Filed To Gain Leverage In Ongoing Negotiations.

   The record demonstrates that Samsung filed this action as a strong-arm tactical measure to gain leverage in negotiations, which the Federal Circuit has held is grounds for a court to exercise its discretion to refuse to hear a declaratory case.  *EMC Corp.*, 89 F.3d at 815.

18.

Samsung's arguments that its actions accord with the purposes of the Declaratory Judgment Act are flawed. Samsung argues this case is an appropriate declaratory judgment case because Samsung was "[f]aced with Defendants' litigation threats and their refusal to put a reasonable offer on the table. . . ." (D.I. 27 at 23.) However, Samsung has failed to prove that ON Semiconductor threatened litigation, and has offered no evidence that ON Semiconductor's offers were "unreasonable" in light of industry standards and the stage of negotiations. Rather, as Samsung itself points out, ON Semiconductor had proposed a ███████████████████ ████████████████████████████████████████████████████ (*Id.*)

Further, ON Semiconductor has identified evidence that its proposed royalty rate is reasonable under industry standards. (Second Botsch Dec. ¶ 7.) Forcing ON Semiconductor to give Samsung a better licensing deal is not the proper use of the Declaratory Judgment Act, and this Court should not "encourage parties who [a]re negotiating with patentees to use the declaratory judgment procedure to improve their bargaining positions and to impede negotiations between patentees and other potential licensees or buyers." *EMC*, 89 F.3d at 810.

> 2.  Allowing This Action To Proceed Would Punish ON Semiconductor For Reasonably Pursuing Negotiation Rather Than Litigation.

Samsung makes no attempt to distinguish the cases demonstrating that courts dismiss declaratory judgment actions where a declaratory plaintiff has baited a patentee into believing negotiations are ongoing while secretly filing a declaratory action. *See Metro Optics, Inc. v. Contex, Inc.*, No. 95-CV-2157-T, 1996 U.S. Dist. LEXIS 11081, at *4-5 (N.D. Tex. Mar. 14, 1996); *Matsushita Battery Indus. Co. v. Energy Conversion Devices, Inc.*, No. 96-101-SLR, 1996 U.S. Dist. LEXIS 8153, at *9 (D. Del. Apr. 23, 1996); *Davox Crop. V. Digital Sys. Int'l, Inc.*,

846 F. Supp. 144, 148 (D. Mass. 1993). That is because it cannot; as its own newly submitted Declaration of Jay Shim demonstrates that this is exactly what Samsung did.

In particular, Mr. Shim admits that he waited almost 24 hours after learning that Samsung's management had rejected ON Semiconductor's latest offer and learned what Samsung's counteroffer would be to pass this information on to ON Semiconductor, even though Mr. Shim spoke to the board "[a]fter I hung up with Mr. Botsch." (D.I. 29 ¶ 12). More telling, Samsung used the intervening time to file this action, exactly when it knew that, far from preparing to sue Samsung, ON Semiconductor was awaiting Samsung's promised response to ON Semiconductor's latest offer.

Similarly, although Mr. Shim disingenuously states that he told ON Semiconductor that he needed to "pass their [November 26, 2006] offer along" to his management before responding "[b]ecause I am required to report all offers back to Samsung," (D.I. 29 ¶ 10), he needed no such prior approval before rejecting ON Semiconductor's August 15, 2006 offer (D.I. 29 ¶ 5-6). Indeed, it was reasonable for ON Semiconductor to view the difference in response to the two offers as an indication that Samsung was, at a minimum, going to present a counteroffer. Instead it appears that the purportedly necessary presentation of the offer to the board, as well as the discussion about a further meeting, were only stalling tactics so that ON Semiconductor would continue to believe that negotiations were ongoing until after Samsung had filed this declaratory judgment action. Rewarding this sort of subterfuge would discourage settlement and encourage the use of guerilla tactics used by Samsung.

<u>CONCLUSION</u>

For the foregoing reasons, Defendant ON Semiconductor's Motion to Dismiss should be granted.

20.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ *Karen Jacobs Louden (#2881)*

Karen Jacobs Louden (#2881)
Richard J. Bauer (#4828)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
klouden@mnat.com
Attorneys for defendants

OF COUNSEL:

Kenneth R. Adamo
JONES DAY
2727 North Harwood Street
Dallas, TX  75201-1515
(214) 220-3939

T. Gregory Lanier
Behrooz Shariati
JONES DAY
2882 Sand Hill Road, Suite 240
Menlo Park, CA  94025
(650) 739-3939

January 22, 2007

687465.2

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on January 29, 2007, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Josy W. Ingersoll
> John W. Shaw

I also certify that copies were caused to be served on January 29, 2007 upon the following in the manner indicated:

### BY HAND

> Josy W. Ingersoll
> John W. Shaw
> Andrew A. Lundgren
> YOUNG, CONAWAY, STARGATT & TAYLOR LLP
> The Brandywine Building
> 1000 West Street, 17th Flr.
> Wilmington, DE  19899

### BY FEDERAL EXPRESS

> John M. Desmarais
> James E. Marina
> KIRKLAND & ELLIS
> 153 East 53rd Street
> New York, NY  10022

> */s/ Karen Jacobs Louden*
> _____
> Karen Jacobs Louden
> klouden@mnat.com