IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAMSUNG ELECTRONICS CO. LTD, <br> SAMSUNG ELECTRONICS AMERICA, INC., <br> SAMSUNG TELECOMMUNICATIONS <br>   AMERICA GENERAL, LLC, <br> SAMSUNG SEMICONDUCTOR, INC., and <br> SAMSUNG AUSTIN SEMICONDUCTOR LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ON SEMICONDUCTOR CORP. and <br> SEMICONDUCTOR COMPONENTS <br> INDUSTRIES, LLC, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. 06-720 (***) <br> ) <br> ) **REDACTED** <br> ) **PUBLIC VERSION** <br> ) <br> ) <br> ) |

**SECOND DECLARATION OF BRADLEY J. BOTSCH**
**IN SUPPORT OF MOTION TO DISMISS**

Original Filing Date: January 22, 2007
Redacted Filing Date: January 29, 2007

SVI-42970v1

PUBLIC VERSION - REDACTED

I, Bradley J. Botsch, declare:

1.  I am the Vice President and Chief Intellectual Property Officer of Semiconductor Components Industries, LLC (hereafter "ON Semiconductor"). The following declaration is based on my personal knowledge. If called upon to testify, I could testify competently as to the matters set forth herein.

2.  This Declaration is submitted in response to the January 12, 2007 Declarations of Jay Shim and Patrick Muir, both of which I have read.

3.  Mr. Shim was not present at any of the meetings between ON Semiconductor and Samsung Electronics Co. Ltd. ("Samsung"), regarding licensing U.S. Patent Nos. 5,563,594 ("the '594 Patent"); 6,362,644 ("the '644 Patent"); and 5,361,001 ("the '001 Patent"), prior to the August 16, 2006 meeting. To the extent that Mr. Shim's characterization of these meetings in his declaration (¶ 4) implies he did attend these meetings, such an implication is not correct.

4.  Mr. Muir did not attend the September 29, 2006 negotiation meeting. To the extent that Mr. Muir's characterizations of this meeting in his declaration (Muir Dec. Ex. 1, at ¶¶ 10, 13) implies that Mr. Muir did attend this meeting, such an implication is not correct.

5.  I had no indication that Mr. Muir was connected to the November 28, 2006 telephone conference between Samsung and ON Semiconductor, nor to the telephone discussion I had with Samsung's Mr. Shim on November 30, 2006. Mr. Muir never spoke, and never indicated he was on the line. In fact, as I mentioned in my first Declaration at ¶ 21, just prior to the November 28, 2006 telephone conference, Mr. Shim had told me that he was alone. To the extent that Mr. Muir's characterizations of these meetings in his declaration (Muir Dec. Ex. 1, at ¶¶ 15, 17) implies that Mr. Muir did participate in these telephone calls, with respect to the

**PUBLIC VERSION - REDACTED**

telephone conference on November 28, 2006, such an implication is contrary to Mr. Shim's statement to me prior to that telephone conference.

6. Mr. Shim did not state that Samsung would only pay for ▮▮▮▮▮ during the August 16, 2006 meeting between ON Semiconductor and Samsung in Trenton, New Jersey. In fact, during the entire period that ON Semiconductor and Samsung were discussing a possible license of the '594, '644, and '001 Patents, no Samsung representative ever stated that Samsung would only pay ▮▮▮▮▮ for a license to these patents.

7. When Mr. Shim heard ON Semiconductor's first license proposal at the August 16, 2006 meeting, he said that he thought ON Semiconductor's offer was unreasonable. I told him that I believed the ▮▮▮▮▮ ON Semiconductor proposed was reasonable based upon ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ I asked Mr. Shim several times during this meeting to tell me what he considered to be a reasonable royalty rate. He never responded to this request.

8. At the end of the August 16, 2006 meeting I requested that Samsung make a "formal response" to our offer. I did not tell Samsung that if Samsung did not come back with a reasonable counteroffer that was in the range of our offer, ON Semiconductor was going to commence litigation, nor did I make any other threats of litigation. I also did not hear Mr. Green make any threats of litigation during this meeting.

9. Within an hour of the August 16, 2006 meeting I telephoned my colleague Sonny Cave and generally described what had happened at that meeting.

10. At the next meeting between ON Semiconductor and Samsung, which took place on September 29, 2006 in Korea, Mr. Shim did not tell me that the kind of money ON Semiconductor was looking for was unreasonable and unrealistic, or that the most Samsung would be willing to pay ███████████████████████. In fact, this meeting did not include any discussion of what amount Samsung would be willing to pay. Rather, I began the meeting by telling Mr. Shim that if he thought ON Semiconductor was a patent troll and that its patents have no value, he should say so. Mr. Shim promptly responded by stating: "Brad, you are not a patent troll and I want to give value to your patents." However, Mr. Shim said he was not prepared to propose a specific number. We ended the meeting by agreeing to meet again in November, each with concrete terms of proposed agreements.

11. Less than an hour after this September 29, 2006 meeting had ended in Korea, I telephoned my colleague Mr. Cave and generally described for him what had happened at that meeting. I remember that this telephone call happened while I was riding in a cab from the meeting to my hotel.

12. During the November 28, 2006 telephone conference between Mr. Shim, Mr. Cave, and I, neither Mr. Cave nor I asked Samsung to make a "substantial" offer. We did initially ask that Samsung make its *first* offer before ON Semiconductor made its second offer, but did not use the word "substantial". Nor did I ever hear Mr. Shim use the word "gunpoint," or words to that effect. Mr. Cave did ask Mr. Shim to tell us what he thought reasonable consideration would be for a license to the '594, '644, and '001 Patents, to which Mr. Shim responded he needed to hear ON Semiconductor's opinion first.

13. Mr. Cave did ultimately make ON Semiconductor's second offer, even though Samsung had not yet given its first offer. Mr. Cave specifically noted that ON Semiconductor would entertain further discounted offers if payment was made over time.

14. In his Declaration, Mr. Shim states that he was "flabbergasted" by ON Semiconductor's November 28, 2006 offer and that he only told us that he would present the ON Semiconductor offer to his management because "I am required to report all offers back to Samsung." (Shim Dec. ¶¶ 9-10.) However, at the meeting, Mr. Shim gave no indication of having these thoughts, and made no such statement regarding his reporting obligation. To the contrary, Mr. Shim's reaction to this offer was very different than his reaction to ON Semiconductor's August 16, 2006 offer.

15. When Mr. Shim received ON Semiconductor's offer at the August 16, 2006 meeting, he instantly and vocally rejected it, saying that it was unreasonable. He did not interrupt our meeting to present our offer to his management or board, and did not make any reference whatsoever to reporting the offer to his management or his board. In contrast, after hearing our November 28, 2006 offer and our expressed willingness to ███████ ███████████████████████████████ Mr. Shim did not reject this offer as he had the previous offer. Mr. Shim also did not say anything indicating that he rejected Mr. Cave's invitation to counteroffer, or that he wished to end negotiations. He was extremely calm and polite, and informed us that he would get back to us after talking to his management and board.

16. Since Mr. Shim had already demonstrated to me that he had the authority to reject offers without first consulting his board and management, I understood it to be a favorable sign that he chose to take this offer back to Samsung management and board before responding to it. Indeed, this was the first time Mr. Shim had ever indicated to me that he would take an offer

**PUBLIC VERSION - REDACTED**

from ON Semiconductor to his management and board before proceeding with discussions. Mr. Shim's willingness to discuss our offer with his management and board and the representations by Mr. Shim to me during the September 29, 2006 meeting in Korea (as discussed in ¶ 10), gave me a clear indication to me that Samsung was planning to continue negotiations at that point, and that the parties might be able to negotiate a mutual resolution.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

By: _____
Bradley J. Botsch

549900

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on January 29, 2007, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

    Josy W. Ingersoll
    John W. Shaw

I also certify that copies were caused to be served on January 29, 2007 upon the following in the manner indicated:

**BY HAND**

    Josy W. Ingersoll
    John W. Shaw
    Andrew A. Lundgren
    YOUNG, CONAWAY, STARGATT & TAYLOR LLP
    The Brandywine Building
    1000 West Street, 17th Flr.
    Wilmington, DE  19899

**BY FEDERAL EXPRESS**

    John M. Desmarais
    James E. Marina
    KIRKLAND & ELLIS
    153 East 53rd Street
    New York, NY  10022

    */s/ Karen Jacobs Louden*
    _____
    Karen Jacobs Louden
    klouden@mnat.com