IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SAMSUNG ELECTRONICS CO. LTD., <br> SAMSUNG ELECTRONICS AMERICA, INC., <br> SAMSUNG TELECOMMUNICATIONS <br>   AMERICA GENERAL, LLC, <br> SAMSUNG SEMICONDUCTOR, INC., and <br> SAMSUNG AUSTIN SEMICONDUCTOR LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ON SEMICONDUCTOR CORP. and <br> SEMICONDUCTOR COMPONENTS <br> INDUSTRIES, LLC, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | C.A. No.  06-720 (***) <br><br> **REDACTED** <br> **PUBLIC VERSION** |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF
THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

                                   MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                                   Karen Jacobs Louden (#2881)
                                   Richard J. Bauer (#4828)
                                   1201 N. Market Street
                                   P.O. Box 1347
                                   Wilmington, DE  19899
                                   (302) 658-9200
                                   klouden@mnat.com
                                       *Attorneys for Defendants*

OF COUNSEL:
Kenneth R. Adamo
JONES DAY
2727 North Harwood Street
Dallas, TX  75201-1515
(214) 220-3939

T. Gregory Lanier
Behrooz Shariati
JONES DAY
2882 Sand Hill Road, Suite 240
Menlo Park, CA  94025

Original Filing Date: February 1, 2007
Redacted Filing Date: February 7, 2007

**PUBLIC VERSION - REDACTED**                                              i.

# TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF CITATIONS | ii |
| INTRODUCTION | 1 |
| ARGUMENT | 2 |
| I.    SAMSUNG HAD NO OBJECTIVELY REASONABLE APPREHENSION OF IMMINENT SUIT WHEN IT FILED THIS DECLARATORY JUDGMENT ACTION. | 2 |
|     A.    Samsung's Burden of Proof is Not "Light." | 2 |
|     B.    Samsung Cannot Establish Any Imminent Threat By ON Semiconductor When SEC Filed This Suit. | 4 |
|         1.    Negotiations Were Ongoing When SEC Filed Suit. | 4 |
|         2.    ON Semiconductor Never Threatened Litigation. | 7 |
|         3.    ON Semiconductor's September 6, 2006 Letter Did Not Create Reasonable Apprehension. | 8 |
|         4.    ON Semiconductor's First Two Offers Were Not Exorbitant And Did Not Create Reasonable Apprehension. | 9 |
|         5.    Events That Happened After This Suit Was Filed, Including ON Semiconductor's Texas Action, Are Not Relevant. | 10 |
| II.    EXERCISING JURISDICTION HERE WOULD BE INCONSISTENT WITH THE PURPOSES OF THE DECLARATORY JUDGMENT ACT. | 11 |
|     A.    Samsung Improperly Filed Suit To Gain Leverage In Ongoing Negotiations. | 11 |
|     B.    This Court Should Encourage Negotiation Rather Than Litigation. | 13 |
| CONCLUSION | 13 |

PUBLIC VERSION - REDACTED

# TABLE OF CITATIONS

Page(s)

**CASES**

*Carpet Group Int'l v. Oriental Rug Importers Ass'n*,
  227 F.3d 62 (3d Cir. 2000) ................................................................................... 3

*Clay Paky, S.p.A. v. Vari-Lite, Inc.*,
  No. 99-11401 (BSJ), 2000 U.S. Dist. LEXIS 9802 (S.D.N.Y. July 12, 2000) ........... 6

*Deprenyl Animal Health, Inc. v. University of Toronto Innov. Found.*,
  297 F.3d 1343 (Fed. Cir. 2002) ............................................................................ 4

*Dow Chem. Co. v. Exxon Chem. Patents, Inc.*,
  C.A. No. 94-572-SLR, 1995 U.S. Dist. LEXIS 13888 (D. Del. Aug. 16, 1995) ........ 3

*EMC Corp. v. Norand Corp.*,
  89 F.3d 807 (Fed. Cir. 1996) ....................................................................... passim

*Fresenius USA, Inc. v. Transonic Sys., Inc.*,
  207 F. Supp. 2d 1009 (N.D. Cal. 2001) ................................................................ 6

*Growth Horizons, Inc., v. Delaware County, Pa.*,
  983 F.2d 1277 (3d Cir. 1993) ............................................................................ 2-3

*Ivoclar Vivadent, Inc. v. Hasel*,
  No. 02-0316E(F), 2003 U.S. Dist. LEXIS 12611 (W.D.N.Y. June 30, 2003) ....... 5-6

*Mennen Co. v. Atl. Mut. Ins. Co.*,
  147 F.3d 287 (3d Cir. 1998) ................................................................................. 3

*Millennium Prods., Inc. v. Gravity Boarding Co., Inc.*,
  127 F. Supp. 2d 974 (N.D. Ill. 2000) ................................................................... 4

*Nokia Corp. v. Interdigital Comm'ns*,
  No. 05-16-JJF, 2005 U.S. Dist. LEXIS 34899 (D. Del. Dec. 21, 2005) ............... 2-3

*NutraSweet Co. v. Ajinomoto Co.*,
  423 F. Supp. 2d 450 (D. Del. 2006) ..................................................................... 9

*Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*,
  57 F.3d 1051 (Fed. Cir. 1995) ....................................................................... 5-6, 10

*Shell Oil Co. v. Amoco Corp.*,
  970 F.2d 885 (Fed. Cir. 1992) ........................................................................... 2, 6

**PUBLIC VERSION - REDACTED**

iii.

*Spectronics Corp. v. H.B. Fuller Co., Inc.*,
    940 F.2d 631 (Fed. Cir. 1991)..................................................................................10

*UD Tech. Corp. v. Phenomenex, Inc.*,
    C.A. No. 05-842-GMS, 2007 U.S. Dist. LEXIS 642 (D. Del. Jan. 4, 2007)...............3

**PUBLIC VERSION - REDACTED**                                               1.

## INTRODUCTION

Samsung now agrees it must have had a reasonable apprehension of an imminent suit by ON Semiconductor *at the time Samsung filed its declaratory judgment action*, and that it cannot relate back later events to create jurisdiction where none existed at the time. Yet Samsung continues to reassert its same unfounded allegations about the parties' negotiations, as if saying them again, and louder, would simply make them so. Samsung does nothing to rebut the substantial evidence showing that the alleged threats of litigation simply did not occur. Samsung also continues to ignore, or downplay, the events of the week before it filed suit – which show that the parties were focused on negotiation, not litigation – including, the confirmation by SEC's Mr. Muir that the parties would exchange reasonable offers that week, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ the promise by SEC's Mr. Shim that he would convey that offer to his board, and the parties' discussion of a further meeting on December 1.

Although Samsung repeatedly claims that it filed this suit to avoid uncertainty and insecurity, it cannot avoid the fact that its *only* reason for filing suit on November 30, 2006 was to attempt to pressure ON Semiconductor into accepting its ▉▉▉▉ counteroffer to avoid litigation. Indeed, there is no other explanation for why SEC would make a counteroffer to ON Semiconductor in the same call that it advised of the suit, or withhold service of process to permit the parties to continue discussions.

At the end of the day, the amended complaint must be dismissed because Samsung cannot meet its burden to show that the conduct of ON Semiconductor caused

PUBLIC VERSION - REDACTED

2.

Samsung to have an objectively reasonable apprehension of imminent suit on November 30, 2006. It also must be dismissed because exercising jurisdiction under these circumstances would be contrary to the purposes of the Declaratory Judgment Act.

## ARGUMENT

### I. SAMSUNG HAD NO OBJECTIVELY REASONABLE APPREHENSION OF IMMINENT SUIT WHEN IT FILED THIS DECLARATORY JUDGMENT ACTION.

#### A. Samsung's Burden of Proof is Not "Light."

In an attempt to circumvent a standard it cannot meet, Samsung first tries to argue that its burden of establishing the existence of a case or controversy when it filed this suit is "light." (D.I. 39 at 5.) This is incorrect. To satisfy the constitutional requirement of an actual case or controversy, a *declaratory* plaintiff "has the burden of establishing by a preponderance of the evidence, inter alia, that it ha[d] a reasonable apprehension that it w[ould] be sued." *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 887 (Fed. Cir. 1992); *see also Nokia Corp. v. Interdigital Comm'ns*, No. 05-16-JJF, 2005 U.S. Dist. LEXIS 34899, at *4-5 (D. Del. Dec. 21, 2005) ("When a Court considers a factual challenge to jurisdiction . . . the existence of disputed material facts will not preclude the court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff has the burden of proof that jurisdiction does in fact exist.").

The cases Samsung cites to argue that its burden is "light" do not apply here. Neither case involved *declaratory* judgment jurisdiction, but instead involved *direct* actions invoking a federal claim. For example, in *Growth Horizons, Inc., v. Delaware County, Pa.*, 983 F.2d 1277, 1280-81 (3d Cir. 1993), which involved a *direct* action, the district court dismissed the complaint for lack of federal question jurisdiction

**PUBLIC VERSION - REDACTED**                                                3.

based on its finding that defendants had not done anything prohibited by the underlying federal statute. The Third Circuit reversed, holding this was improperly "a judgment on the merits rather than a jurisdictional decision." *Id.* The merits of the present action, in contrast, are not challenged in ON Semiconductor's motion. *UD Tech. Corp. v. Phenomenex, Inc.*, C.A. No. 05-842-GMS, 2007 U.S. Dist. LEXIS 642 (D. Del. Jan. 4, 2007), the other case that Samsung cites, also does not support its position. In *UD Tech.*, this Court partially granted the motion to dismiss a *direct* action for lack of standing based on "its obligation to make an independent determination" of jurisdictional facts. *Id.* at *15.

Second, contrary to Samsung's assertion, the Court does *not* resolve factual conflicts in favor of the exercise of jurisdiction. (D.I. 39 at 5.) Instead, "[s]ubject matter jurisdiction depends upon facts, and when any question arises as to the existence of jurisdiction, *a federal court is obligated to make an independent determination of those facts.*" *Mennen Co. v. Atl. Mut. Ins. Co.*, 147 F.3d 287 (3d Cir. 1998) (emphasis added); *see also Carpet Group Int'l v. Oriental Rug Importers Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000) (explaining that "[w]hen a defendant attacks subject matter jurisdiction 'in fact,' . . . the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case."); *Nokia*, 2005 U.S. Dist. LEXIS 34899, at *5 ("[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."); *Dow Chem. Co. v. Exxon Chem. Patents, Inc.*, C.A. No. 94-572-SLR, 1995 U.S. Dist. LEXIS 13888, at *17 (D. Del. Aug. 16, 1995) (same). Having ignored this controlling authority, Samsung again cites several

cases that are equally inapposite, both of which apply the standard of *personal*—not *subject matter*—jurisdiction.[1]

### B. Samsung Cannot Establish Any Imminent Threat By ON Semiconductor When SEC Filed This Suit.

Contrary to its blithe assertions in its opposition, Samsung simply cannot establish that ON Semiconductor's conduct – which is the focus of the Court's inquiry – caused it to have an objectively reasonable apprehension of imminent suit when SEC filed this declaratory judgment action on November 30, 2006.

#### 1. Negotiations Were Ongoing When SEC Filed Suit.

First, Samsung largely ignores the events immediately preceding SEC's filing of this action, because they show that ON Semiconductor and SEC were focused on negotiations, not litigation. Samsung cannot avoid that during the week leading up to SEC's filing: (1) SEC's representative Patrick Muir confirmed in writing his understanding that both parties would be making reasonable proposals that same week; (2) the parties explicitly told each other that they preferred not to litigate; (3) ON Semiconductor made ███████████████████████████████████████ ███████████████████████ (4) SEC's representative Jay Shim promised to respond to ON Semiconductor after he conveyed the offer to his board in Korea; (5) the

---

[1] *See Deprenyl Animal Health, Inc. v. University of Toronto Innov. Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002) (discussing *personal* jurisdiction); *Millennium Prods., Inc. v. Gravity Boarding Co., Inc.*, 127 F. Supp. 2d 974, 979 (N.D. Ill. 2000) (applying guidance of a *personal* jurisdiction case to one involving subject matter jurisdiction because "[t]he parties have cited no authority regarding how such conflicts are to be resolved.").

parties discussed meeting again on December 1 – the day after SEC's filing; and (6) even after SEC filed suit, it simultaneously made a counteroffer and told ON Semiconductor that it was withholding service in the hopes of settling the matter out of court. (*See generally* D.I. 34 at 13-16.) None of these facts are contested. Samsung also admits, as it must, that "[n]either Mr. Botsch nor any of Defendants' other representatives indicated that Defendants planned to file suit against Samsung within a specific or definite timeframe." (D.I. 12 ¶16.)

        Confronted with these key facts, Samsung concedes that negotiations were ongoing at the time it filed suit and instead contends that where "the patent holder threatens, *during* those negations, to file suit if it is not satisfied with the result of the negotiations, an actual controversy exists." (D.I. 39 at 5-6 (emphasis added).) The cases Samsung cites do not support this proposition, however, but rather hold that a reasonable apprehension may be created when a patentee drags the declaratory judgment plaintiff into negotiations by explicitly threatening suit *before* any negotiations begin. *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 812 (Fed. Cir. 1996) (initiating negotiations by sending a letter that "made explicit references to the prospect of initiating legal action," that "referred to [patentee's] inclination to 'turn the matter over to' Norand's litigation counsel 'for action'," and that insisted on further discussion "perhaps avoiding this matter escalating into a *contentious legal activity*") (emphasis added); *Ivoclar Vivadent, Inc. v. Hasel*, No. 02-0316E(F), 2003 U.S. Dist. LEXIS 12611, at *17, 21-22 (W.D.N.Y. June 30, 2003) (distinguishing the facts before it from *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1053 (Fed. Cir. 1995), which held that "when there are proposed or ongoing license negotiations, a litigation controversy normally does not arise

6.

until the negotiations have broken down," because, unlike in *Phillips*, the patentee there had explicitly dragged the declaratory judgment plaintiff to the negotiating table with threats of suit); *Clay Paky, S.p.A. v. Vari-Lite, Inc.*, No. 99-11401 (BSJ), 2000 U.S. Dist. LEXIS 9802, at *13, 17, 19-20 (S.D.N.Y. July 12, 2000) (same). The negotiations in those cases were clouded at the outset by "explicit references to the prospect of initiating legal action," that the patentee never dispelled. *EMC*, 89 F.3d at 812; *see also Ivoclar*, 2003 U.S. Dist. LEXIS 12611, at *22; *Clay*, 2000 U.S. Dist. LEXIS 9802, at *15. By contrast, the Federal Circuit has recognized that, once voluntary negotiations commence, many "alleged 'charges of infringement [ar]e merely 'jawboning which typically occurs in licensing negotiations." *Shell Oil Co.*, 970 F.2d at 889.

Here, Samsung has not even *alleged* that ON Semiconductor dragged Samsung to the negotiating table with threats of litigation, and has not contested that negotiations were ongoing when it filed this suit. Without being forced to the negotiating table, there is no basis for Samsung to allege that it had a reasonable apprehension of suit while the voluntary negotiations were ongoing. *See Philips*, 57 F.3d at 1053 ("[W]here there are proposed or ongoing license negotiations, a litigation controversy normally does not arise until the negotiations have broken down."); *Fresenius USA, Inc. v. Transonic Sys., Inc.*, 207 F. Supp. 2d 1009, 1012 (N.D. Cal. 2001) (holding it was "objectively unreasonable" for plaintiff to fear imminent suit while negotiations were ongoing because, because even though the patentee threatened to sue, that threat was conditioned on negotiations terminating). (*See also* D.I. 34 at 7-9.)

7.

### 2. ON Semiconductor Never Threatened Litigation.

In fact, ON Semiconductor did not threaten litigation at any point, including after negotiations were underway. To the contrary, it explicitly told SEC that it preferred not to litigate. (D.I. 16 ¶ 4, D.I. 17 ¶ 22.) Recognizing the difficulty it faces in meeting its burden, Samsung now asserts that ON Semiconductor explicitly threatened litigation on four separate occasions.[2] Samsung cannot meet its burden of establishing that any such "threats" occurred, however. Outside of Samsung's subjective belief, ON Semiconductor's statements were nothing more than robust negotiation.

First, Samsung alleges that ON Semiconductor made oral threats of litigation on February 15, August 16, and September 6, 2006, but offers no evidence of these threats other than its own say-so.[3] Moreover, those allegations are directly contradicted by ON Semiconductor's documentary and declaration support.[4] For

---

[2] Although Samsung makes this assertion in its briefing, it is notable that neither the Original Complaint nor the Amended Complaint contain these allegations, which, at the very least, means these allegations cannot be considered for evaluating ON Semiconductor's facial attack to the Amended Complaint.

[3] Indeed Samsung rests its entire burden of proof on the Declarations of Jay Shim and Patrick Muir. Samsung itself, while attempting to justify Mr. Shim's and Muir's attestation of first-hand knowledge of events in which they did not participate, concedes, however, that Mr. Shim *"did not attend those meetings"* that he characterized in his declarations and that Mr. Muir "describes the parties' September 29, 2006 meeting and November 28 and 30, 2006 telephone calls *without having participated in those conversations."* (D.I. 39 at 4 n.3.) This "evidence" is simply not credible or reliable.

[4] Unable to attack or rebut ON Semiconductor's declarations on the facts, Samsung resorts to semantic nitpicking – speculating that, because Mr. Polansky did not "remember" and Mr. Green did not "hear" threats of litigation, its own say-so is enough to prove they did occur. (D.I. 39 at 6 n. 4). That makes no sense. For instance, the so-called threat alleged by Mr. Muir – the only Samsung declarant who personally attended the February 15, 2006 meeting – is directly contradicted
(continued . . .)

PUBLIC VERSION - REDACTED                                    8.

example, Samsung's Mr. Muir claims that Mr. Botsch said at the February 15, 2006 meeting that ON Semiconductor "would select its litigation targets carefully," but Messrs. Botsch and Polansky, who attended the meeting on behalf of ON Semiconductor, deny this (D.I. 17 ¶ 7; D.I. 37 ¶¶ 6-8), and there is no record of such a statement in Mr. Polansky's detailed contemporaneous meeting notes. (D.I. 37, Ex. 1.)

Likewise, Samsung's allegation that ON Semiconductor threatened litigation during the August 16, 2006 meeting is contradicted by the declarations Bradley Botsch (D.I. 17 ¶ 12; D.I. 35 ¶ 8) and Peter Green (D.I. 38 ¶¶ 2-4), as confirmed by the contemporaneous description of the meeting that Mr. Botsch gave to Mr. Cave less than an hour after it ended (D.I. 36 ¶ 4). Samsung's allegation of a third oral threat during the September 15, 2006 telephone conversation between Mr. Botsch and Mr. Muir is likewise contradicted by Mr. Botsch. (D.I. 17 ¶ 14.)

      3.    ON Semiconductor's September 6, 2006 Letter Did Not Create Reasonable Apprehension.

Next Samsung tries to argue that ON Semiconductor's September 6, 2006 letter is "by itself sufficient under *EMC* to meet" its burden of proof. (D.I. 39 at 6.) Unlike in *EMC*, however, the September 6, 2006 letter came after nearly a year of negotiations and thus was obviously not used to force negotiations to begin. *EMC*, 89 F.3d at 812. The September 6, 2006 letter also does not contain any of the "explicit

---

(... continued)
    by both Mr. Botsch's and Mr. Polansky's testimony. (D.I. 17 ¶¶ 6-7, D.I. 37 ¶¶ 2-9.) There is also no mention of litigation in Mr. Polansky's meeting notes, and Mr. Polansky testified that if litigation had been mentioned, he would have written it in his notes. (D.I. 37 ¶¶ 6-8, Ex. 1.) In short, Samsung cannot create an issue where there is none.

references to the prospect of initiating legal action," direct discussion of lawsuits, litigation counsel, or "contentious legal activity" that were present in *EMC*. *Id.* Instead, ON Semiconductor's letter reiterates its "prefer[ence] to follow the current path of professional and amicable negotiation" – language Samsung ignores in its briefing. (D.I. 17 Ex. 9.) While ON Semiconductor also mentions "other paths to enforce [ON Semiconductor's] legal rights and remedies," it explicitly stated that such paths would only be pursued if "Samsung's decision" was to "ignore ON's proposal and abandon any further discussions." (*Id.*) Indeed, the *EMC* court specifically recognized that not every hint of possible enforcement creates reasonable apprehension, and that "any time parties are in negotiation over patent rights, the possibility of a lawsuit looms in the background . . . The threat of enforcement . . . is the entire source of the patentee's bargaining power." *EMC*, 89 F.3d at 811 (citations omitted); *see also NutraSweet Co. v. Ajinomoto Co.*, 423 F. Supp. 2d 450, 455 (D. Del. 2006) ("A patent owner should not be penalized for voicing its beliefs of patent rights.").

    4.    ON Semiconductor's First Two Offers Were Not Exorbitant And Did Not Create Reasonable Apprehension.

Next Samsung continues to assert that it had reasonable apprehension of suit because ON Semiconductor's offers were "exorbitant." (D.I. 39 at 3; *see also* D.I. 39 at 7, 10.) Once again, Samsung offers no support for its allegation that ON Semiconductor's offers were "exorbitant" (notwithstanding ON Semiconductor's proffered evidence to the contrary (*see* D.I. 34 at 6-7)), and Samsung does not point to any authority that making even an "exorbitant" offer creates a reasonable apprehension of suit. Further, Samsung's speculation as to how ON Semiconductor *might* have responded

**PUBLIC VERSION - REDACTED** 10.

to a counteroffer that Samsung *may* have been *contemplating* but had not yet communicated (D.I. 29 ¶¶ 12-13), does not establish any apprehension of an imminent suit, much less an objectively reasonable apprehension. At best, Samsung's speculation that the parties "were too far apart" amounts to nothing more than the "nervous state of mind of a possible infringer." *See Phillips*, 57 F.3d at 1053-54.

        5.        Events That Happened After This Suit Was Filed, Including ON Semiconductor's Texas Action, Are Not Relevant.

Finally, Samsung tries to argue that ON Semiconductor's assertion of U.S. Patent No. 5,000,827 in Texas, after this suit was filed, confirms that ON Semiconductor "planned litigation against SEC all along." (D.I. 39 at 7-8.) Samsung fails to explain, however, how ON Semiconductor's belief that Samsung infringed a patent, which Samsung was not even aware of, could have created an objectively reasonable apprehension in Samsung. Samsung again simply tries to use facts that occurred after November 30, 2006, to establish jurisdiction when it filed its complaint. As explained in ON Semiconductor's reply in the motion to dismiss the original complaint (D.I. 34 at 9-11), Samsung cannot create a reasonable apprehension of suit by pointing to later events that did not exist at the time it filed this suit. *See, e.g., Spectronics Corp. v. H.B. Fuller Co., Inc.*, 940 F.2d 631, 635 (Fed. Cir. 1991) ("We agree wholeheartedly that *in personam* and subject matter jurisdictional facts must be pleaded, and proved when challenged, and that later events may not create jurisdiction where none existed at the time of filing."). Indeed, the very cases Samsung cites affirm this simple point (*see* D.I. 34 at 9-11) and Samsung itself admits, as it must, the Court should limit its analysis to events that had occurred as of November 30, 2006 (D.I. 39 at 9).

11.

## II. EXERCISING JURISDICTION HERE WOULD BE INCONSISTENT WITH THE PURPOSES OF THE DECLARATORY JUDGMENT ACT.

Samsung argues that the Court should exercise its discretion to hear this case because Samsung did not file this suit in bad faith, but rather filed it to avoid "uncertainty and insecurity" surrounding the parties' licensing negotiations.[5] (D.I. 39 at 10.) Samsung cannot avoid, however, that SEC's only reason for choosing to file suit when it did on November 30, 2006 was to gain leverage in the midst of ongoing negotiations. Nor can it avoid the rather obvious fact that SEC misled ON Semiconductor into believing that SEC was conveying ON Semiconductor's offer to its board in Korea and considering another meeting, while it was instead using that time to file suit here, in its chosen forum. Had SEC's true purpose been to seek "relief from uncertainty and delay regarding its legal rights," as it contends (D.I. 39 at 10), then SEC would have proceeded with this action and not withheld service of process to allow out of court negotiations. Instead, SEC openly admits that it "did not immediately serve Defendants with process" because it "still preferred to settle this matter amicably." (D.I. 29 ¶ 13.) In other words, SEC used this action as part of its continuing negotiations, not to adjudicate its case.

### A. Samsung Improperly Filed Suit To Gain Leverage In Ongoing Negotiations.

SEC admits that although it had a counterproposal in hand (D.I. 29 ¶¶ 11-12), it waited until after it filed this suit to convey the offer. (*Id.* at ¶ 13.) Indeed, SEC extended the counteroffer in the *same call* in which it advised ON Semiconductor of this

---

[5] Samsung also asserts, with no factual support, that ON Semiconductor is "seeking to enforce [its] patents against other members of the DRAM industry." (D.I. 39 at 11.) ON Semiconductor has brought no such suits.

**PUBLIC VERSION - REDACTED**                          12.

lawsuit. (*Id.*) The only plausible explanation for this is that SEC sought to gain leverage in the ongoing negotiations.

Samsung argues in its brief that it could not have filed this action to gain leverage because the parties were at an impasse when it filed suit. (D.I. 39 at 11.) The facts, once again, belie Samsung's argument. Indeed, it is undisputed that, at the time of SEC's filing, ON Semiconductor had extended two offers, ▬▬▬▬▬▬▬▬▬▬ ▬▬▬ (D.I. 16 ¶ 5; D.I. 17 ¶ 22; D.I. 29 ¶ 9), ▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬ (D.I. 16 ¶ 5; D.I. 17 ¶ 22; D.I. 29 ¶ 9), and the parties had discussed a further meeting (D.I. 17 ¶ 24; D.I. 29 ¶ 11). Moreover, SEC made its first counteroffer only after informing ON Semiconductor of this suit, and admitted that it chose to withhold service of process so the parties could continue negotiations, hardly the actions of a party who believed an impasse had been reached. (D.I. 29 ¶ 13.) Nor can the size of ON Semiconductor's offers alone create an impasse where SEC had not yet made a single counteroffer, and therefore, there was nothing for ON Semiconductor to reject.

Samsung further argues that SEC could only have filed suit to gain leverage if SEC "was willing to continue negotiations in an effort to force Defendants to accept an offer ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (D.I. 39 at 11.) To the contrary, SEC could, and indeed did, file this suit to pressure ON Semiconductor to come down in value. Just because SEC's attempt to strong-arm ON Semiconductor failed does not mean it was not such an attempt. Forcing ON Semiconductor to give SEC a better licensing deal is not the proper use of the Declaratory Judgment Act, and this Court should not "encourage parties who [a]re

**PUBLIC VERSION - REDACTED**　　　　　　　　　　　13.

negotiating with patentees to use the declaratory judgment procedure to improve their bargaining position." *EMC*, 89 F.3d at 810.

    B.    This Court Should Encourage Negotiation Rather Than Litigation.

Samsung also denies having baited ON Semiconductor into believing negotiations were ongoing so that SEC could secretly file its declaratory judgment action. As set forth more fully in ON Semiconductor's reply in support of its original motion to dismiss, Samsung offers no explanation for why Mr. Shim waited to convey SEC's counteroffer until after SEC filed suit, or why he discussed a further meeting in Dallas on December 1, other than to leave SEC time to file suit. (*See* D.I. 34 at 18-19.) Samsung used this intervening time, during which SEC knew that ON Semiconductor was waiting for Mr. Shim's promised response to its offer, to file this action. (D.I. 29 ¶¶ 12-13.) Rewarding such behavior would punish ON Semiconductor for taking SEC at its word that it would respond to ON Semiconductor's offer.

## CONCLUSION

For the foregoing reasons, Defendant ON Semiconductor's Motion to Dismiss Samsung's Amended Complaint should be granted.

                      MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                      /s/ *Karen Jacobs Louden*
                      Karen Jacobs Louden (#2881)
                      Richard J. Bauer (#4828)
                      1201 N. Market Street
                      P.O. Box 1347
                      Wilmington, DE 19899
                      (302) 658-9200
                      klouden@mnat.com
                      *Attorneys for defendants*

**PUBLIC VERSION - REDACTED**  14.

OF COUNSEL:

Kenneth R. Adamo
JONES DAY
2727 North Harwood Street
Dallas, TX 75201-1515
(214) 220-3939

T. Gregory Lanier
Behrooz Shariati
JONES DAY
2882 Sand Hill Road, Suite 240
Menlo Park, CA 94025
(650) 739-3939

February 1, 2007

722290.1

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on February 7, 2007, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Josy W. Ingersoll
> John W. Shaw
> Andrew A. Lundgren

I also certify that copies were caused to be served on February 7, 2007 upon the following in the manner indicated:

### BY HAND

> Josy W. Ingersoll
> John W. Shaw
> Andrew A. Lundgren
> YOUNG, CONAWAY, STARGATT & TAYLOR LLP
> The Brandywine Building
> 1000 West Street, 17th Flr.
> Wilmington, DE 19899

### BY FEDERAL EXPRESS

> John M. Desmarais
> James E. Marina
> KIRKLAND & ELLIS
> 153 East 53rd Street
> New York, NY 10022

/s/
_____
Karen Jacobs Louden
klouden@mnat.com