IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SAMSUNG ELECTRONICS CO., LTD,   :
SAMSUNG ELECTRONICS AMERICA, INC., :
SAMSUNG TELECOMMUNICATIONS AMERICA :
GENERAL, L.L.C., SAMSUNG          :
SEMICONDUCTOR, INC., and SAMSUNG   :
AUSTIN SEMICONDUCTOR L.L.C.,      :
                                      :
        Plaintiffs,               :
                                      :
   v.                           :   Civil Action No. 06-720-JJF
                                      :
ON SEMICONDUCTOR CORP., and       :
SEMICONDUCTOR COMPONENTS           :
INDUSTRIES, LLC,                  :
                                      :
        Defendants.              :

John M. Desmarais, Esquire and James E. Marina, Esquire, of
KIRKLAND & ELLIS LLP, New York, New York.
Josy W. Ingersoll, Esquire; John W. Shaw, Esquire; and Andrew A.
Lundgren, Esquire, of YOUNG CONAWAY STARGATT & TAYLOR, LLP,
Wilmington, Delaware.

Attorneys for Plaintiffs.

Kenneth Adamo, Esquire, of JONES DAY, Dallas, Texas.
T. Gregory Lanier, Esquire and Behrooz Shariati, Esquire, of
JONES DAY, Menlo Park, California.
Karen Jacobs Louden, Esquire and Richard J. Bauer, Esquire of
MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware.

Attorneys for Defendants.

**MEMORANDUM OPINION**

April 3, 2008
Wilmington, Delaware.

Farnan, District Judge. *[signed] Joseph Farnan*

Presently before the Court are Defendants' Motion to Dismiss (D.I. 14) and Motion to Dismiss the Amended Complaint (D.I. 25). For the reasons discussed, Defendants' Motions to Dismiss (D.I. 14 and D.I. 25) will be denied.

## BACKGROUND

I.  Procedural Background

On November 30, 2006, Samsung Electronics Co., Ltd., ("Samsung") filed its original complaint in this action against ON Semiconductor Corp. and Semiconductor Components Industries, LLC (collectively, "ON Semiconductor"), seeking a declaration that three United States patents owned by ON Semiconductor, U.S. Patent Nos. 5,563,594 (the "'594 Patent"), 6,362,644 (the "'644 Patent") and 5,361,001 (the "'001 Patent"), are invalid and not infringed by Samsung.

On Monday, December 4, 2006, ON Semiconductor filed a patent infringement action against Samsung in the United States District Court for the Eastern District of Texas, Case No. 6:06cv523, ("the Texas action") alleging infringement by Samsung of the same three patents, as well as a fourth patent, U.S. Patent No. 5,000,827 (the "827 Patent"). ON Semiconductor also named four Samsung affiliates, Samsung Electronics America, Inc. ("Samsung Electronics"), Samsung Telecommunications America General, L.L.C. ("Samsung America"), Samsung Semiconductor, Inc. ("Samsung

2

Semiconductor"), and Samsung Austin Semiconductor, L.L.C ("Samsung Austin"), as co-defendants in the Texas action.[1]

Samsung filed an Amended Complaint in this action on December 21, 2006, adding Samsung Electronics, Samsung America, Samsung Semiconductor and Samsung Austin (with Samsung, collectively "Samsung") as co-plaintiffs, and adding a claim for declaratory judgment of non-infringement and invalidity of the '827 patent, as well as a claim against ON Semiconductor for infringement of Samsung's patent, U.S. Patent No. 5,252,1777 (the "'177 Patent."). (D.I. 10.)

On December 27, 2006, Defendants filed a Motion to Dismiss Plaintiffs' claims for lack of subject matter jurisdiction (D.I. 14). This motion was briefed on January 29, 2007. On January 10, 2007, ON Semiconductor filed a Motion to Dismiss the Amended Complaint for lack of subject matter jurisdiction. (D.I. 25.) This motion was briefed on February 1, 2007.

II. Factual Background

Samsung manufactures and markets a variety of semiconductor products, including dynamic random access memories ("DRAMs"). On September 15, 2005, ON Semiconductor, a supplier of high-performance management solutions, sent a letter to Samsung,

---

[1] On June 21, 2007, the Texas action was transferred to this Court for determination of whether this action was properly filed.

accusing Samsung of infringing the patents-in-suit,[2] and requesting a meeting to discuss licensing of these patents. (D.I. 12, Ex. A.)  The parties met for the first time on December 1, 2005.  ON Semiconductor presented two PowerPoint presentations depicting their contention that certain Samsung DRAM products infringed the '594 and '644 patents, (D.I. 12, Ex. B, C) while Samsung presented noninfringement and invalidity arguments. (D.I. 12.)

On August 16, 2006, ON Semiconductor made an offer to Samsung of a 5-year patent license in exchange for a $47 million cash payment, and one percent royalties on future sales of products using the patented technology between 2007 and 2010. (D.I. 15 at 7.)  Samsung found the offer "outlandish and unacceptable," and rejected it. (D.I. 27 at 6.)  When ON Semiconductor did not receive a substantive response to its offer, it sent a letter to Samsung on September 6, 2006 stating:

> ON is certainly left wondering if Samsung intends to ignore ON's proposal and abandon any further discussions to resolve the underlying patent issues. If this is indeed the case, then we must reemphasize to you that Samsung's decision will lead ON to pursue other paths to enforce it [sic] legal rights and remedies.  While we prefer to follow the current path of professional and amicable negotiation with Samsung,

---

[2]ON Semiconductor's September 15, 2005 letter was regarding the '594 and the '644 Patents.  However, on April 24, 2006, ON Semiconductor sent a Samsungond letter to Samsung, indicating their contention that Samsung DRAM products infringed the '001 Patent, at which point the '001 Patent also became part of the licensing negotiation discussions.

> please rest assured that ON views this matter with the
> utmost seriousness and is prepared to pursue it to a
> final conclusion one way or another.

(D.I. 12, Ex. G.) Negotiations continued following Samsung's receipt of ON Semiconductor's letter. Samsung contends that on September 15, 2006, ON Semiconductor's representative, Bradley Botsch ("Mr. Botsch"), told Samsung's representative, Patrick Muir ("Mr. Muir"), that ON Semiconductor was considering filing federal court litigation or an ITC proceeding against Samsung. (D.I. 12, ¶ 12.) Mr. Botsch denies making such a statement. (D.I. 17, ¶ 14.)

The parties met again on September 29, 2006, when, according to Samsung's representative, Jay Shim ("Mr. Shim"), Mr. Shim told Mr. Botsch that "the most Samsung was willing to pay was a nominal sum based on nuisance value." (D.I. 29, ¶ 7.) According to Mr. Shim, he again informed Mr. Botsch "that Samsung would not offer more than nuisance value" during a telephone call on November 27, 2006. (Id., ¶ 8.) On November 28, 2006, ON Semiconductor made a settlement offer of $100 million cash payment with a cross-license involving Samsung's patents. (D.I. 15 at 9.) Mr. Shim indicated that he would pass this offer to management and the Samsung board of directors. (D.I. 27 at 9; D.I. 15 at 9.)

On November 29, 2006, Mr. Shim telephoned Mr. Botsch and advised him that he had not yet been able to pass along ON

5

Semiconductor's latest offer.  The parties discussed a potential meeting on December 1, 2006.  (D.I. 15 at 10; D.I. 27 at 10.) Following this phone call, Mr. Shin reported ON Semiconductor's latest offer to Samsung, and it was rejected. (D.I. 29, ¶ 12.) Samsung was willing to offer ON Semiconductor a "nuisance value payment" of $1 million, which could increase to $10 million under certain circumstances. (Id.)

On November 20, 2006, Mr. Shim advised Mr. Botsch that the parties' positions remained far apart, and informed him that Samsung had filed this declaratory judgment action. (D.I. 15 at 10.)  Mr Shim indicated that Samsung still preferred to settle the matter, and informed Mr. Botsch of Samsung's counteroffer, a cross-license encompassing the '594, '644 and '001 patents and all Samsung's patents, and a $1 million payment to ON Semiconductor.  (Id.)  ON Semiconductor immediately rejected Samsung's counteroffer. (D.I. 29, ¶ 13.)  Following ON Semiconductor's rejection of Samsung's counteroffer, Mr. Shim did not request or suggest continuing licensing discussions, and the parties have had no further licensing discussions. (Id.)

### PARTIES' CONTENTIONS

By its Motions, ON Semiconductor contends that Samsung did not have an objective reasonable apprehension of litigation by ON Semiconductor on November 30, 3006, the day this action was filed.  ON Semiconductor contends that, without such apprehension

6

at the initiation of a declaratory judgment action, the Court lacks subject matter jurisdiction to hear the action. ON Semiconductor further contends that, even if subject matter jurisdiction exists, the Court should exercise its broad discretion to dismiss the declaratory judgment claims.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of jurisdiction over the subject matter, or if the plaintiff lacks standing to bring his claim. Motions brought under Rule 12(b)(1) may present either a facial or factual challenge to the Court's subject matter jurisdiction. In reviewing a facial challenge under Rule 12(b)(1), the standards relevant to Rule 12(b)(6) apply. In this regard, the Court must accept all factual allegations in the Complaint as true, and the Court may only consider the complaint and documents referenced in or attached to the complaint. Gould Electronics, Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000). In reviewing a factual challenge to the Court's subject matter jurisdiction, the Court is not confined to the allegations of the complaint, and the presumption of truthfulness does not attach to the allegations in the complaint. Mortensen v. First Fed. Sav. & Loan, 594 F.2d 884, 891 (3d Cir. 1997). Instead, the Court may consider evidence outside the pleadings, including affidavits, depositions and testimony, to resolve any factual issues bearing

on jurisdiction. <u>Gotha v. United States</u>, 115 F.3d 176, 179 (3d Cir. 1997). Once the Court's jurisdiction is challenged, the plaintiff bears the burden of proving that jurisdiction exists.

**ANALYSIS**

I. <u>Whether Plaintiffs Establish an Actual Controversy for Purposes of the Declaratory Judgment Act</u>

The Declaratory Judgment Act "requires an actual controversy between the parties before a federal court may exercise jurisdiction." 28 U.S.C. § 2201(a)(2000); <u>EMC Corp. v. Norand Corp.</u>, 89 F.3d 807, 810 (Fed. Cir. 2004) (overruled in part on other grounds, <u>MedImmune, Inc. v. Genetech, Inc.</u>, 127 S.Ct. 764 (2007)). Plaintiffs bear the burden of proving the existence of an actual controversy by a preponderance of the evidence with regard to their declaratory judgment complaint. <u>Shell Oil Co. v. Amoco Corp.</u>, 970 F.3d 885, 887 (Fed. Cir. 1992).

Following the Supreme Court's decision in <u>MedImmune, Inc. v. Genetech, Inc.</u>, 127 S.Ct. 764 (2007), the Federal Circuit has acknowledged that the "reasonable apprehension of suit test is no longer a necessary criterion for declaratory judgment jurisdiction."[3] <u>Micron Tech., Inc. v. Mosaid Tech., Inc.</u>, --

---

[3] Prior to the Supreme Court's ruling in <u>MedImmune</u>, an actual controversy existed when there was both "(1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." <u>Gen-Probe, Inc. v. Vysis, Inc.</u>, 359 F.3d 1376, 1380 (Fed. Cir. 2004) (quoting <u>BP Chems.</u>

8

F.3d —, 2008 WL 540182, at *4 (Fed. Cir., Feb. 29, 2008). Instead, jurisdiction over a declaratory judgment requires that "the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests and that it be real and substantial and admit of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." MedImmune, 127 S.Ct. at 771.

By later dated July 6, 2007, Samsung requested the opportunity to submit supplemental briefing in light of Federal Circuit cases interpreting MedImmune as rejecting the "reasonable apprehension of suit" test. (D.I. 75.) In response, ON Semiconductor contended that MedImmune "did not overrule the 'reasonable apprehension of suit' test, as [Samsung] contends," and declined the opportunity to submit additional briefing in support of their Motions. (D.I. 77 at 2.) By their letter, ON Semiconductor also contended that the Court lacked subject matter jurisdiction even under the Federal Circuit cases cited by Samsung in their letter, since "the dispute between the parties was far from definite and substantial." (Id. at 2.)

ON Semiconductor's argument that the Court should apply the "reasonable apprehension of suit" test is inconsistent with recent, relevant Federal Circuit precedent. See, e.g., Micron

---

Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed. Cir. 1993).

9

Tech., -- F.3d at *4; <u>SanDisk Corp. v. STMicroelectronics Inc.</u>, 480 F.3d 1372, 1380 (Fed. Cir. 2007) ("The Supreme Court's opinion in <u>MedImmune</u> represents a rejection of our reasonable apprehension of suit test."). This precedent largely moots ON Semiconductor's contentions based on their assertion that they had not threatened Samsung with a lawsuit.

> In <u>SanDisk</u>, 480 F.3d at 1381, the Federal Circuit stated:
>
> [W]here a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights.

The record evidence demonstrates that ON Semiconductor accused Samsung of infringing the '594, '644 and '001 patents, by letters dated September 15, 2005 and April 24, 2006 (D.I. 12, Ex. A, D), and had made a "studied and considered determination" of infringement (<u>Id</u>., Ex. B, C). <u>SanDisk</u>, 480 F.3d at 1383. Samsung has maintained that its DRAMs do not infringe the patents-in-suit, and that the patents-in-suit are invalid. (D.I. 1; D.I. 12.) The continuation of licensing negotiations is not dispositive with regard to the existence of an actual controversy. <u>SanDisk</u>, 480 F.3d at 1381. "These facts evince that the conditions of creating 'a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment'

10

were filled." Id. (internal citations omitted).[4]

Accordingly, the Court concludes that Samsung has adduced sufficient evidence to warrant a finding of an actual controversy between the parties under the standard set forth in MedImmune and SanDisk.

II. Whether the Court Should Exercise its Discretion to Resolve the Dispute

Having determined that subject matter jurisdiction pursuant to the Declaratory Judgment Act exists, the Court must now determine whether it is appropriate to exercise that jurisdiction.

ON Semiconductor contends that the Court should decline jurisdiction because (1) Samsung filed this action to gain tactical leverage in ongoing negotiations, and (2) ON Semiconductor should be deprived of its choice of forum "merely because it attempted to arrange a settlement." (D.I. 15 at 24.) In response, Samsung first contends that it filed this action not to gain leverage, but to "protect itself from the uncertainty and inSamsungurity surrounding its sale of the accused DRAM products caused by Defendants' threats-the precise purpose of the Declaratory Judgment Act." (D.I. 27 at 23.) Samsung further contends that its choice of Delaware as a forum for this dispute

---

[4] In SanDisk, the Federal Circuit also stated that a statement by defendant that it did not intend to sue "does not moot the actual controversy created by its acts." 480 F.3d at 1383.

is both "rational and appropriate," since both parties are incorporated in Delaware, and the Eastern District of Texas has no relevant connection to the parties.  (Id. at 27.)

The Court has concluded that an actual controversy exists. A declaratory judgment would settle the parties' dispute and would afford Samsung relief from uncertainty.  SanDisk, 480 F.3d at 1383 ("When there is an actual controversy and a declaratory judgment would settle the legal relations in dispute and afford relief from uncertainty or inSamsungurity, in the usual circumstance the declaratory judgment is not subject to dismissal.") Therefore, the Court concludes that exercising jurisdiction is appropriate.[5]  Accordingly, the Court will deny Defendants' Motions to Dismiss (D.I. 14 and D.I. 25.).

### Conclusions

For the reasons discussed, Defendants' Motions to Dismiss

---

[5] In contending that the Court should exercise its discretion to dismiss this declaratory judgment action, ON Semiconductor relies heavily on the Federal Circuit's decision in EMC Corp., 89 F.3d 807.  In EMC, the Federal Circuit stated: "[w]hile a court may conclude that ongoing negotiations do not negate the presence of a controversy for jurisdictional purposes, the court may nonetheless find, in deciding whether to hear the declaratory judgment action, that the need for judicial relief is not as compelling as in cases in which there is no real prospect of a non-judicial resolution of the dispute." Id. at 814.  Here, however, the record evidence indicates that when Samsung filed suit, the parties were at an impasse with respect to negotiation positions.  (D.I. 17, 29.)  The Court also notes that, by letter dated September 6, 2006, ON Semiconductor had indicated its willingness to "pursue other paths to enforce its legal rights and remedies." (D.I. 12,  Ex. G.) Accordingly, the Court finds that ON Semiconductor's reliance on EMC is misplaced.

(D.I. 14 and D.I. 25) will be denied.

    An appropriate order will be entered.