IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA GENERAL, L.L.C., SAMSUNG SEMICONDUCTOR, INC., and SAMSUNG AUSTIN SEMICONDUCTOR L.L.C., <br><br>    Plaintiffs, <br><br>v. <br><br>ON SEMICONDUCTOR CORP. and SEMICONDUCTOR COMPONENTS INDUSTRIES, LLC, <br><br>    Defendants. | Civil Action No. 06-720 (JJF) |
| ON SEMICONDUCTOR CORP. and SEMICONDUCTOR COMPONENTS INDUSTRIES, LLC, <br><br>    Plaintiffs, <br><br>v. <br><br>SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA GENERAL, L.L.C., SAMSUNG SEMICONDUCTOR, INC., and SAMSUNG AUSTIN SEMICONDUCTOR L.L.C., <br><br>    Defendants. | Civil Action No. 07-449 (JJF) |

**NOTICE OF RULE 30(b)(6) DEPOSITION OF
DEFENDANTS/COUNTERCLAIM PLAINTIFFS**

1

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Telecommunications America General, L.L.C., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor, L.L.C. will take the deposition upon oral examination of Defendants ON Semiconductor Corp. and Semiconductor Components Industries, LLC through one or more of its officers, directors, employees, agents or other persons who consent to testify on its behalf with respect to the topics listed in Appendix A.

The deposition will be taken by stenographic and/or videographic means before a notary public, or other officer authorized by law to administer oaths, at the offices of Kirkland & Ellis LLP, c/o Edward C. Donovan, located at 655 Fifteenth Street, N.W., Washington, D.C. 20005, commencing at 9:30 am on July 10, 2008 and will continue from day to day, as necessary, until completed. Samsung will use LiveNote. Samsung is willing to discuss with ON Semiconductor the convenience of this date for the deposition.

PLEASE TAKE FURTHER NOTICE that Samsung hereby requests that ON Semiconductor, at least by July 1, 2008, designate by service upon counsel for Samsung, the person or persons who will testify on ON Semiconductor's behalf regarding the topics set forth in Appendix A, and identify for each person so designated those topics or parts thereof to which (s)he will testify.

| | |
|---|---|
| Dated: June 19, 2008 | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
| | /s/ Andrew A. Lundgren (No. 4429) |
| | Josy W. Ingersoll (No. 1088)<br>John W. Shaw (No. 3362)<br>Andrew A. Lundgren (No. 4429)<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>P.O. Box 391<br>Wilmington, Delaware 19899-0391<br>(302) 571-6600 |
| | **OF COUNSEL:** |
| | John M. Desmarais<br>Jon T. Hohenthaner<br>KIRKLAND & ELLIS LLP<br>153 East 53rd Street<br>New York, NY 10022-4611<br>Telephone: 212-446-4800<br>Facsimile: 212-446-4900<br>E-mail: jdesmarais@kirkland.com<br>jhohenthaner@kirkland.com |
| | Attorneys For *SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA GENERAL, L.L.C., SAMSUNG SEMICONDUCTOR, INC., AND SAMSUNG AUSTIN SEMICONDUCTOR, L.L.C.* |

## APPENDIX A

I. **DEFINITIONS AND INSTRUCTIONS**

1. As used herein, "Samsung" means Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Telecommunications America General, L.L.C., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor, L.L.C., and all of their predecessors (merged, acquired, or otherwise), successors, subsidiaries, parents, sisters, divisions, departments, partnerships, and affiliates thereof, and all officers, directors, principals, agents, employees, attorneys, and other persons acting on their behalf.

2. As used herein, "ON Semiconductor" means ON Semiconductor Corp. and Semiconductor Components Industries, LLC, and all of their predecessors (merged, acquired, or otherwise), successors, subsidiaries, parents, sisters, divisions, departments, partnerships, and affiliates thereof, and all officers, directors, principals, agents, employees, attorneys, and other persons acting on their behalf.

3. As used herein, "Samsung Patent-in-Suit" means all patents asserted by Samsung against ON Semiconductor in this action, including any corrections and certificates of reexamination, including without limitation U.S. Patent No. 5,252,177.

4. As used herein, "ON Semiconductor Patents-in-Suit" means all patents asserted by ON Semiconductor against Samsung in this action, including any corrections and certificates of reexamination, including U.S. Patent Nos. 6,362,644; 5,563,594; 5,361,001; and 5,000,827.

5. As used herein, "ON Semiconductor Patented Product" refers to any product manufactured, sold, or licensed for/to/by ON Semiconductor that ON Semiconductor contends is covered by any of the ON Semiconductor Patents-in-Suit.

6.  As used herein, "ON Semiconductor Product" refers to any product made using a process for forming an electrical connection in a semiconductor device between a first conductive layer and a second conductive layer through an intervening insulation layer that includes at least the steps of: (i) forming a photoresist pattern on the insulation layer; (ii) etching regions of the insulation layer to expose the first conductive layer; (iii) removing photoresist from the insulation layer; (iv) forming an oxide layer on the exposed surface of the first conductive layer; (v) removing the oxide layer; and (vi) forming the second conductive layer. As used herein, "ON Semiconductor Product" includes, but is not limited to, products made using ON Semiconductor's EPI85DL, EPI85I, EPI99, EG14V, EPI92, EPI92DL, EPI92M, EG30, and EG17VDL manufacturing processes.

7.  As used herein, "and" and "or" shall be construed conjunctively and disjunctively so as to acquire the broadest meaning possible.

8.  As used herein, "any" and "all" shall each be construed to mean "each and every," so as to acquire the broadest meaning possible.

9.  As used herein, the singular of any word shall include the plural, and the plural shall include the singular.

10. As used herein, "include" and "including" shall be construed to mean "without limitation," so as to give the broadest possible meaning to requests and definitions containing those words.

11. As used herein, "related" or "relating" to any given subject means, without limitation, identifying, describing, discussing, concerning, assessing, stating, reflecting, constituting, containing, embodying, tending to support or refute, or referring directly or indirectly to, in any way, the particular subject matter identified.

12.   As used herein, the term "identify" as applied to a product means to state the product name, product type, product number (for those products with product numbers), model number (for those products with model numbers), marketing name, sales name, internal development name, revision level (for those products with revision levels), manufacturer, and any other designation known to ON Semiconductor.

13.   As used herein, the term "identify" as applied to a process means to state the process name, process number (for those processes with process numbers), internal development name, revision level (for those processes with revision levels), and any other designation known to ON Semiconductor.

14.   As used herein, "document" shall have the full meaning ascribed to it by the Federal Rules of Civil Procedure and includes the original and every non-identical copy or reproduction in the possession, custody, or control of ON Semiconductor, and further is used in a broad sense to refer to any electronic information or any tangible object or thing that contains, conveys, or records information.

15.   As used herein, "communication" means any transmittal of information in the form of facts, ideas, inquiries, or otherwise.

15.   Notice of deposition topics listed herein does not constitute any waiver by Samsung of any objection regarding similar deposition topics noticed by ON Semiconductor.

## II. DEPOSITION TOPICS

The deposition pursuant to Fed. R. Civ. P. 30(b)(6) will cover the following matters:

1. The dates and circumstances surrounding when ON Semiconductor first became aware of Samsung's purported infringement of each of the ON Semiconductor Patents-in-Suit and the reasons explaining the delay between when ON Semiconductor learned of Samsung's purported infringement and when ON Semiconductor asserted the ON Semiconductor Patents-in-Suit in this litigation.

2. When ON Semiconductor first provided Samsung with notice of each of the ON Semiconductor Patents-in-Suit, including notice under any provision of 35 U.S.C. § 287, ON Semiconductor's efforts to mark its products or to require its licensees mark their products as being covered by one or more of the ON Semiconductor Patents-in-Suit, and identification of documents and things relating to such notice and efforts.

3. When ON Semiconductor first became aware of the Samsung Patent-in-Suit, including an identification of all documents and communications relating to that awareness.

4. When ON Semiconductor first received notice of the Samsung Patent-in Suit, including notice under any provision of 35 U.S.C. § 287 and identification of documents and communications relating to such notice.

5. ON Semiconductor's sales and business activities in the U.S.

6. Pricing, including discounts and rebates, of the ON Semiconductor Patented Products sold or offered for sale in the U.S. since November 30, 2000.

7. Marketing polices, strategies, and practices for the ON Semiconductor Patented Products in the U.S. since November 30, 2000.

8. Sales of each ON Semiconductor Patented Product sold in the U.S. since November 30, 2000, including but not limited to quantity sold, pricing, volume, revenue, costs, profits, and margins.

9. All license agreements between ON Semiconductor and any other party regarding semiconductors and the manufacture of semiconductors, including ON Semiconductor's guidelines, policies, and usual practices for licensing its technology to others or for taking licenses to non-ON Semiconductor technology.

10. ON Semiconductor's attempts to license each ON Semiconductor Patent-in-Suit, including an identification of all documents and communications relating to any offers to license or licensing negotiations regarding each ON Semiconductor Patents-in-Suit and an identification of all people with knowledge such offers and negotiations.

11. An identification of all licensees of the ON Semiconductor Patents-in-Suit, including the date and terms of each such license, the amount of royalties paid under each such license, and an identification of all documents and communications relating to each such license.

12. License agreements between ON Semiconductor and any party.

13. Negotiations or discussions between ON Semiconductor and third parties pertaining to the licensing of any patents.

14. Value of patents purchased by ON Semiconductor and any plans to earn royalties from such patents.

15. Any patent valuations or any financial assessments conducted by ON Semiconductor or third parties related to any of the ON Semiconductor Patents-in-Suit, including when such valuations were performed, by whom, the methodology used, and any conclusions reached.

16. Any patent valuations or any financial assessments conducted by ON Semiconductor or third parties related to the Samsung Patent-in-Suit, including when such valuations were performed, by whom, the methodology used, and any conclusions reached.

17. Any attempts by MEI to design, devise, create, manufacture, or sell non-infringing alternatives to the Samsung Patent-in-Suit.

18. Any designs, concepts, or products that ON Semiconductor contends represent non-infringing alternatives to the Samsung Patent-in-Suit, the extent to which such alternatives have been studied, developed, manufactured and sold by ON Semiconductor, and the development and operating costs associated with each such alternative.

19. Design-around and/or alternatives to the inventions of the Samsung Patent-in-Suit relative to the ON Semiconductor Products, and the development costs associated with each such design-around and/or alternative.

20. The impact on quality, performance, reliability, and cost of the ON Semiconductor Products associated with design-around or alternatives to the inventions of the Samsung Patent-in-Suit.

21. Any alleged effects on ON Semiconductor resulting from Samsung's alleged infringement of any of the ON Semiconductor Patents-in-Suit.

22. Monthly and annual sales volume (units) and revenue (dollars), for each ON Semiconductor Product, broken down by product, from the date of first sale up to and including the present, excluding products made and sold exclusively outside of the United States.

23. Monthly and annual sales volume (units) and revenue (dollars), for all products made using the same processes involved in manufacturing the ON Semiconductor Products,

broken down by product, from the date of first sale up to and including the present, excluding products that are made and sold exclusively outside of the United States.

24. Monthly and annual sales volume (units) and revenue (dollars), broken down by product, for all products that ON Semiconductor contends are non-infringing alternatives to the inventions of the Samsung Patent-in-Suit, from the date of first sale up to and including the present, excluding products that are made and sold outside of the United States.

25. Monthly and annual sales volume (units) and revenue (dollars), broken down by product, for all products other than ON Semiconductor Products sold by ON Semiconductor to customers who also purchase ON Semiconductor Products, and the reasons for those purchases.

26. The types of financial and accounting information maintained by ON Semiconductor for the ON Semiconductor Products, including but not limited to sales, customer purchase history, pricing, cost, profit information, and customer location, from the date of first sale up to and including the present for each such product.

27. The accounting programs, packages, and/or databases maintained by ON Semiconductor that contain financial or accounting information related to the ON Semiconductor Products, from the date of first sale up to and including the present.

28. ON Semiconductor's policies, procedures, and documentation relating to marketing and sales of the ON Semiconductor Products, including but not limited to, business plans, strategic plans, marketing plans, and sales forecasts.

29. ON Semiconductor's accounting policies with respect to the allocation of all costs, including but not limited to manufacturing costs, operating costs, general and administrative costs, selling costs, and research and development costs for the ON Semiconductor Products.

30. Annual direct and indirect costs associated with ON Semiconductor's manufacture, purchase, marketing, distribution, and/or sale of the ON Semiconductor Products.

31. Capital expenditures made by ON Semiconductor relating to the manufacture, purchase, marketing, distribution, and/or sale of the ON Semiconductor Products.

32. The financial statements, including without limitation, the profit and loss statements for each of the ON Semiconductor Products (whether product by product or product group by product group), from the date of first sale up to and including the present for each such product.

33. The research and development activities (and associated costs of those activities) for the ON Semiconductor Products, including costs of development of modifications to the ON Semiconductor Products and efforts to reduce cost and/or improve reliability.

34. Profit margins on sales of the ON Semiconductor Products, by channel of distribution.

35. Pricing of the ON Semiconductor Products, by channel of distribution.

36. The manner in which the ON Semiconductor Products are priced for sale by ON Semiconductor, including considerations for price changes and/or rationale for price differences between products and across product groups.

37. ON Semiconductor's channels of distribution for the ON Semiconductor Products, from the date of first sale up to and including the present for those products.

38. Financial projections, forecasts, budgets, and variance reports relating to the marketing, sales, costs, profits, and pricing of the ON Semiconductor Products, including but not limited to, documents created at or before the time when those products were first sold.

39. Factors influencing purchasing decisions made by the wholesale and retail customers who purchase the ON Semiconductor Products.

40. Marketing of the ON Semiconductor Products, including but not limited to, advertisements, marketing materials and brochures that address product features and performance.

41. Customer demand for the ON Semiconductor Products.

42. ON Semiconductor's determination of asset values for its intellectual property.

43. Considerations taken into account by ON Semiconductor regarding the royalty rates it pays, offers to pay, and receives for intellectual property.

44. Competition in the market for the ON Semiconductor Products, including but not limited to, size of the pertinent market(s), competitors and competitors' products in each market, including the market share for each competitor as well each such competitor's products, and the relative advantages and disadvantages of those competitors' products.

45. Rates paid and royalties received (including, but not limited to, running royalty rates and lump sum payments) by ON Semiconductor for the use and/or licensing of patents, including patents comparable to the Samsung Patent-in-Suit.

46. All sales, revenue, and other financial documents, and the information therein, produced by ON Semiconductor in this litigation, including documents produced pursuant to the parties' agreement, as memorialized in the May 2, 2008 letter from Christine Chua to John Spaccarotella and the May 5, 2008 letter from John Spaccarotella to Christine Chua.

47. ON Semiconductor Corp.'s corporate structure and ownership, including but not limited to, the identity and ownership of any parent corporation(s), subsidiaries and affiliates.

48. Semiconductor Components Industries, LLC's corporate structure and ownership, including but not limited to, the identity and ownership of any parent corporation(s), subsidiaries and affiliates.

49. The relationship between Motorola and ON Semiconductor, including but not limited to any control, managerial or otherwise, Motorola has over ON Semiconductor.

50. The document, electronic mail, and voice mail retention policies of ON Semiconductor.

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, Esquire, hereby certify that on June 19, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Karen Jacobs Louden, Esquire [*klouden@mnat.com*]
> Morris Nichols Arsht & Tunnell
> 1201 North Market Street
> PO Box 1347
> Wilmington, DE 19899-1347

I further certify that on June 19, 2008, I caused a copy of the foregoing document to be served by hand delivery and e-mail on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### BY E-MAIL

> Behrooz Shariati, Esquire [*bshariati@jonesday.com*]
> T. Gregory Lanier, Esquire [*tglanier@jonesday.com*]
> Jones Day
> 1755 Embarcadero Road
> Palo Alto, CA 94303

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ ANDREW A. LUNDGREN (NO. 4429)
_____

Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
302-571-6600
alundgren@ycst.com