**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ON SEMICONDUCTOR CORP. and SEMICONDUCTOR COMPONENTS INDUSTRIES, L.L.C., <br><br> Plaintiffs, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA GENERAL, L.L.C., SAMSUNG SEMICONDUCTOR, INC., and SAMSUNG AUSTIN SEMICONDUCTOR L.L.C., <br><br> Defendants. | Civil Action No. 07-449-JJF |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA GENERAL, L.L.C., SAMSUNG SEMICONDUCTOR, INC., and SAMSUNG AUSTIN SEMICONDUCTOR L.L.C., <br><br> Plaintiffs, <br><br> v. <br><br> ON SEMICONDUCTOR CORP. and SEMICONDUCTOR COMPONENTS INDUSTRIES, L.L.C., <br><br> Defendants. | Civil Action No. 06-720-JJF |

**PROPOSED FINAL JURY INSTRUCTIONS**

# TABLE OF CONTENTS

1.      GENERAL INSTRUCTIONS ............................................................5

1.1     INTRODUCTION (AGREED) ........................................................5

1.2A    DUTY OF THE JURY (AGREED)...................................................6

1.3     BURDENS OF PROOF (SAMSUNG'S PROPOSAL)........................7

1.3A    BURDEN OF PROOF (ON SEMICONDUCTOR'S PROPOSAL) ...................9

1.4     EVIDENCE DEFINED (AGREED)................................................11

1.5     CONSIDERATION OF EVIDENCE (AGREED) ...........................13

1.6     USE OF NOTES (AGREED) ..........................................................14

1.7     DIRECT AND CIRCUMSTANTIAL EVIDENCE (AGREED) ......15

1.8     CREDIBILITY OF WITNESSES (AGREED) ...............................16

1.9     NUMBER OF WITNESSES (AGREED) ........................................17

1.10    EXPERT WITNESSES (SAMSUNG'S PROPOSAL) ....................18

1.10A   EXPERT WITNESSES (ON SEMICONDUCTOR'S PROPOSAL)................19

1.11    DEPOSITION TESTIMONY (AGREED).......................................20

1.12A   DEMONSTRATIVE EVIDENCE (ON SEMICONDUCTOR'S PROPOSAL)...............21

2.      THE PARTIES AND THEIR CONTENTIONS .............................22

2.1     THE PARTIES (SAMSUNG'S PROPOSAL) ................................22

2A.     THE PARTIES AND THEIR CONTENTIONS (ON SEMICONDUCTOR'S PROPOSAL)...................................................23

2.1A    THE PARTIES.................................................................................23

2.2     THE PARTIES' CONTENTIONS (SAMSUNG'S PROPOSAL)...................................24

2.2A    THE PARTIES' CONTENTIONS (ON SEMICONDUCTOR'S PROPOSAL) ..............25

3.      THE PATENT CLAIMS .................................................................26

3.1     THE PATENT CLAIMS – GENERALLY (SAMSUNG'S PROPOSAL) ......................26

3.1A    THE PATENT CLAIMS – GENERALLY (ON SEMICONDUCTOR'S PROPOSAL)...................................................28

3.2     CONSTRUCTION OF THE CLAIMS (SAMSUNG'S PROPOSAL) .............................30

3.2A    CONSTRUCTION OF THE CLAIMS (ON SEMICONDUCTOR'S PROPOSAL)........31

3.3     DEPENDENT AND INDEPENDENT CLAIMS (SAMSUNG'S PROPOSAL) .............32

3.3A    DEPENDENT AND INDEPENDENT CLAIMS (ON SEMICONDUCTOR'S PROPOSAL)...................................................33

3.4     OPEN ENDED OR "COMPRISING" CLAIMS (ON SEMICONDUCTOR'S PROPOSAL)...................................................34

| | | |
|---|---|---|
| 4 | INFRINGEMENT | 35 |
| 4.1 | PATENT INFRINGEMENT GENERALLY (SAMSUNG'S PROPOSAL) | 35 |
| 4.1A | PATENT INFRINGEMENT GENERALLY (ON SEMICONDUCTOR'S PROPOSAL) | 36 |
| 4.2 | PATENT INFRINGEMENT – DIRECT INFRINGEMENT (SAMSUNG'S PROPOSAL) | 37 |
| 4.2A | DIRECT INFRINGEMENT – KNOWLEDGE OF PATENT OR INTENT TO INFRINGE IMMATERIAL (ON SEMICONDUCTOR'S PROPOSAL) | 39 |
| 4.3 | DIRECT INFRINGEMENT – LITERAL INFRINGEMENT AND INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS (SAMSUNG'S PROPOSAL) | 40 |
| 4.3A | DIRECT INFRINGEMENT – LITERAL INFRINGEMENT OR INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS (ON SEMICONDUCTOR'S PROPOSAL) | 42 |
| 4.4A | INFRINGEMENT DESPITE ACCUSED INFRINGER'S IMPROVEMENTS OR PATENTS ON IMPROVEMENTS (ON SEMICONDUCTOR'S PROPOSAL) | 44 |
| 4.5 | INFRINGEMENT THROUGH IMPORTATION OR SALE OF A PRODUCT MADE BY PATENTED PROCESS (SAMSUNG'S PROPOSAL) | 45 |
| 4.5A | INFRINGEMENT THROUGH IMPORTATION, USE, OFFER TO SELL OR SALE OF A PRODUCT MADE BY PATENTED PROCESS (ON SEMICONDUCTOR'S PROPOSAL) | 46 |
| 4.6 | WHAT CONSTITUTES A SALE OR OFFER TO SELL IN THE UNITED STATES  (SAMSUNG'S PROPOSAL) | 47 |
| 4.6A | WHAT CONSTITUTES A SALE OR OFFER TO SELL IN THE UNITED STATES (ON SEMICONDUCTOR OBJECTS TO THIS INSTRUCTION) | 48 |
| 4.7 | PATENT INFRINGEMENT – INDIRECT INFRINGEMENT (SAMSUNG'S PROPOSAL) | 49 |
| 4.7A | PATENT INFRINGEMENT – INDIRECT INFRINGEMENT (ON SEMICONDUCTOR'S PROPOSAL) | 50 |
| 4.8 | INDIRECT INFRINGEMENT – INDUCING PATENT INFRINGEMENT (SAMSUNG'S PROPOSAL) | 51 |
| 4.8A | INDIRECT INFRINGEMENT – INDUCING PATENT INFRINGEMENT (ON SEMICONDUCTOR'S PROPOSAL) | 53 |
| 4.9 | WILLFUL INFRINGEMENT (ON SEMICONDUCTOR'S PROPOSAL) | 54 |
| 4.10 | WILLFUL INFRINGEMENT (SAMSUNG'S PROPOSAL) | 55 |
| 5. | INVALIDITY | 56 |
| 5.1 | PRESUMPTION OF VALIDITY (SAMSUNG'S PROPOSAL) | 56 |
| 5.1A | PRESUMPTION OF VALIDITY (ON SEMICONDUCTOR'S PROPOSAL) | 57 |

5.2      ANTICIPATION (SAMSUNG'S PROPOSAL) ....................................................59

5.2A    ANTICIPATION (ON SEMICONDUCTOR'S PROPOSAL) ........................................61

5.2.1    PRIOR PUBLICATION (SAMSUNG'S PROPOSAL)....................................................63

5.2.1A  PRIOR PUBLICATION (ON SEMICONDUCTOR'S PROPOSAL) ............................64

5.2.2    PRIOR PUBLIC USE (AGREED) ....................................................................................65

5.3      OBVIOUSNESS (SAMSUNG'S PROPOSAL)....................................................................66

5.3A    OBVIOUSNESS (ON SEMICONDUCTOR'S PROPOSAL) .......................................67

5.3.1    SCOPE AND CONTENT OF THE PRIOR ART (AGREED) ........................................68

5.3.2    DIFFERENCES OVER THE PRIOR ART (SAMSUNG'S PROPOSAL) .....................69

5.3.2A  DIFFERENCES OVER THE PRIOR ART (ON SEMICONDUCTOR'S
         PROPOSAL)......................................................................................................................71

5.3.3    LEVEL OF ORDINARY SKILL (SAMSUNG'S PROPOSAL) .....................................73

5.3.3A  LEVEL OF ORDINARY SKILL (ON SEMICONDUCTOR'S PROPOSAL).................74

5.3.4A  HINDSIGHT SHOULD NOT BE USED IN DETERMINING INVALIDITY
         (ON SEMICONDUCTOR'S PROPOSAL)........................................................................75

5.3.5    OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS (SECONDARY
         CONSIDERATIONS) (SAMSUNG'S PROPOSAL) .......................................................76

5.3.5A  OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS (SECONDARY
         CONSIDERATIONS) (ON SEMICONDUCTOR'S PROPOSAL)..................................77

5.3.6    OBVIOUS TO TRY (ON SEMICONDUCTOR'S PROPOSAL) ...................................78

5.4      ENABLEMENT (SAMSUNG'S PROPOSAL) ..................................................................79

5.4A    ENABLEMENT (ON SEMICONDUCTOR'S PROPOSAL)............................................80

5.5A    WRITTEN DESCRIPTION REQUIREMENT (ON SEMICONDUCTOR'S
         PROPOSAL)......................................................................................................................82

5.6      BEST MODE REQUIREMENT (SAMSUNG'S PROPOSAL) .......................................83

5.6A    BEST MODE REQUIREMENT (ON SEMICONDUCTOR'S PROPOSAL) .................85

5.7      INVENTORSHIP (SAMSUNG'S PROPOSAL) ...............................................................87

5.7A    INVENTORSHIP (ON SEMICONDUCTOR OBJECTS TO THIS
         INSTRUCTION)................................................................................................................88

6.       DAMAGES .........................................................................................................................89

6.1      DAMAGES GENERALLY (AGREED)..............................................................................89

6.2      COMPENSATORY PATENT DAMAGES IN GENERAL (AGREED)........................90

6.3      DATE DAMAGES BEGIN FOR PATENTS COVERING PRODUCTS
         (SAMSUNG'S PROPOSAL) ............................................................................................91

6.3A   DATE DAMAGES BEGIN FOR PATENTS COVERING PRODUCTS (ON SEMICONDUCTOR'S PROPOSAL)................................................................93

6.4A   DATE DAMAGES BEGIN FOR PATENTS COVERING PROCESSES (ON SEMICONDUCTOR'S PROPOSAL)................................................................95

6.5   WHAT IS A REASONABLE ROYALTY (SAMSUNG'S PROPOSAL) .......................96

6.5A   WHAT IS A REASONABLE ROYALTY (ON SEMICONDUCTOR'S PROPOSAL)........................................................................................................99

6.6A   FACTORS FOR DETERMINING REASONABLE ROYALTY (ON SEMICONDUCTOR'S PROPOSAL)..............................................................101

6.7   CLOSING STATEMENT – DAMAGES (SAMSUNG'S PROPOSAL) .......................103

6.7A   CLOSING STATEMENT – DAMAGES (ON SEMICONDUCTOR OBJECTS TO THIS INSTRUCTION) ..........................................................................104

7.   ADDITIONAL DEFENSES ..............................................................................105

7.1   LACHES (SAMSUNG'S PROPOSAL)................................................................105

7.1A   LACHES (ON SEMICONDUCTOR OBJECTS TO THIS INSTRUCTION) ..............108

7.2   ESTOPPEL (SAMSUNG'S PROPOSAL) .............................................................109

7.2A   ESTOPPEL (ON SEMICONDUCTOR OBJECTS TO THIS INSTRUCTION) ..........112

7.3   UNCLEAN HANDS (SAMSUNG'S PROPOSAL) ................................................113

7.3A   UNCLEAN HANDS (ON SEMICONDUCTOR OBJECTS TO THIS INSTRUCTION)..............................................................................................114

7.4   IMPLIED LICENSE (SAMSUNG'S PROPOSAL)..................................................115

7.4A   IMPLIED LICENSE (ON SEMICONDUCTOR OBJECTS TO THIS INSTRUCTION)..............................................................................................117

7.5   PATENT MISUSE (SAMSUNG'S PROPOSAL) ....................................................118

7.5A   PATENT MISUSE (ON SEMICONDUCTOR OBJECTS TO THIS INSTRUCTION)..............................................................................................119

7.6   WAIVER/ACQUIESCENCE (SAMSUNG'S PROPOSAL)........................................120

7.6A   WAIVER/ACQUIESCENCE (ON SEMICONDUCTOR OBJECTS TO THIS INSTRUCTION)..............................................................................................121

8.   DELIBERATION AND VERDICT .................................................................122

8.1   INTRODUCTION (AGREED) .........................................................................122

8.2   UNANIMOUS VERDICT (AGREED).................................................................123

8.3   DUTY TO DELIBERATE (AGREED).................................................................124

8.4   COURT HAS NO OPINION (AGREED).............................................................125

*Following are the parties' initial draft proposals for final jury instructions. At this time, the parties' claim constructions, summary judgment motions, motions to compel, and motions in limine are all pending with the Court. The content of the final jury instructions may be affected by the Court's rulings on these motions, and the parties reserve the right to supplement and modify the proposals. The sources cited for each instruction herein are not intended to be exhaustive lists of precedent and law supporting each instruction, but are instead only intended to refer to the primary source(s) used for each instruction. Where appropriate to address the issues in this case, the instructions have been modified from the cited model and sample instructions, and citation to model or sample instructions does not necessarily suggest a proposal is identical to the model or sample instruction.*

## 1. GENERAL INSTRUCTIONS

## 1.1   INTRODUCTION[1] (AGREED)

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case.

And last, I will explain the rules that you must follow during your deliberations in the jury room and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will also have a verdict form, which will list the questions that you must decide in this case.

---

[1] *Nice Sys., Inc. v. Witness Sys., Inc.*, No. 06-311-JJF (Jury Instruction No. 1.1, dated Jan. 21, 2007, D.I. 340).

## 1.2A    DUTY OF THE JURY[2] (AGREED)

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof, which party should prevail on any given issue.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

---

[2] *Affymetrix, Inc. v. Illumina, Inc.*, No. 04-901-JJF (Jury Instruction No. 1.8, dated Mar. 12, 2007, D.I. 422); 1993 Model Jury Instructions for Patent Cases in the United States District Court for the District of Delaware at 1.2.

**1.3     BURDENS OF PROOF[3] (SAMSUNG'S PROPOSAL)**

This is a civil case in which Samsung is accusing ON Semiconductor of infringing one of Samsung's patents.   ON Semiconductor maintains that Samsung's patent is invalid.   ON Semiconductor is also alleging that Samsung is infringing some ON Semiconductor's patents. Samsung maintains that ON Semiconductor's patents are invalid.  Samsung also contends that ON Semiconductor cannot enforce its patents against Samsung or recover damages from Samsung

Generally, a patent owner has the burden of proving patent infringement and its claim of damages by what is called a preponderance of the evidence.  That means the patent owner has to produce evidence which, when considered in light of all of the facts, leads you to believe that what the patent owner claims is more likely true than not.  To put it differently, if you were to put the parties' evidence on the opposite sides of a scale, the evidence supporting the patent owner's claims must make the scales tip somewhat toward the patent owner's side.

There is one exception to the general rule that a patent owner bears the burden of proving infringement, applicable in this case only with respect to Samsung's '177 patent.  If you find that Samsung has shown that there is a substantial likelihood that ON Semiconductor makes products using the process claimed in Samsung's '177 patent, and that Samsung made a reasonable effort in this litigation to determine the actual process ON Semiconductor uses but was unable to so determine from the evidence ON Semiconductor provided to Samsung or that was publicly available to Samsung, then ON Semiconductor has the burden of proving by a preponderance of the evidence that it does not use the process claimed in Samsung's '177 patent.

---

[3] 35 U.S.C. § 295; *Nice Sys., Inc. v. Witness Sys., Inc*., No. 06-311-JJF (Jury Instruction No. 1.3, dated Jan. 21, 2007, D.I. 340).

To prevail on a defense of patent invalidity against a charge of patent infringement, a party has the burden to prove each asserted claim of the patent is not valid by clear and convincing evidence.   Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt."   That burden does not apply in a civil case and does not play any part in this case.   Therefore, you should not consider it at all in your deliberations.

## 1.3A    BURDEN OF PROOF[4] (ON SEMICONDUCTOR'S PROPOSAL)

This is a civil case in which both parties assert that the other party infringes their patents. ON Semiconductor accuses Samsung of infringing four of its patents, and Samsung accuses ON Semiconductor of infringing a Samsung patent. ON Semiconductor maintains that Samsung's patent is invalid, and Samsung maintains that ON Semiconductor's patents are invalid. Both parties are seeking damages for alleged infringement of each other's patents.

A patent owner has the burden of proving patent infringement and its claim of damages by what is called a preponderance of the evidence. That means the patent owner has to produce evidence which, when considered in light of all of the facts, leads you to believe that what the patent owner claims is more likely true than not. To put it differently, if you were to put the parties' evidence on the opposite sides of a scale, the evidence supporting the patent owner's claims must make the scales tip somewhat toward the patent owner's side.

As I noted earlier, each party urges that the other's patents are invalid. A patent, however, is presumed to be valid. Accordingly, to prevail on a defense of patent invalidity, a party has the burden of proving that the patent is invalid by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable. Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

---

[4] *Nice Sys., Inc. v. Witness Sys., Inc.*, No. 06-311-JJF (Jury Instruction No. 1.3, dated Jan. 21, 2007, D.I. 340); 1993 Model Jury Instructions for Patent Cases in the United States District Court for the District of Delaware at 1.3. ON Semiconductor objects to Samsung's attempt to include an instruction of 35 U.S.C. § 295 as it has no applicability to this case.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt."  That burden does not apply in a civil case and does not play any part in this case.  Therefore, you should not consider it at all in your deliberations.

## 1.4    EVIDENCE DEFINED[5] (AGREED)

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations that the lawyers agreed to.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence.  My legal rulings are not evidence.  Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked.  From time to time it may be the duty of the attorneys to make objections to evidence that should not be presented at this trial under the rules of evidence.  It is my duty as the judge to rule on those objections and decide whether you can consider the evidence in question.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  And sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record.  You must completely ignore all these things.  Do not even think about them.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

---

[5] *Nice Sys., Inc. v. Witness Sys., Inc.*, No. 06-311-JJF (Jury Instruction No. 1.4, dated Jan. 21, 2007, D.I. 340).

Make your decision based only on the evidence, as I have defined it here, and nothing else.

**1.5     CONSIDERATION OF EVIDENCE[6] (AGREED)**

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

---

[6] *Nice Sys., Inc. v. Witness Sys., Inc.*, No. 06-311-JJF (Jury Instruction No. 1.5, dated Jan. 21, 2007, D.I. 340).

**1.6    USE OF NOTES[7] (AGREED)**

You may use notes taken during trial to assist your memory.  However, you should use caution in consulting your notes.  There is always a tendency to attach undue importance to matters that you have written down.  Some testimony that is considered unimportant at the time presented, and thus not written down, takes on greater importance later on in the trial in light of all the evidence presented.  Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

---

[7] *Nice Sys., Inc. v. Witness Sys., Inc.*, No. 06-311-JJF (Jury Instruction No. 1.6, dated Jan. 21, 2007, D.I. 340).

## 1.7   DIRECT AND CIRCUMSTANTIAL EVIDENCE[8] (AGREED)

Now, some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact.  If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

---

[8] *Nice Sys., Inc. v. Witness Sys., Inc.*, No. 06-311-JJF (Jury Instruction No. 1.7, dated Jan. 21, 2007, D.I. 340).

**1.8      CREDIBILITY OF WITNESSES[9] (AGREED)**

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact and whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he gave at the trial.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

---

[9] *Nice Sys., Inc. v. Witness Sys., Inc.*, No. 06-311-JJF (Jury Instruction No. 1.8, dated Jan. 21, 2007, D.I. 340).

**1.9     NUMBER OF WITNESSES[10] (AGREED)**

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

---

[10] *Affymetrix, Inc. v. Illumina, Inc.*, No. 04-901-JJF (Jury Instruction No. 1.8, dated Mar. 12, 2007, D.I. 422).

## 1.10   EXPERT WITNESSES[11] (SAMSUNG'S PROPOSAL)

When knowledge of technical subject matter may be helpful to the jury, a person who has special training, education, or experience in that technical field - a person called an expert witness - is permitted to state his opinion on those technical matters.

You are not required, however, to accept that opinion.  As with any other witness, it is up to you to decide how much weight to give the opinion in light of all the evidence in the case.

You should take into account the expert's actual experience in the field, such as whether he has worked in the technology area to which he is testifying.  Even though the person rendering the opinion may have been admitted by the court as an expert, you may weigh his level of expertise in determining the reliability of his opinion.

---

[11] *Nice Sys., Inc. v. Witness Sys., Inc.*, No. 06-311-JJF (Jury Instruction No. 1.10, dated Jan. 21, 2007, D.I. 340).

**1.10A**      **EXPERT WITNESSES[12] (ON SEMICONDUCTOR'S PROPOSAL)**

When knowledge of technical subject matter may be helpful to the jury, a person who has special training, education, or experience in that technical field - a person called an expert witness - is permitted to state his opinion on those technical matters.

You are not required, however, to accept that opinion.  As with any other witness, it is up to you to decide how much weight to give the opinion in light of all the evidence in the case.

---

[12] 1993 Model Jury Instructions for Patent Cases in the United States District Court for the District of Delaware at 1.9.

**1.11    DEPOSITION TESTIMONY[13] (AGREED)**

During the trial, certain testimony was presented to you by the reading of a deposition transcript or the playing of videotaped excerpts from a deposition.  This testimony is entitled to the same consideration you would give it had the witness personally appeared in court.

---

[13] *Nice Sys., Inc. v. Witness Sys., Inc.*, No. 06-311-JJF (Jury Instruction No. 1.11, dated Jan. 21, 2007, D.I. 340).

## 1.12A  DEMONSTRATIVE EVIDENCE[14,]  (ON SEMICONDUCTOR'S PROPOSAL)[15]

During the course of this trial, you have seen many exhibits.  Many of these exhibits were admitted as evidence.  You will have these admitted exhibits in the jury room for your deliberations.  The remainder of the exhibits (including illustrations and animations) were offered to help illustrate the testimony of the various witnesses.  These illustrative exhibits, called "demonstrative exhibits," have not been admitted, are not evidence and should not be considered as evidence.  Rather, it is the underlying testimony of the witnesses that you heard when you saw the demonstrative exhibits that is the evidence in this case.

In some cases, a party may present a chart, summary or calculation in place of voluminous documents, recordings or images. These summaries may be admitted as evidence and they will be provided to you in the jury room for your deliberations[16].

---

[14] *Affymetrix, Inc. v. Illumina, Inc*., No. 04-901-JJF (Jury Instruction No. 1.11, dated Mar. 12, 2007, D.I. 422).

[15] Samsung does not believe this instruction is necessary, and therefore objects to it.

[16] Fed. R. Evid. 1006.

## 2.   THE PARTIES AND THEIR CONTENTIONS

## 2.1   THE PARTIES[17] (SAMSUNG'S PROPOSAL)

The parties in this case are:

Samsung Electronics Co., Ltd. and four of its subsidiaries, including Samsung Electronics America, Inc., Samsung Telecommunications America General, L.L.C., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor, L.L.C. When I refer to these parties collectively, I will refer to them as "Samsung."

The other party in this case is ON Semiconductor Corp. and its subsidiary Semiconductor Components Industries, L.L.C. When I refer to these parties collectively, I will refer to them as "ON Semiconductor."

---

[17] *Nice Sys., Inc. v. Witness Sys., Inc*., No. 06-311-JJF (Jury Instruction No. 2.1, dated Jan. 21, 2007, D.I. 340).

## 2A.   THE PARTIES AND THEIR CONTENTIONS (ON SEMICONDUCTOR'S PROPOSAL)

### 2.1A   THE PARTIES[18]

The plaintiffs in this case are ON Semiconductor Corporation and its subsidiary Semiconductor Components Industries, L.L.C.. When I refer to these parties collectively, I will refer to them as "ON Semiconductor."

The defendants are Samsung Electronics Company Ltd., and four of its subsidiaries -- Samsung Electronics America, Inc., Samsung Telecommunications America General, L.L.C., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor L.L.C..  When I refer to these parties collectively, I will refer to them as "Samsung."

---

[18] *Nice Sys., Inc. v. Witness Sys., Inc*., No. 06-311-JJF (Jury Instruction No. 2.1, dated Jan. 21, 2007, D.I. 340).

## 2.2    THE PARTIES' CONTENTIONS[19] (SAMSUNG'S PROPOSAL)

In this case, Samsung is accusing ON Semiconductor of infringing one of Samsung's patents, the '177 patent.  Samsung contends that it is entitled to damages to compensate for ON Semiconductor's infringement.   ON Semiconductor maintains that the asserted claims of Samsung' patent are invalid and not infringed.

ON Semiconductor is also alleging that Samsung is infringing ON Semiconductor's '644 patent, its '594 patent, its '001 patent, and its '827 patent.  ON Semiconductor contends that it is entitled to damages to compensate for Samsung's infringement.   Samsung maintains that the asserted claims of ON Semiconductor's patents are invalid and not infringed.   Samsung also contends that ON Semiconductor cannot enforce its patents against Samsung or recover damages from Samsung.

---

[19] *Affymetrix, Inc. v. Illumina, Inc*., No. 04-901-JJF (Jury Instruction No. 1.8, dated Mar. 12, 2007, D.I. 422); *Nice Sys., Inc. v. Witness Sys., Inc*., No. 06-311-JJF (Jury Instruction No. 2.2 and 2.3, dated Jan. 21, 2007, D.I. 340).

## 2.2A   THE PARTIES' CONTENTIONS[20] (ON SEMICONDUCTOR'S PROPOSAL)

ON Semiconductor contends that Samsung directly and indirectly infringes various claims of ON Semiconductor's patents.  I will explain the elements of direct and indirect infringement shortly.  I will now explain what is meant by the term patent "claims." Specifically, ON Semiconductor charges that Samsung has infringed, and continues to infringe, certain claims of the 5,361,001 patent, the 5,563,594 patent, and the 6,362,644 patent, and the 5,000,827 patent.  I will refer to these four patents collectively as the "ON Semiconductor patents-in-suit," or individually by the last three numbers of the patent.  ON Semiconductor also contends that Samsung's infringement has been willful.  ON Semiconductor seeks damages for Samsung's alleged infringement in the form of a reasonable royalty.  Samsung contends that it does not infringe the ON Semiconductor patents-in-suit and that they are invalid.

Samsung also contends that ON Semiconductor directly and indirectly infringes various claims of the Samsung patent.  Specifically, Samsung charges that ON Semiconductor has infringed, and continues to infringe, certain claims of the 5,252,177 patent.  I will refer to this patent as the "Samsung patent-in-suit," or by the last three numbers of the patent.  Samsung seeks damages for ON Semiconductor's alleged infringement in the form of a reasonable royalty. ON Semiconductor contends that it does not infringe the Samsung patent-in-suit and that the patent is invalid.

---

[20] *Affymetrix, Inc. v. Illumina, Inc*., No. 04-901-JJF (Jury Instruction No. 2.2, dated Mar. 12, 2007, D.I. 422); *Nice Sys., Inc. v. Witness Sys., Inc*., No. 06-311-JJF (Jury Instruction No. 2.2, dated Jan. 21, 2007, D.I. 340).

3. **THE PATENT CLAIMS**

3.1 **THE PATENT CLAIMS – GENERALLY[21] (SAMSUNG'S PROPOSAL)**

Deciding whether a claim covers a product or process is a two-step process. First, the meaning of the patent claim is determined as a matter of law. That job is for the Court, and I will tell you shortly what the key terms of the asserted claims mean as a matter of law. In the second step, you must compare each claim as I have interpreted it to each of the accused products or processes to determine whether every element of the claim can be found in that accused product or process. This element-by-element comparison is your responsibility as the jury for this case. If you find that a claim covers an accused product or process, you must additionally determine whether or not the accused party has engaged in acts with respect to that product or process that constitute infringement, as I will explain below.

Before you can decide the issues in this case, you will have to understand the patent "claims." The patent claims are the numbered paragraphs at the end of the patent. The patent claims involved here are:

> claims 1-5, 8, and 11-15 of Samsung's '177 patent;
>
> claims 6-10, 12, and 16 of ON Semiconductor's '644 patent;
>
> claim 8 of ON Semiconductor's '594 patent;
>
> claim 4 of ON Semiconductor's '001 patent; and
>
> claim 1 of ON Semiconductor's '827 patent.

The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent. Only the claims of the patent can be infringed.

---

[21] *Affymetrix, Inc. v. Illumina, Inc.*, No. 04-901-JJF (Jury Instruction No. 3.1, dated Mar. 12, 2007, D.I. 422).

Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed.  Each of the claims must be considered individually, and to show patent infringement by a given product, a patent owner need only establish that one claim has been infringed.

Claims may be directed to products or they may be directed to methods for making or using a product.

Claims are typically divided into parts called "elements."  For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the table top.  The tabletop, legs and glue are each a separate element of the claim.

### 3.1A   THE PATENT CLAIMS – GENERALLY[22] (ON SEMICONDUCTOR'S PROPOSAL)

Deciding whether a claim has been directly infringed is a two-step process.  First, the meaning of the patent claim is determined as a matter of law.  That job is for the Court, and I will tell you shortly what the key terms of the asserted claims mean as a matter of law.  In the second step, you must compare each claim as I have interpreted it to each of the accused products or processes to determine whether every element of the claim can be found in that accused product or process.  This element-by-element comparison is your responsibility as the jury for this case.

Before you can decide whether any of the patents-in-suit have been infringed, you will have to understand the patent "claims."  The patent claims are the numbered paragraphs at the end of the patent.  Only the claims of the patent can be infringed.  Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed.

Claims may be directed to products or they may be directed to methods for making or using a product.

Claims are typically divided into parts called "elements."  For a patent claim to be infringed, each element of the claims must be present in the accused product or method.  For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the table top.  The tabletop, legs and glue are each a separate element of the claim.

The patent claims involved here are:

claim 4 of ON Semiconductor's '001 patent;

---

[22] *Affymetrix, Inc. v. Illumina, Inc.*, No. 04-901-JJF (Jury Instruction No. 3.1, dated Mar. 12, 2007, D.I. 422); 1993 Model Jury Instructions for Patent Cases in the United States District Court for the District of Delaware at 3.1.

claim 8 of ON Semiconductor's '594 patent;

claims 6-10, 12, and 16 of ON Semiconductor's '644 patent;

claim 1 of ON Semiconductor's '827 patent; and

claims 1-5, 8, and 11-15 of Samsung's '177 patent.

While a party may assert infringement of more than one patent claim, each of the claims must be considered individually, and to show patent infringement, a patent owner need only establish that one claim has been infringed.

**3.2    CONSTRUCTION OF THE CLAIMS[23] (SAMSUNG'S PROPOSAL)**

In deciding whether or not an accused product infringes a patent, the first step is to understand the meaning of the words used in the patent claims.

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning.  You must accept the meanings I give you and use them when you decide whether or not the patent is valid or infringed.

It may be helpful to refer to the copies of the patents-in-suit that you have been given as I discuss the claims at issue here.  The claims of the patents are toward the end of each patent. You are advised that the following definitions for the following terms must be applied:

INSERT CLAIM CONSTRUCTION CHART

---

[23] *Nice Sys., Inc. v. Witness Sys., Inc*., No. 06-311-JJF (Jury Instruction No. 3.2, dated Jan. 21, 2007, D.I. 340).

### 3.2A   CONSTRUCTION OF THE CLAIMS[24] (ON SEMICONDUCTOR'S PROPOSAL)

In deciding whether or not an accused product infringes a patent, the first step is to understand the meaning of the words used in the patent claims.

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning.  You must accept the meanings I give you and use them when you decide whether or not the patent is valid or infringed.  You must ignore any different interpretations given to these terms by the witnesses, including expert witnesses, or the attorneys.  If I have not provided a specific definition for a given term or phrase, you are to use the ordinary English language meaning of that term.

It may be helpful to refer to the copies of the patents-in-suit that you have been given as I discuss the claims at issue here.  The claims of the patents are at the end of each patent.  You are advised that the following definitions for the following terms must be applied:

INSERT CLAIM CONSTRUCTION CHART

---

[24] *Affymetrix, Inc. v. Illumina, Inc*., No. 04-901-JJF (Jury Instruction No. 3.4, dated Mar. 12, 2007, D.I. 422).

### 3.3    DEPENDENT AND INDEPENDENT CLAIMS[25] (SAMSUNG'S PROPOSAL)

There are two different types of claims in a patent.  The first type is called an independent claim.  An independent claim does not refer to any other claim of the patent.  An independent claim is read separately to determine its scope.

On the other hand, a dependent claim refers to and depends on at least one other patent claim and thus incorporates whatever that other claim says.  Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

For example, claim 1 of Samsung's '177 patent is an independent claim.  You know this because this claim mentions no other claim.   Accordingly, the words of this claim are read by themselves in order to determine what the claim covers.

Claim 2 of Samsung's '177 patent, on the other hand, is a dependent claim that refers to claim 1.  Accordingly, the words of claims 1 and 2 must be read together in order to determine what the dependent claim 2 covers.

Some claims of the patents-in-suit are broader than other claims.  You are not to imply the limitations or words of the narrower or dependent claim into a broader or independent claim if the broader claim does not include the same limitations.

---

[25] *Nice Sys., Inc. v. Witness Sys., Inc*., No. 06-311-JJF (Jury Instruction No. 3.3, dated Jan. 21, 2007, D.I. 340).

### 3.3A    DEPENDENT AND INDEPENDENT CLAIMS[26] (ON SEMICONDUCTOR'S PROPOSAL)

There are two different types of claims in a patent.  The first type is called an independent claim.  An independent claim does not refer to any other claim of the patent.  An independent claim is read separately to determine its scope.

On the other hand, a dependent claim refers to and depends on at least one other patent claim and thus incorporates whatever that other claim says.  Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

For example, claim 1 of the '594 patent is an independent claim.  You know this because this claim mentions no other claim.   Accordingly, the words of this claim are read by themselves in order to determine what the claim covers.

Claim 2 of the '594 patent, on the other hand, is a dependent claim that refers to claim 1.  Accordingly, the words of claims 1 and 2 must be read together in order to determine what the dependent claim 2 covers.

Some claims of the patents-in-suit are broader than other claims.  You are not to imply the limitations or words of the narrower or dependent claim into a broader or independent claim if the broader claim does not include the same limitations.

---

[26] *Nice Sys., Inc. v. Witness Sys., Inc*., No. 06-311-JJF (Jury Instruction No. 3.3, dated Jan. 21, 2007, D.I. 340).

## 3.4     OPEN ENDED OR "COMPRISING" CLAIMS[27] (ON SEMICONDUCTOR'S PROPOSAL)[28]

The preambles to some of the independent claims of the patents in suit use the transitional phrase "comprising."   "Comprising" is interpreted the same as "including" or "containing."  In patent claims, comprising means that the claims are open-ended.  As such, the claims are not limited to only what is in the claims.  Based on this explanation, if you find that the accused products include all of the limitations in any of the patent claims, the fact that they may also include an additional component is irrelevant.  The presence of additional components in the accused product or method does not mean that the product or method does not infringe a patent claim.  For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the table top.  Such a claim would be infringed by a chair table that includes a tabletop, six legs, and the glue that secures the legs to the table top.  Adding two extra legs would not avoid infringement.

---

[27] *Nice Sys., Inc. v. Witness Sys., Inc.*, No. 06-311-JJF (Jury Instruction No. 4.7, dated Jan. 21, 2007, D.I. 340).

[28] Samsung believes this instruction is potentially confusing and unnecessary in this case, and therefore objects to it.

# 4   INFRINGEMENT

## 4.1   PATENT INFRINGEMENT GENERALLY[29] (SAMSUNG'S PROPOSAL)

A patent owner has the right to stop others from making, using, selling, offering to sell within the United States or importing into the United States the patented invention by filing a lawsuit for patent infringement.

Patent law provides that any person or business entity which makes, uses, sells, offers to sell in the United States, or imports into the United States, without a patent owner's permission, any product or process legally protected by at least one claim of a patent before the patent expires, infringes the patent.

A patent claim may be infringed directly or indirectly.

---

[29] *Affymetrix, Inc. v. Illumina, Inc*., No. 04-901-JJF (Jury Instruction No. 4.1, dated Mar. 12, 2007, D.I. 422).

## 4.1A    PATENT INFRINGEMENT GENERALLY[30] (ON SEMICONDUCTOR'S PROPOSAL)

Patent law provides that any person or business entity that makes, uses, sells, offers to sell, or imports, any product or practices a claimed method, without a patent owner's permission, within the United States before the patent expires, infringes a patent.

A patent owner may enforce its right to stop others from making, using, selling, or offering to sell, in the United States, or importing into the United States, the patented invention by filing a lawsuit for patent infringement.  Here, ON Semiconductor has alleged that Samsung's products or processes infringe one or more claims of the ON Semiconductor patents-in-suit. Similarly, Samsung has alleged that ON Semiconductor's processes infringe one or more claims of the Samsung patent-in-suit.

There are several ways to infringe a patent.  One may directly infringe a patent, either literally or under the doctrine of equivalents, which I will explain shortly.   Alternatively, one may indirectly infringe a patent by inducing others to infringe a patent, in which case both the inducer and the direct infringer are liable for infringement.

---

[30] *Affymetrix, Inc. v. Illumina, Inc*., No. 04-901-JJF (Jury Instruction No. 4.1, dated Mar. 12, 2007, D.I. 422); *Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.*, C.A. No. 04-1371-JFF (Jury Instruction No. 4.1).

**4.2    PATENT INFRINGEMENT – DIRECT INFRINGEMENT[31] (SAMSUNG'S PROPOSAL)**

One may directly infringe a patent literally or under the doctrine of equivalents.  A party directly infringes a patent by making, using, selling, or offering for sale in the United States, or importing into the United States, the entire claimed apparatus, or by performing each and every step of a claimed method in the United States.

You must consider each claim individually and reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

Generally, a patent owner has the burden of proving patent infringement and its claim of damages by what is called a preponderance of the evidence.  That means the patent owner has to produce evidence which, when considered in light of all of the facts, leads you to believe that what the patent owner claims is more likely true than not.  To put it differently, if you were to put the parties' evidence on the opposite sides of a scale, the evidence supporting the patent owner's claims must make the scales tip somewhat toward the patent owner's side.

There is one exception to the general rule that a patent owner bears the burden of proving infringement, applicable in this case only with respect to Samsung's '177 patent.  If you find that Samsung has shown that there is a substantial likelihood that ON Semiconductor makes products using the process claimed in Samsung's '177 patent, and that Samsung made a reasonable effort in this litigation to determine the actual process ON Semiconductor uses but was unable to so determine from the evidence ON Semiconductor provided to Samsung or that was publicly

---

[31] 35 U.S.C. § 295; *Affymetrix, Inc. v. Illumina, Inc.*, No. 04-901-JJF (Jury Instruction No. 4.1, dated Mar. 12, 2007, D.I. 422).

available to Samsung, then ON Semiconductor has the burden of proving by a preponderance of

the evidence that it does not use the process claimed in Samsung's '177 patent.

**4.2A   DIRECT INFRINGEMENT – KNOWLEDGE OF PATENT OR INTENT TO INFRINGE IMMATERIAL[32] (ON SEMICONDUCTOR'S PROPOSAL)[33]**

A party may directly infringe a patent without knowledge that what it is doing is an infringement of the patent.  A party may also infringe even though it, in good faith believes that what it is doing is not an infringement of any patent.

Samsung is liable for directly infringing ON Semiconductor's patents if you find that ON Semiconductor has proven by a preponderance of the evidence that Samsung has made, used or sold the invention defined in at least one claim of the ON Semiconductor patents-in-suit. Similarly, ON Semiconductor is liable for directly infringing Samsung's patents if you find that the Samsung has proven by a preponderance of the evidence that ON Semiconductor has made, used or sold the invention defined in at least one claim of the Samsung patent-in-suit.

---

[32] *Affymetrix, Inc. v. Illumina, Inc*., No. 04-901-JJF (Jury Instruction No. 4.2, dated Mar. 12, 2007, D.I. 422).

[33] Samsung believes this instruction is potentially confusing, duplicative, and unnecessary in this case, and therefore objects to it.

**4.3     DIRECT INFRINGEMENT – LITERAL INFRINGEMENT AND
INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS[34] (SAMSUNG'S
PROPOSAL)**

In order to be covered by a patent claim, a product or process must include every

limitation of the claim.  If a product or process omits a single element or step recited in a claim,

then you must find that the product or process does not infringe that claim.  You must consider

each of the patent claims separately.

A claim limitation may be present in an accused product or process in one of two ways -

either literally or under what is known as the doctrine of equivalents.  A claim limitation is

literally present if it exists in the accused product or process just as it is described in the claim

language, either as I have explained that language to you or, if I did not explain it, as you

understand it.

A claim limitation is present in an accused product or process under the doctrine of

equivalents if the differences between them are insubstantial.  One way to determine this is to

look at whether or not the accused product or process performs substantially the same function in

substantially the same way, to achieve substantially the same result as the claimed invention.

Another way is to consider whether or not people of ordinary skill in the art believe that the

structure or step of the accused product or process and the structure or step recited in the patent

claim limitation are interchangeable.

Equivalency is determined at the time of the activities accused of infringement, and not

by what was known at the time the patent application was filed or when the patent issued.  Thus,

the inventor need not have foreseen, and the patent need not describe, all potential equivalents to

---

[34] *Nice Sys., Inc. v. Witness Sys., Inc*., No. 06-311-JJF (Jury Instruction No. 4.2, dated Jan. 21,
2007, D.I. 340).

the invention covered by the claims.  Also, slight changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for doctrine of equivalents purposes.  The question is whether the accused product or process contains an equivalent for each element of the claim that is not literally present in the accused device.  The question is not whether the accused product or process as a whole is equivalent to the claimed invention as a whole.

**4.3A   DIRECT INFRINGEMENT – LITERAL INFRINGEMENT OR INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS[35] (ON SEMICONDUCTOR'S PROPOSAL)**

There are two ways in which a patent claim may be directly infringed.  First, a claim may be literally infringed.  Second, a claim may be infringed under what is called the doctrine of equivalents.

A patent claim is literally infringed if an accused product or process includes each element or step in the patent claim.  If an accused product or process omits any single element recited in the patent claim, that product or process does not literally infringe the claim.  You must determine literal infringement with respect to each patent claim individually.

If you do not find literal infringement, you may consider infringement under the doctrine of equivalents.  I have referred to the doctrine of equivalents before.  Now it is time to explain this term.

A claim element or step is present in an accused product or process under the doctrine of equivalents if the differences between each claim element or step and the product or process are insubstantial.  One way to determine this is to look at whether or not the product or process performs substantially the same function, in substantially the same way, to achieve substantially the same result as the element or step recited in the patent claim.  Another way is to consider whether a person skilled in the field of the patent believes that the structure or step of the accused product or process and the element or step in the claim are interchangeable.

Application of the doctrine of equivalents is on an element-by-element basis, meaning that, for an accused product or process to infringe under the doctrine of equivalents, the element or step

---

[35] *Affymetrix, Inc. v. Illumina, Inc*., No. 04-901-JJF (Jury Instruction No. 4.4, dated Mar. 12, 2007, D.I. 422); *Ethicon Endo-Surgery Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1320

(Continued…)

of a patent claim which is not literally present in the accused product or process must be present

by equivalence.  However, a one-to-one correspondence of elements or steps is not required, and

elements or steps may be combined in the accused product or process without loss of

equivalency.  The question is not whether the accused product or process as a whole is

equivalent to the claimed invention as a whole.  Rather, the question is whether the accused

product or step contains an equivalent for each element of the claim or step that is not literally

present in the accused product or process.

It is not a requirement under doctrine of equivalents infringement that those of ordinary

skill in the field knew of the equivalent when the patent application was filed or when the patent

issued.  The question of whether the accused products or processes infringe under the doctrine of

equivalents is to be determined at the time of the alleged infringement.  Technology developed

after the date of invention is the most typical situation where an equivalent may be found,

because the law does not require that an applicant describe in his specification every conceivable

and possible future embodiment of his invention.

---

(Fed. Cir. 1998).

**4.4A   INFRINGEMENT DESPITE ACCUSED INFRINGER'S IMPROVEMENTS OR PATENTS ON IMPROVEMENTS[36] (ON SEMICONDUCTOR'S PROPOSAL)[37]**

You may find that the accused products or processes represent an improvement over the invention defined in the patent claims.  You are not to presume that these facts mean that a party cannot infringe the asserted patent claims.  As long as an accused product or process includes all of the elements or steps of at least one of the asserted patent claims, or if an accused product or process is found to be equivalent under the doctrine of equivalents, then the patent claim is infringed by the accused product or process despite any improvements.

---

[36] 1993 Model Jury Instructions for Patent Cases in the United States District Court for the District of Delaware at 3.16; *Nice Sys., Inc. v. Witness Sys., Inc.*, No. 06-311-JJF (Jury Instruction No. 4.8, dated Jan. 21, 2007, D.I. 340).

[37] Samsung believes this instruction is potentially confusing, duplicative, and unnecessary in this case, and therefore objects to it.

**4.5     INFRINGEMENT THROUGH IMPORTATION OR SALE OF A PRODUCT MADE BY PATENTED PROCESS[38] (SAMSUNG'S PROPOSAL)**

ON Semiconductor's '827 and Samsung's '177 patents are directed to processes for making products.  If a claim is directed to a process, a person infringes that claim if the person, without the patent holder's authorization, imports into the United States, or offers to sell, sells, or uses within the United States, a product that was made by a process that meets, either literally or under the doctrine of equivalents, all of the requirements of the claim, unless the product has been materially changed by later processes or the process was used only to produce a trivial and nonessential component of the product that is imported.

It is not enough for infringement that someone practices the steps of a United States patent outside of the United States.  Rather, liability for infringement in this circumstance can be found only if the alleged infringer uses the steps claimed by the patent to make specific products that the alleged infringer then imports into the United States or offers to sell, sells, or uses within the United States without having materially changed the product and also without having incorporated the product as a trivial and nonessential component of the product that is actually imported, offered for sale, sold or used.

---

[38] 35 U.S.C. § 271(g); Federal Circuit Bar Association Model Patent Jury Instruction No. 3.5 (Jan. 12, 2008).

**4.5A   INFRINGEMENT THROUGH IMPORTATION, USE, OFFER TO SELL OR SALE OF A PRODUCT MADE BY PATENTED PROCESS[39] (ON SEMICONDUCTOR'S PROPOSAL)**

ON Semiconductor's '827 and Samsung's '177 patents are directed to processes for making products.  If a claim is directed to a process, a person infringes that claim if the person, without the patent holder's authorization, imports into the United States, or makes, uses, offers to sell, or sells within the United States, a product that was made by a process that meets, either literally or under the doctrine of equivalents, all of the requirements of the claim, unless the product has been materially changed by later processes or the process was used only to produce a trivial and nonessential component of the product that is imported.

---

[39] 35 U.S.C. § 271(g); Federal Circuit Bar Association Model Patent Jury Instruction No. 3.5 (Jan. 12, 2008).

**4.6       WHAT CONSTITUTES A SALE OR OFFER TO SELL IN THE UNITED STATES [40] (SAMSUNG'S PROPOSAL)**

For purposes of finding liability and damages for either direct infringement or infringement by importation of a product made by an infringing process, you will need to consider whether there has been a "sale" or an "offer for sale" in the United States.

A "sale" occurs where all essential activities took place, such as the formation of the sales contract and the delivery of the products. The relevant activities to consider in this regard are only those activities that take place within the borders of the United States.

An "offer to sell" must also occur within the United States for infringement. The relevant activities to consider are only those activities that take place within the borders of the United States. An offer to sell a product to a United States company where the actual sale and delivery is to be to a location outside of the United States does not constitute an "offer to sell" in the United States.

---

[40] *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1251 (Fed. Cir. 2000); *Synaptic Pharm., Corp. v. MDS Panlabs, Inc.*, 265 F. Supp. 2d 452, 462 (D. N.J. 2002).

**4.6A    WHAT CONSTITUTES A SALE OR OFFER TO SELL IN THE UNITED STATES (ON SEMICONDUCTOR OBJECTS TO THIS INSTRUCTION)**

ON Semiconductor objects to this proposed instruction as unnecessary because Instruction 4.1 already describes that there must be a "sale" or "offer to sell" within the United States.  ON Semiconductor also objects to this proposed instruction on the grounds that the proposed instruction is misleading in that it suggests that an offer to sell in the United States is not an infringement if not sold in the United States, ignoring that such activity can be induced infringement.  ON Semiconductor further objects to this proposed instruction on the grounds that it is unnecessary and includes one-sided argument, inappropriate for a jury instruction.  If the Court determines that an instruction on this issue is appropriate, ON Semiconductor reserves the right to submit a proposed instruction.

**4.7         PATENT INFRINGEMENT – INDIRECT INFRINGEMENT[41]
(SAMSUNG'S PROPOSAL)**

In addition to enforcing a patent against a direct infringer for making, using, selling, or importing a patented invention, a patent owner may also enforce the patent against indirect infringers.  There are two types of indirect infringement - inducing infringement and contributory infringement.  The act of encouraging or inducing others to infringe a patent is called "inducing infringement."  The act of contributing to the infringement of others by supplying them with components used in the patented invention is called "contributory infringement."

There can be no indirect infringement unless you find that someone is directly infringing the patent.  Thus, in order to prove that someone is inducing another person to infringe or contributing to the infringement of another, a patent owner must prove by a preponderance of evidence that some other person is directly infringing at least one claim of the patent.

In this case, the acts alleged to constitute indirect infringement are acts done in connection with the parties selling products to customers, and it is the customers who are alleged to be the direct infringers.  If a customer has a patent license granting him permission to practice a patented invention, then there is no indirect infringement.

---

[41] *Nice Sys., Inc. v. Witness Sys., Inc*., No. 06-311-JJF (Jury Instruction No. 4.3, dated Jan. 21, 2007, D.I. 340).

**4.7A   PATENT INFRINGEMENT – INDIRECT INFRINGEMENT[42] (ON SEMICONDUCTOR'S PROPOSAL)**

In addition to stopping infringement by those who are directly infringing, a patent owner has the right to stop those who are known as "indirect infringers."   One type of indirect infringement is called "inducing infringement," which is the act of encouraging or inducing others to infringe a patent.

In this case, each of the parties accuses the other of inducing infringement of the patents-in-suit.   The patentee must prove induced infringement by a preponderance of the evidence. Keep in mind that there can be no indirect infringement unless someone is directly infringing the patent.   Thus, to prove that a party is inducing another person to infringe, the patentee must prove by a preponderance of the evidence that some other person is directly infringing a claim of the patent.   Such proof may be based on circumstantial evidence you have heard in this case, rather than direct evidence of infringement.

---

[42] *Affymetrix, Inc. v. Illumina, Inc*., No. 04-901-JJF (Jury Instruction No. 4.5, dated Mar. 12, 2007, D.I. 422; *Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.*, C.A. No. 04-1371-JFF (Jury Instruction No. 4.5).

**4.8    INDIRECT INFRINGEMENT – INDUCING PATENT INFRINGEMENT[43] (SAMSUNG'S PROPOSAL)**

As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

A person is liable for active inducement of a claim only if:

(1)    the person takes action during the time the patent is in force which encourages acts by someone else;

(2)    the encouraged acts constitute direct infringement of that claim;

(3)    the person is aware of the patent, and knows or should have known that the encouraged acts constitute infringement of the patent;

(4)    the person has an intent to cause the encouraged acts; and

(5)    the encouraged acts are actually carried out by someone else.

In order to prove active inducement, a patent owner must prove that each of the above requirements are met.  Proof of each element must be by a preponderance of the evidence, *i.e.*, that it is more likely than not that each of the above requirements has been met.

Because this standard requires, among other things, that the alleged infringer was aware of the patent, there can be no liability for inducing infringement before the date when the alleged infringer is shown to have known about the patent.  In order to establish active inducement of infringement, it is not sufficient that the person that is allegedly induced to infringe in fact directly infringes the claim.  Nor is it sufficient that the alleged inducer was aware of the act(s) that allegedly constitute the direct infringement.  Rather, you must find specifically that the

---

[43] *Nice Sys., Inc. v. Witness Sys., Inc*., No. 06-311-JJF (Jury Instruction No. 4.4, dated Jan. 21, 2007, D.I. 340).

alleged inducer specifically intended to infringe the patents in order to find inducement of infringement.  If you do not find that the alleged inducer specifically intended to infringe, then you must find that the alleged inducer has not actively induced the alleged infringement.

## 4.8A   INDIRECT INFRINGEMENT – INDUCING PATENT INFRINGEMENT[44] (ON SEMICONDUCTOR'S PROPOSAL)

As with direct infringement, you must determine whether there has been active inducement on a claim by claim basis.

To prove induced infringement, the patentee must prove by a preponderance of the evidence:

1.      an act of direct infringement by another person;

2.      the party knowingly induced infringement with the intent to encourage the infringement;

3.      intent to cause the acts that constitute the direct infringement; and

4.      the party must have known or should have known that its action would cause the direct infringement.

Unlike direct infringement, which must take place within the United States, induced infringement does not require any activity by the indirect infringer in this country, as long as the direct infringement occurs here.

Induced infringement may be proven with either direct or circumstantial evidence.

---

[44] *Nice Sys., Inc. v. Witness Sys., Inc.*, No. 06-311-JJF (Jury Instruction No. 4.4, dated Jan. 21, 2007, D.I. 340); *Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.*, C.A. No. 04-1371-JFF (Jury Instruction No. 4.5.1); *DSU Medical Corporation v. JMS Co., Ltd*, 471 F.3d 1293 (Fed. Cir. 2008).

**4.9    WILLFUL INFRINGEMENT[45] (ON SEMICONDUCTOR'S PROPOSAL)**

If you find on the basis of the evidence and the law as I have explained it that one of Samsung's products or processes infringes at least one of the claims of any of the ON Semiconductor patents-in-suit, you must further decide whether or not Samsung's infringement was willful.   While infringement is proven by a preponderance of the evidence, willful infringement must be proven by clear and convincing evidence.

To prove willful infringement, ON Semiconductor must satisfy a two-part test.

The first part of the test is objective.  ON Semiconductor must prove that Samsung acted despite an objectively high likelihood that its actions constituted infringement of a valid claim of at least one of the four ON Semiconductor patents in this case.  The state of mind of Samsung is not relevant for this objective inquiry.  You should focus on whether a reasonable company in Samsung's position, after learning of each of ON Semiconductor's patents, could have reasonably believed that it did not infringe each patent or reasonably believed that each patent was invalid.  If a reasonable company in Samsung's position could not have held such a belief, then you should consider the second part of the test.

The second part of the test does depend on the state of mind of Samsung.   ON Semiconductor must prove that Samsung knew, or it was so obvious that Samsung should have known, that its actions constituted infringement of a valid claim of at least one of the four ON Semiconductor patents-in-suit.

---

[45] *Nice Sys., Inc. v. Witness Sys., Inc.*, No. 06-311-JJF (Jury Instruction No. 4.9, dated Jan. 21, 2007, D.I. 340).

**4.10    WILLFUL INFRINGEMENT[46] (SAMSUNG'S PROPOSAL)**

If you find by a preponderance of the evidence that one of the party's in this case infringed the other party's patent, then you must further determine if this infringement was willful.  Willfulness must be proven by clear and convincing evidence showing that:

1.    The accused infringer had actual knowledge of patent-in-suit;

2.    A reasonable person, with knowledge of that patent, would have concluded that: (a) the accused infringer's actions were highly likely to infringe the patent, and (b) patent was highly likely to be valid; and

3.    The accused infringer acted even though the he knew, or it was so obvious that he should have known, that his actions were highly likely to infringe a valid patent.

In making the determination as to willfulness, you must consider the totality of the circumstances.  The totality of the circumstances comprises a number of factors, which include, but are not limited to whether the accused infringer intentionally copied the claimed invention or a product covered by the patent-in-suit, whether the accused infringer relied on competent legal advice, and whether the accused infringer presented a substantial defense to infringement, including the defense that the patent is invalid or unenforceable.

[46] AIPLA's Model Patent Jury Instruction No. 13 (Oct. 2007).

5.      **INVALIDITY**

**5.1     PRESUMPTION OF VALIDITY[47] (SAMSUNG'S PROPOSAL)**

The granting of a patent by the United States Patent Office carries with it the presumption that the patent is valid.  From issuance of the patent, it is presumed that its subject matter is new, useful, and constitutes an advance that was not, at the time the invention was made, obvious to one of ordinary skill in the art.  The law presumes, in the absence of clear and convincing evidence to the contrary, that the Patent Office acted correctly in issuing the patent.

Nevertheless, once the validity of a patent has been put in issue, it is the responsibility of the jury to review what the Patent Office has done consistent with these instructions on the law.

This presumption of validity puts the burden of proving invalidity on the alleged infringer.  While this presumption can be rebutted, the burden is on the alleged infringer to do so. This burden requires that the alleged infringer prove by clear and convincing evidence that in this case, each of the asserted claims is invalid.

Each of the asserted claims is presumed valid independently of the validity of each other claim.

---

[47] *Nice Sys., Inc. v. Witness Sys., Inc.*, No. 06-311-JJF (Jury Instruction No. 5.1, dated Jan. 21, 2007, D.I. 340).

## 5.1A   PRESUMPTION OF VALIDITY[48] (ON SEMICONDUCTOR'S PROPOSAL)

The granting of a patent by the United States Patent Office carries with it the presumption that the patent is valid.  From issuance of the patent, it is presumed that its subject matter is new, useful, and constitutes an advance that was not, at the time the invention was made, obvious to one of ordinary skill in the art.  The law presumes, in the absence of clear and convincing evidence to the contrary, that the Patent Office acted correctly in issuing the patent.

This presumption of validity puts the burden of proving invalidity on the alleged infringer.  This burden requires that the alleged infringer prove by clear and convincing evidence that in this case, each of the asserted claims is invalid.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of the factual contention is highly probable.  Proof by clear and convincing evidence is a higher burden then proof by a preponderance of the evidence.

Where one challenging the validity of a patent relies on prior art that was considered by the Patent Office, its burden of proving invalidity is more difficult to meet.[49]  This is because the party challenging validity has the added burden of overcoming the deference that is due to a qualified government agency presumed to have done its job properly, to have expertise in interpreting the references and to be familiar with the level of skill in the art.[50]

---

[48] *Nice Sys., Inc. v. Witness Sys., Inc.*, No. 06-311-JJF (Jury Instruction No. 5.1, dated Jan. 21, 2007, D.I. 340).

[49] Defendant's "burden is especially difficult to meet when the art relied on at trial was considered by the Patent Office."  *BOC Health Care, Inc. v. Nellcor, Inc.*, 892 F. Supp. 598, 602 (D. Del. 1995).

[50] In such a situation, the party asserting invalidity "has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in

(Continued…)

Each of the asserted claims is presumed valid independently of the other claims.  In other words, even if you find one claim of a patent is invalid; other claims of the same patent may still be valid.

---

interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents."  *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir.), *cert. denied*, 469 U.S. 821 (1984).

## 5.2    ANTICIPATION[51] (SAMSUNG'S PROPOSAL)

A person cannot obtain a patent on an invention if someone else has already made the same invention.  If the invention is not new, we say that it was "anticipated" by prior art.  Prior art is the legal term used to describe what others had done in the field before the invention was made.  Prior art is the general body of knowledge in the public domain such as articles or other patents before the invention was made.

An invention that is "anticipated" by the prior art is not entitled to patent protection.  In order to prove that an invention is "anticipated," an alleged infringer must prove by clear and convincing evidence that a single piece of prior art describes or discloses all of the elements of the claimed invention.  All the requirements of the claim must be in the single piece of prior art, either stated expressly or necessarily implied or inherent in the level of ordinary skill in the art in the technology of the invention at the time of the invention, so that someone of ordinary skill in the field of technology of the patent looking at that one reference would be able to make and use the claimed invention.  In determining whether a patent claim is anticipated, the claim must be interpreted and given the same meaning as when determining infringement.  Therefore, if product or process would literally infringe a patent claim if later in time, that product or process would anticipate if earlier.

In addition, the prior art reference must be sufficiently detailed to enable those skilled in the art to practice the claimed invention of the patent.  To meet this requirement, an alleged

---

[51] *Nice Sys., Inc. v. Witness Sys., Inc.*, No. 06-311-JJF (Jury Instruction No. 5.2, dated Jan. 21, 2007, D.I. 340); *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305 (Fed. Cir. 2008); *SmithKline Diagnostics v. Helena Lab. Corp.*, 859 F.2d 878, 882 (Fed. Cir. 1988).

infringer must prove that the prior art reference would allow a person of ordinary skill in the art to practice the claimed invention without undue experimentation.

In determining whether something is prior art to a particular patent, you need to know the date for each of the patented inventions.  You should consider the patented inventions to have been made on the following dates:

Samsung's '177 patent:  April 15, 1991;

ON Semiconductor's '827 patent:  January 2, 1990;

ON Semiconductor's '001 patent:  December 3, 1993;

ON Semiconductor's '594 patent:  August 31, 1994;

ON Semiconductor's '644 patent:  August 1, 2000.

.

**5.2A   ANTICIPATION[52] (ON SEMICONDUCTOR'S PROPOSAL)**

A person cannot obtain a patent on an invention if someone else has already made the same invention.  If the invention is not new, we say that it was "anticipated" by prior art.  Prior art is the legal term used to describe what others had done in the field before the invention was made.  Prior art is the general body of knowledge in the public domain such as articles or other patents before the invention was made.

An invention that is "anticipated" by the prior art is not entitled to patent protection.  In order to prove that an invention is "anticipated," an alleged infringer must prove by clear and convincing evidence that a single piece of prior art describes or discloses each and every element of the claimed invention.  In deciding whether a single item of prior art anticipates a patent claim, you should consider both that which is expressly stated or present in the item of prior art, and also that which is inherently present.  Something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art, and if a person with ordinary skill in the art would understand that to be the case.[53]

In addition, the prior art reference must be sufficiently detailed to enable those skilled in the field to practice the claimed invention of the patent.  To meet this requirement, an alleged

---

[52] *Nice Sys., Inc. v. Witness Sys., Inc.*, No. 06-311-JJF (Jury Instruction No. 5.2, dated Jan. 21, 2007, D.I. 340); *Arthrocare Corp. v. Smith and Nephew, Inc.*, No. 01-504-SLR (Jury Instructions, p. 38, dated May 9, 2003, D.I. 404).

[53] "Inherency [] may not be established by probabilities or possibilities.  The mere fact that a certain thing may result from a given set of circumstances is not sufficient." *Continental Can Co. v. Monsanto Co.,* 948 F.2d 1264, 1269 (Fed.Cir.1991) (quoting *In re Oelrich,* 666 F.2d 578, 581, (C.C.P.A.1981)).  "Inherent anticipation requires that the missing descriptive material is 'necessarily present,' not merely probably or possibly present." *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002).

infringer must prove that the prior art reference would allow a person of ordinary skill in the art

to practice the claimed invention without undue experimentation.

### 5.2.1   PRIOR PUBLICATION[54] (SAMSUNG'S PROPOSAL)

A patent claim may be anticipated and invalid if the entire invention defined by that claim was described in a printed publication either (i) before the patentee made his invention, or (ii) more than one year before the effective filing date of the patentee's patent application.  A publication that was published after the patented invention was made cannot be considered prior art.

For a printed publication to anticipate the claims of the patent, an alleged infringer must show that the printed publication, when read by a person of ordinary skill in the art, expressly or inherently embodies or discloses each element of the patent claim.  In addition, the disclosure in the printed publication must be complete enough to enable one of ordinary skill in the art to practice the invention, without undue experimentation.

---

[54] *Nice Sys., Inc. v. Witness Sys., Inc.*, No. 06-311-JJF (Jury Instruction No. 5.2.2, dated Jan. 21, 2007, D.I. 340).

**5.2.1A  PRIOR PUBLICATION[55] (ON SEMICONDUCTOR'S PROPOSAL)**

A patent claim may be anticipated and invalid if the entire invention defined by that claim was described in a printed publication either (i) before the patentee made his invention, or (ii) more than one year before the effective filing date of the patentee's patent application.  A publication that was published after the patented invention was made cannot be considered prior art.

For a printed publication to anticipate the claims of the patent, an alleged infringer must show that the printed publication, when read by a person of ordinary skill in the art, expressly or inherently embodies or discloses each element of the patent claim.  In addition, the disclosure in the printed publication must be complete enough to enable one of ordinary skill in the art to practice the invention, without undue experimentation.  In determining whether the disclosure is enabling, you should take into account what would have been within the knowledge of a person of ordinary skill in the art at the time, and you may consider expert testimony and other publications that shed light on the knowledge such a person would have had at the time.

---

[55] *Nice Sys., Inc. v. Witness Sys., Inc.*, No. 06-311-JJF (Jury Instruction No. 5.2.2, dated Jan. 21, 2007, D.I. 340).

### 5.2.2   PRIOR PUBLIC USE[56] (AGREED)

A patent claim is invalid if the invention defined in that claim was publicly used by a person other than the patentee in the United States before it was invented by the patentee or if it was publicly used by anyone in the United States, including the patentee, more than one year before the patent was filed.  An invention is publicly used if it is used by the inventor or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor. Public use means the absence of affirmative steps to conceal.  However, secret use by a third party is not public.

Oral testimony of prior public use must be corroborated in order to invalidate a patent. The most reliable evidence of corroboration comes from documentary or physical evidence that was made contemporaneously with the alleged prior public use.

---

[56] AIPLA's Model Patent Jury Instruction No. 6.3 (Oct. 2007).

**5.3     OBVIOUSNESS[57] (SAMSUNG'S PROPOSAL)**

In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made.  The issue is not whether the claimed invention would be obvious today to you, as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.

In determining obviousness or non-obviousness of the subject matter of each of the asserted claims, you should take the following steps:

(1)     Determine the scope and content of the prior art; references and publications that are not prior art cannot be considered in the determination of obviousness;

(2)     Identify the differences, if any, between each asserted claim of the patents-in-suit and the prior art;

(3)     Determine the level of ordinary skill in the pertinent art at the time the invention of the patent-in-suit was made;

(4)     Consider objective factors of non-obviousness, if available.

In addition, you may consider whether there was an apparent reason to combine or modify the prior art references in the fashion claimed by the patent at issue, but in doing so, you must guard against slipping into the use of hindsight.

I will explain each of these factors in more detail in a moment.  Against this background, you will then decide whether the subject matter of each asserted claim would have been obvious or non-obvious to a person of ordinary skill in the pertinent art.

---

[57] *Nice Sys., Inc. v. Witness Sys., Inc.*, No. 06-311-JJF (Jury Instruction No. 5.3, dated Jan. 21, 2007, D.I. 340).

## 5.3A    OBVIOUSNESS[58] (ON SEMICONDUCTOR'S PROPOSAL)

In order to be patentable, an invention must not have been obvious to a hypothetical person of ordinary skill in the art at the time the invention was made.  I will explain later the characteristics of this hypothetical person.  The issue is not whether the claimed invention would be obvious today to you, as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.

In determining obviousness or non-obviousness of the subject matter of each of the asserted claims, you should take the following steps:

(1)       Determine the scope and content of the prior art;

(2)       Identify the differences, if any, between each asserted claim of the patents-in-suit and the prior art;

(3)       Determine the level of ordinary skill in the pertinent art at the time the invention of the patent-in-suit was made;

(4)       Consider objective factors of non-obviousness, if available.

In addition, you may consider whether there was an apparent reason to combine or modify the prior art references in the fashion claimed by the patent at issue, but in doing so, you must guard against slipping into the use of hindsight.

I will explain each of these factors in more detail in a moment.  Against this background, you will then decide whether the subject matter of each asserted claim would have been obvious or non-obvious to a person of ordinary skill in the pertinent art.

---

[58] *Nice Sys., Inc. v. Witness Sys., Inc*., No. 06-311-JJF (Jury Instruction No. 5.3, dated Jan. 21, 2007, D.I. 340).

### 5.3.1   SCOPE AND CONTENT OF THE PRIOR ART[59] (AGREED)

As I just instructed you, in deciding whether or not the claimed invention is obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art. This means that you must determine what prior art is reasonably pertinent to the particular problem with which the inventor was faced. Prior art is reasonably pertinent if it is in the same field as the claimed invention or is from another field that a person of ordinary skill would look to in trying to solve the problem the named inventor was trying to solve.

---

[59] *Nice Sys., Inc. v. Witness Sys., Inc.*, No. 06-311-JJF (Jury Instruction No. 5.3.1, dated Jan. 21, 2007, D.I. 340).

**5.3.2   DIFFERENCES OVER THE PRIOR ART[60] (SAMSUNG'S PROPOSAL)**

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention.   Your analysis must determine the impact, if any, of such differences on the obviousness or non-obviousness of the invention as a whole, and not merely some portion of it.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention.  You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention.  For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art.  Most, if not all, inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known.  Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art

---

[60] AIPLA's Model Patent Jury Instructions § 7.2 (2008); *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007).

in the relevant field to combine the known elements in the way the claimed invention does.  The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense.

If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, this evidence would make it more likely that the claimed invention was obvious.  The fact that a combination was obvious to try might show that it was obvious.

Again, you must undertake this analysis separately for each claim that one of the parties contends is obvious.

**5.3.2A DIFFERENCES OVER THE PRIOR ART[61] (ON SEMICONDUCTOR'S PROPOSAL)**

The next factor that you must consider is the differences, if any, between the prior art and the claimed invention. Although it is proper for you to note any differences between the claimed invention and the prior art, it is improper to consider the invention as consisting of only those differences. The test is whether the claimed invention as a whole would have been obvious after considering all of the prior art. Each claim must be considered separately and in its entirety.

In analyzing the relevance of the differences between the claimed invention and the prior art, you may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention. For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art. Most, if not all, inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known. Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art

---

[61] *Nice Sys., Inc. v. Witness Sys., Inc.*, No. 06-311-JJF (Jury Instruction No. 5.3.2, dated Jan. 21, 2007, D.I. 340); AIPLA's Model Patent Jury Instructions § 7.2 (2008).

in the relevant field to combine the known elements in the way the claimed invention does.  The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense.

### 5.3.3   LEVEL OF ORDINARY SKILL[62] (SAMSUNG'S PROPOSAL)

Obviousness is determined from the perspective of a person of ordinary skill in the art. The person is presumed to know all of the prior art, not just what the inventor may have known. When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also to look to any available prior art to help solve the problem.

Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the field, the types of problems faced by workers in the art and the solutions found to those problems and the sophistication of the technology in the field.

---

[62] *Nice Sys., Inc. v. Witness Sys., Inc.*, No. 06-311-JJF (Jury Instruction No. 5.3.3, dated Jan. 21, 2007, D.I. 340).

## 5.3.3A LEVEL OF ORDINARY SKILL[63] (ON SEMICONDUCTOR'S PROPOSAL)

Obviousness is determined from the perspective of a person of ordinary skill in the art. You are to determine the level of ordinary skill in the art that pertains to the claimed invention. Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the field, the types of problems faced by workers in the art and the solutions found to those problems and the sophistication of the technology in the field.

---

[63] 1993 Model Jury Instructions for Patent Cases in the United States District Court for the District of Delaware at 4.8.3.

## 5.3.4A  HINDSIGHT SHOULD NOT BE USED IN DETERMINING INVALIDITY[64] (ON SEMICONDUCTOR'S PROPOSAL)[65]

The question of obviousness is simple to ask but difficult to answer.  A person of ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the patentee's invention.  If you find the available prior art shows each of the elements of the claims in suit, you must determine whether it would then have been obvious to a person of ordinary skill in the art to combine or modify these elements in the same manner as the claims in suit.

The difficulty that attaches to all honest attempts to answer this question can be attributed to the strong temptation to rely on hindsight while undertaking this evaluation.  It is wrong to use the patents-in-suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit.  Rather, you must find that the invention would have been obvious to a person of ordinary skill in the art at the time of the invention, without the benefit of hindsight.

---

[64] *Nice Sys., Inc. v. Witness Sys., Inc.*, No. 06-311-JJF (Jury Instruction No. 5.3.4, dated Jan. 21, 2007, D.I. 340); 1993 Model Jury Instructions for Patent Cases in the United States District Court for the District of Delaware at 4.8.5.

[65] Samsung believes this instruction is potentially confusing, duplicative, and unnecessary in this case, and therefore objects to it.

### 5.3.5   OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS (SECONDARY CONSIDERATIONS)[66] (SAMSUNG'S PROPOSAL)

Lastly, in making your decision as to the obviousness or non-obviousness of the claimed inventions, you must consider the following objective evidence which may tend to show non-obviousness of the patent claims at issue, to the extent it is provided to you:

(1)    Commercial success or lack of commercial success of products covered by the patent-in-suit;

(2)    A long felt need in the art which was satisfied by the invention of the patent-in-suit;

(3)    The failure of others to make the invention;

(4)    Copying of the invention by others in the field;

(5)    Unexpected results achieved by the invention;

(6)    Praise of the invention by the alleged infringer or others in the field;

(7)    The taking of licenses under the patent by others.

However, there must be a connection between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue.   For example, if commercial success is only due to advertising, promotion, salesmanship or the like, or is due to features of the product other than those claimed in the patent-in-suit, then any commercial success may have no relation to the issue of obviousness.

---

[66] *Nice Sys., Inc. v. Witness Sys., Inc.*, No. 06-311-JJF (Jury Instruction No. 5.3.5, dated Jan. 21, 2007, D.I. 340).

## 5.3.5A OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS (SECONDARY CONSIDERATIONS)[67] (ON SEMICONDUCTOR'S PROPOSAL)

Lastly, in making your decision as to the obviousness or non-obviousness of the claimed inventions, you must consider the following objective criteria which may tend to show non-obviousness of the patent claims at issue, to the extent it is provided to you:

(1)     Commercial success of products covered by the patent-in-suit;

(2)     A long felt need in the art which was satisfied by the invention of the patents-in-suit;

(3)     The failure of others to make the invention;

(4)     Copying of the invention by others in the field;

(5)     Unexpected results achieved by the invention;

(6)     Praise of the invention by the alleged infringer or others in the field;

(7)     The taking of licenses under the patent by others.

There must be a connection between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue.  For example, if commercial success is only due to advertising, promotion, salesmanship or the like, or is due to features of the product other than those claimed in the patent-in-suit, then any commercial success may have no relation to the issue of obviousness.

---

[67] *Nice Sys., Inc. v. Witness Sys., Inc.*, No. 06-311-JJF (Jury Instruction No. 5.3.5, dated Jan. 21, 2007, D.I. 340).

### 5.3.6   OBVIOUS TO TRY[68] (ON SEMICONDUCTOR'S PROPOSAL)[69]

The evidence might indicate to you that what the inventors did was obvious to try.  If so, this does not indicate the patent is invalid for obviousness.  "Obvious to try" is not the standard, rather it is whether the invention as a whole would have been obvious to those of ordinary skill in the inventor's field at the time he or she made his invention.

---

[68] 1993 Model Jury Instructions for Patent Cases in the United States District Court for the District of Delaware at 4.8.8.

[69] Samsung believes this instruction is legally incorrect, including in light of *KSR Int'l Co. v. Teleflex Inc*., 550 U.S. 398 (2007), as well as potentially confusing, and unnecessary in this case, and therefore objects to it.

**5.4     ENABLEMENT[70] (SAMSUNG'S PROPOSAL)**

The written description set forth in a patent must disclose sufficient information to enable or teach one skilled in the field of the invention to make and use the claimed invention.  This requirement is known as the enablement requirement.  If a patent claim is not enabled, it is invalid.

A patent is enabled if its disclosure is sufficient to enable a person of ordinary skill in the art to make and use the claimed invention without undue experimentation.  In considering whether the written description of a patent satisfies the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention.

---

[70] AIPLA's Model Patent Jury Instruction No. 8 (Oct. 2007).

## 5.4A    ENABLEMENT[71] (ON SEMICONDUCTOR'S PROPOSAL)

Patent law requires that the disclosure or written description portion of a patent be sufficiently detailed to enable those skilled in the art to practice the invention.   The purpose of this requirement is to ensure that the public, in exchange for the patent rights given to the inventor, obtains from the inventor a full disclosure of how to carry out the invention.   However, because descriptions in patents are addressed to those skilled in the art to which the invention pertains, an applicant for a patent need not expressly set forth in his specification subject matter which is commonly understood by persons skilled in the art.   In other words, a patent need not expressly state information that skilled persons would be likely to know or could obtain.

---

[71] 1993 Model Jury Instructions for Patent Cases in the United States District Court for the District of Delaware at 4.2.

**5.5      WRITTEN DESCRIPTION REQUIREMENT[72] (SAMSUNG'S PROPOSAL)**

A patent must contain a written description of the product or process claimed in the patent.   The written description requirement helps to ensure that the patent applicant actually invented the claimed subject matter and was in possession of the invention.   To satisfy the written description requirement, the patent must describe each and every limitation of a patent claim, in sufficient detail, although the exact words found in the claim need not be used.   The written description requirement is satisfied if a person of ordinary skill in the field reading the patent application as originally filed would recognize that the patent application described the invention as finally claimed in the patent.   It is unnecessary to spell out every detail of the invention in the specification; only enough must be included to convince a person of skill in the art that the inventor possessed the invention.

An alleged infringer bears the burden of establishing lack of written description by clear and convincing evidence.

If you find that one of the parties has proved that it is highly probable that one of the patents-in-suit does not contain a written description of the invention covered by any of the asserted claims, then you must find that the claim is invalid.

---

[72] AIPLA's Model Patent Jury Instruction No. 9 (Oct. 2007).

## 5.5A    WRITTEN DESCRIPTION REQUIREMENT[73] (ON SEMICONDUCTOR'S PROPOSAL)

A patent must contain a written description of the product or method claimed in the patent.  To satisfy the written description requirement, the patent must describe each and every limitation of a patent claim, although the exact words found in the claim need not be used.  The written description requirement is satisfied if a person of ordinary skill in the field reading the patent application as originally filed would recognize that the patent application described the invention as finally claimed in the patent.  It is unnecessary to spell out every detail of the invention in the specification; only enough must be included to convince a person of skill in the art that the inventor possessed the invention.  Nor does it require that a patent specification set forth in a single embodiment all of the steps of a claimed invention.

To prove a claim invalid for lack of an adequate written description, the accused infringer must prove by clear and convincing evidence that the patent application does not reasonably convey to a person of ordinary skill in the art that the inventors had possession of the invention as that invention was finally claimed in the issued patent.

---

[73] *Energy Transportation Group, Inc. v. Sonic Innovations, Inc*., No. 05-422-GMS (Jury Instruction No. 8.0, dated Feb. 1, 2008, D.I. 518).

## 5.6    BEST MODE REQUIREMENT[74] (SAMSUNG'S PROPOSAL)

The purpose of the best mode requirement is to ensure that the public obtains a full disclosure on how to practice the invention claimed in the patent.  The inventor must disclose the best mode he or she knew at the time of filing for carrying out the invention as described in the claims.  If an inventor knows of a best way or mode of making and using the claimed invention at the time the patent application was filed, then the written description must contain a description of that mode.

An alleged infringer bears the burden of establishing a patent's failure to satisfy the best mode requirement by clear and convincing evidence.

To determine whether the inventor complied with the best mode requirements, two questions must be answered:

1.       At the time the patent application was filed, did the patentee consider a particular mode for practicing his invention superior to all other modes?

2.       If so, did the patentee adequately disclose the superior mode in the patent?

The first prong of the best mode inquiry focuses on the state of mind of the particular inventor and the knowledge he possessed at the time the application was filed.  The first question is subjective.

The one exception to the best mode requirement is that an inventor need not set forth "routine details" that would be apparent to one skilled in the art.

If the answer to the first question is "yes," the second question of the analysis should be addressed.  The second question, an objective inquiry, focuses on the scope of the patented

---

[74] AIPLA's Model Patent Jury Instruction No. 10 (Oct. 2007).

invention and the level of skill in the field of the invention.  The disclosure in the specification must be adequate to allow one of ordinary skill in the art to make and use the best mode of the invention.  Those skilled in the field of the invention should not have to look to the commercial embodiment in order to practice the best mode.

**5.6A   BEST MODE REQUIREMENT[75] (ON SEMICONDUCTOR'S PROPOSAL)**

The patent laws require that a patent must describe the best mode of carrying out the invention contemplated by the inventor(s) at the time that the patent application was filed. The purpose of this requirement is to ensure that the public obtains a full disclosure of what the inventors believe is the best way of carrying out their invention. If all of the inventors of the patent believe that there is a best mode for a claim, and they agree on what that best mode is, and fail to sufficiently describe that best mode in the patent, then the written description must contain a description of that mode.

To determine whether the inventors complied with the best mode requirement, you must answer two questions. First, at the time of the patent application was filed, did the inventors know of a mode of practicing the claimed invention that they considered to be better than any other? This is a subjective inquiry. It is insufficient to show that a better way of practicing the invention existed or that another person may have perceived another mode to be better; the focus is upon the inventor's understanding of the best mode of carrying out the invention. You must consider whether, on the date that each patent-in-suit was filed, whether the inventors knew of a way to practice the claimed invention that was better than any other way. If the inventors realized after they filed the patent that a better way existed to practice the invention, there is no requirement that they update the best mode.

Second, if the inventors did have a best mode for practicing their invention on the date that each patent-in-suit was filed, did the inventors adequately disclose that best mode in the patent specification? This is an objective inquiry. The specification must contain a description

---

[75] Proposed Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware, 2004, Instruction No. 4.4.

of the inventors' best mode that is sufficient to enable a person skilled in the art to practice the best mode.  To answer this question, you must consider the scope of the invention and the level of skill in the art.

Failure to disclose details relating to portions of the invention that are not in the claims is not generally a violation of the best mode requirement.  However, you may consider whether the applicant has failed to disclose an unclaimed preference that materially affected making or using the invention.

Finally, keep in mind that the commercial embodiment adopted by the patentee is not necessarily the best mode contemplated by the inventor at the time the patent application was filed.  For example, a selection made for commercial expediency (such as the availability of certain materials, prior relationships with certain suppliers, and other routine manufacturing choices) may be the "best" decision in a manufacturing circumstance but may have been chosen by someone other than the inventor or may not be considered by the inventor to be the best mode of carrying out the invention.  Any manufacturing process requires the selection of specific processes and materials, but only those selections which the inventor believes are important to obtaining the best results from the invention are considered to be part of the best mode disclosure.

**5.7**   **INVENTORSHIP[76] (SAMSUNG'S PROPOSAL)**

In this case, Samsung contends that ON Semiconductor's '827 patent is invalid because of improper inventorship.  A patent is invalid if it fails to meet the requirement that all of the actual inventors, and only the actual inventor, be named as inventors in the patent.  This is known as the "inventorship" requirement.

To be an inventor, one must make a significant contribution to the conception of one or more of the claims of the patent.  Whether the contribution is significant is measured against the scope of the full invention.

Explaining to the actual inventors well-known concepts or the current state of the art does not make someone an inventor.  Merely helping with experimentation, by carrying out the inventor's instructions, does not make someone an inventor.

Persons may be inventors even if they do not make the same type or amount of contribution, and even if they do not contribute to the subject matter of each claim of the patent.  Persons may be joint or co-inventors even though they do not physically work together, but they must have some open line of communication during or at approximately the time of their inventive effort.

---

[76] Federal Circuit Bar Association Model Patent Jury Instruction No. 4.3c (Jan. 12, 2008).

**5.7A    INVENTORSHIP (ON SEMICONDUCTOR OBJECTS TO THIS INSTRUCTION)**

ON Semiconductor objects to this proposed instruction on inventorship on the grounds that Samsung is seeking an instruction for a defense that it did not properly disclose during fact or expert discovery.  If the Court determines that an instruction on this issue is appropriate, ON Semiconductor reserves the right to submit a proposed instruction.

**6.    DAMAGES**

**6.1    DAMAGES GENERALLY[77] (AGREED)**

I have now instructed you as to the law governing the parties' claims of patent infringement and invalidity.  If you find that a party has infringed a valid claim of any patent, then you must determine what damages the infringing party must pay to the patent owner for that infringement.  If, on the other hand, you find that the party accused of infringing a patent has not infringed the patent or that the claims of the patent are invalid, then the owner of that patent is not entitled to any damages and you should not make any finding about damages for that patent.

The fact that I am instructing you about damages does not mean that any party is or is not entitled to recover damages.  I am expressing no opinion one way or the other.  These instructions are only to guide you in case you find that one of the asserted claims in one of the patents-in-suit is valid and infringed.

---

[77] *Nice Sys., Inc. v. Witness Sys., Inc*., No. 06-311-JJF (Jury Instruction No. 6.1, dated Jan. 21, 2007, D.I. 340).

## 6.2     COMPENSATORY PATENT DAMAGES IN GENERAL[78] (AGREED)

If you find that any claim of any patent is both valid and infringed, then the owner of that patent is entitled to damages adequate to compensate for the infringement.  Your damages award, if you reach this issue, should put the patent holder in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty.  I will give you more detailed instructions on the calculation of a reasonable royalty shortly.

Damages are only to compensate the patent holder.  You may not add anything to the amount of damages to punish the party you find infringing a valid claim, or to set an example.

---

[78] *Nice Sys., Inc. v. Witness Sys., Inc.*, No. 06-311-JJF (Jury Instruction No. 6.2, dated Jan. 21, 2007, D.I. 340).

## 6.3 DATE DAMAGES BEGIN FOR PATENTS COVERING PRODUCTS[79] (SAMSUNG'S PROPOSAL)

For a patent that has claims covering products, the patent holder can only recover damages for infringing acts that happened after the date that the patent holder proves it provided notice of infringement to the infringer. ON Semiconductor's '644 patent, '001 patent, and '594 patent have claims covering products. For these products, ON Semiconductor can only recover damages for acts ON Semiconductor proves are infringing acts that occurred after the date ON Semiconductor proves it gave notice of infringement to Samsung. That date is in dispute here, and it is up to you to determine what that date is. ON Semiconductor has the burden to prove by a preponderance of the evidence the date it gave notice.

ON Semiconductor can give notice in two ways. The first way is to give notice to the public in general by placing the word "patent" or the abbreviation "PAT" with the number of the patent on substantially all the products it sold that included the patent invention. Licensees of the patent who use the patented invention must also mark substantially all of their products that include the patented invention with the patent number. Not only must substantially all of the patent holder's products be marked this way, but the marking must have been continuous. Additionally, not only must the patent owner himself continuously mark substantially all of his own products, but he has a duty to ensure that any licensees for his patent mark products the licensee sells that are covered by the patent. The patent owner's duty to mark includes the duty to require its licensees to mark products that the patent owner now accuses of infringement if

---

[79] 35 U.S.C. § 287; *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994); *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537-8 (Fed. Cir. 1993); AIPLA's Model Patent Jury Instruction No. 12.1 (Oct. 2007); *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, Civ. No. 00-981-KAJ, 2003 WL 1606081, at *12 (D. Del. Feb. 4, 2003).

there are licensees who sold such products. This type of notice is effective from the date ON Semiconductor and all of its licensees began consistently and continuously marking substantially all of their products that use the patented invention. If you find that ON Semiconductor did not mark substantially all of their products that use the patented invention with the patent number or that its marking was not continuous throughout the period, then ON Semiconductor did not provide notice in this way.

A second way ON Semiconductor can provide notice of its patents is to communicate directly to Samsung a specific accusation that the products now accused of infringement infringed the patents-in-suit. The communication must come directly from ON Semiconductor to Samsung and must specifically identify each Samsung product ON Semiconductor believes was infringing. This type of notice is effective from the time it is given for the products identified in the notice communication.

If you find that ON Semiconductor, before filing this lawsuit, did not properly mark its products and require its licensees to mark their products, and that ON Semiconductor did not notify Samsung by communicating a specific charge that the allegedly infringing products infringed, then ON Semiconductor can only recover damages for infringement that occurred after it sued Samsung on December 4, 2006.

## 6.3A   DATE DAMAGES BEGIN FOR PATENTS COVERING PRODUCTS[80] (ON SEMICONDUCTOR'S PROPOSAL)

To recover pre-suit damages, a patent owner must provide notice of any patents for which it has products covered by those patents.  Conversely, a patent owner is not required to give notice if it does not sell products covered by its patents.  For patents as to which the patent owner sells products covered by its patent, the date the accused infringer first had notice of its patent infringement is the date on which patent damages begin to be calculated.  It is up to you to determine what that date is.  The patent owner has the burden to prove notice by a preponderance of the evidence.

If you find that for any of the patents-in-suit, the parties did not make products covered by those patents, then no notice was required, and damages begin on the date of first infringement, but no earlier than six (6) years before this lawsuit was filed.

If you find that for any of the patents-in-suit, the parties did make products covered by those patents, then notice can be proven in two ways.  The first way is to give notice to the public in general by placing the word "patent" or the abbreviation "PAT" with the number of the patent on substantially all the products it sold that included the patent invention.  This is called constructive notice.  This type of notice is effective from the date the patentee and all of its licensees began to mark substantially all of their products that use the patented invention.  If you find that ON Semiconductor and its licensees marked substantially all of their products that use the patented invention with the patent number or that its marking was not continuous throughout the period, then ON Semiconductor did not provide notice in this way.

---

[80] *Affymetrix, Inc. v. Illumina, Inc.*, No. 04-901-JJF (Jury Instruction No. 5.3, dated Mar. 12, 2007, D.I. 422).

A second way that notice can be provided is by what is called "actual notice."  Actual notice applies where Samsung became aware of a specific accusation that the products now accused of infringement infringed the patents-in-suit.  This type of notice is effective from the time it is given for the products identified in the notice communication.

Either actual notice or constructive notice is sufficient to start the damages period running.

## 6.4A   DATE DAMAGES BEGIN FOR PATENTS COVERING PROCESSES[81] (ON SEMICONDUCTOR'S PROPOSAL)

A patent owner is not required to give notice if its patent covers a process rather than a product.  For patents covering processes, damages begin on the date of first infringement, but no earlier than six (6) years before this lawsuit was filed.

---

[81] *Affymetrix, Inc. v. Illumina, Inc*., No. 04-901-JJF (Jury Instruction No. 5.3, dated Mar. 12, 2007, D.I. 422).

**6.5     WHAT IS A REASONABLE ROYALTY[82] (SAMSUNG'S PROPOSAL)**

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention.  A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at the time when the infringing sales first began.  In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they engaged into an agreement at that time, and had they acted reasonably in their negotiations.  You must also assume that both parties believed the patent was valid and infringed.  In addition, you must assume that the patent holder and infringer were willing to enter into an agreement.  Your role is to determine what that agreement would have been.  The measure of damages is what royalty would have resulted from the hypothetical negotiation, and not simply what royalty either party would have preferred.

A royalty can be in the form of a fully paid lump sum, where the licensee would pay a lump sum amount in exchange for the right to sell products covered by the patent for the life of the patent.

In this trial, you have heard evidence of things that happened after the infringing sales first began.  That evidence can be considered only to the extent that that evidence aids you in assessing what royalty would have resulted from a hypothetical negotiation.  Although evidence of actual profits the alleged infringer made may aid you in determining the anticipated profits at the time of the hypothetical negotiation, you may not increase the royalty based on the actual

---

[82] *Nice Sys., Inc. v. Witness Sys., Inc*., No. 06-311-JJF (Jury Instruction No. 6.3, dated Jan. 21, 2007, D.I. 340); *Interactive Pictures Corp v. Infinite Pictures, Inc*., 274 F.3d 1371, 1384 (Fed. Cir. 2001); *State Indus., Inc. v. Mor-Flo Indus., Inc*., 883 F.2d 1573, 1581 (Fed. Cir. 1989).

profits the alleged infringer made.  In determining a reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

(1)     whether the patent holder had an established royalty for the invention; whether, in the absence of an established royalty, there is evidence that tends to prove an established royalty; whether, in the absence of such a licensing history, there are any royalty arrangements that were generally used and recognized in the particular industry at the time;

(2)     the nature of the commercial relationship between the patent holder and the licensee such as to whether they are competitors or whether their relationship was that of an inventor and a promoter;

(3)     the established profitability of the patented product, its commercial success and its popularity at the time;

(4)     whether the patent holder had an established policy of granting licenses or retaining the patented invention as its exclusive right, or whether the patent holder had a policy of granting licenses under special conditions designed to preserve its monopoly;

(5)     the size of the anticipated market for the invention at the time the infringement began;

(6)     the duration of the patent and of the license, as well as the terms and scope of the license, such as whether it is exclusive or nonexclusive or subject to territorial restrictions;

(7)     the rates paid by the licensee for the use of other patents comparable to the patent-in-suit;

(8)     whether the licensee's sales of the patented invention promote sales of its other products and whether the invention generates sales to the inventor of his non-patented items;

(9)     the utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

(10)     the extent to which the infringer used the invention and any evidence probative of the value of such use;

(11)     the portion of the profits in the particular business that is customarily attributable to the use of the invention or analogous inventions;

(12)     the portion of the profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks or significant features or improvements added by the infringer;

(13)     the opinion and testimony of qualified experts; and

(14)     other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.  For instance, the availability of alternative technology that would not infringe the patent is highly relevant.  Where an accused infringer selling in a competitive industry is faced with an unreasonably high license fee for patented technology, the accused infringer might choose non-infringing alternatives even if that alterative is somewhat inferior as long as it offers some profit.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  In calculating a reasonable royalty, you may not account for infringing conduct that was limited to an offer to sell.  Infringing units for purposes of a reasonable royalty in this case are only products that were actually made, sold, or imported into the United States.

## 6.5A   WHAT IS A REASONABLE ROYALTY[83] (ON SEMICONDUCTOR'S PROPOSAL)

Both parties here seek a reasonably royalty for the alleged infringement of their patents. A reasonable royalty is the minimum permissible measure of damages set by the patent laws.  A reasonable royalty in this case is the amount of money that would be agreed to in a hypothetical arm's-length negotiation between ON Semiconductor and Samsung, with both operating under the assumption that the negotiated patents are valid and are being infringed.

The reasonable royalty must be calculated as of the point in time just prior to when infringement began.

In the hypothetical arm's-length negotiation, you must assume that the person negotiating on behalf of Samsung, and who was willing to take a license to ON Semiconductor's patents, would have known that ON Semiconductor's patents were valid and infringed by Samsung. Similarly, you must assume that the person negotiating on behalf of ON Semiconductor, and who was willing to take a license to Samsung's patent, would have known that Samsung's patent was valid and infringed by ON Semiconductor.  You should also assume that both ON Semiconductor and Samsung knew all pertinent information at the time of the hypothetical negotiations.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for the infringing use of the patented invention, including the opinion testimony of experts.

---

[83] *Affymetrix, Inc. v. Illumina, Inc*., No. 04-901-JJF (Jury Instruction No. 5.6, dated Mar. 12, 2007, D.I. 422).

In this trial, you have heard evidence of things that happened after the infringing sales first began.   That evidence may be considered to the extent that that evidence aids you in assessing what royalty would have resulted from a hypothetical negotiation.

## 6.6A   FACTORS FOR DETERMINING REASONABLE ROYALTY[84] (ON SEMICONDUCTOR'S PROPOSAL)

In determining such a reasonable royalty, some of the factors that may be considered are:

1.      the royalties received by the patent owner for licensing others under the patents-in-suit;

2.      the rates paid by licensees or others for the use of other patents comparable to the patent in suit;

3.      the nature and scope of the license, as exclusive or nonexclusive; or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold;

4.      the patent owner's established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

5.      the commercial relationship between ON Semiconductor and Samsung, such as, whether they are competitors in the same territory in the same line of business, or whether they are inventors or promotors;

6.      the effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator or sales of his non-patented items, and the extent of such derivative or convoyed sales;

7.      the duration of the patents and the terms of the licenses;

---

[84] 1993 Model Jury Instructions for Patent Cases in the United States District Court for the District of Delaware at 6.11; *Affymetrix, Inc. v. Illumina, Inc.*, No. 04-901-JJF (Jury Instruction No. 5.7, dated Mar. 12, 2007, D.I. 422).

8.      the established profitability of the products made under the patents, their commercial success, and their current popularity;

9.      the utility and advantages of the patented inventions over the old modes or devices, if any, that had been used for working out similar results;

10.     the nature of the patented invention, the character of the commercial embodiments of it as owned and produced by the patent owner, and the benefits to those who have used the invention;

11.     the extent to which the patent owner has made use of the invention, and any evidence that shows the value of that use;

12.     the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13.     the portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the patent owner;

14.     the opinion testimony of qualified experts; and

15.     any other economic factor that a normally prudent businessman would, under similar circumstances, take into consideration in negotiating the hypothetical license.

**6.7    CLOSING STATEMENT – DAMAGES[85] (SAMSUNG'S PROPOSAL)**

In determining the issue of a damages award, the Court instructs you that the law does not permit an award of a greater sum than the amount to compensate for the infringement, in this case a reasonable royalty.  If you find a party is entitled to damages, you may not include and/or add to the award any sum for purposes of punishing the alleged infringer or to set an example.

---

[85] *Affymetrix, Inc. v. Illumina, Inc*., No. 04-901-JJF (Jury Instruction No. 5.9, dated Mar. 12, 2007, D.I. 422).

**6.7A   CLOSING STATEMENT – DAMAGES (ON SEMICONDUCTOR OBJECTS TO THIS INSTRUCTION)**

ON Semiconductor objects to this instruction on the grounds that it is redundant in light of jury instructions 6.1, 6.2, and 6.4.

7.      **ADDITIONAL DEFENSES**

7.1     **LACHES[86] (SAMSUNG'S PROPOSAL)**

The owner of a patent may not be entitled to recover damages for acts that occurred before it filed a lawsuit against an alleged infringer where: (1) the patent holder delayed filing the lawsuit for an unreasonably long period of time, (2) there was no excuse for the patent holder's delay in filing the lawsuit, and (3) the allegedly infringing party has been or will be prejudiced in a significant way due to the patent holder's delay in filing the lawsuit. This is referred to as laches, and it is a defense that Samsung contends prevents ON Semiconductor from recovering any damages before ON Semiconductor filed this case on December 4, 2006.

The delay that must be considered in this case is the period of time beginning when ON Semiconductor first knew of, or reasonably should have known of, Samsung's allegedly infringing activities and ending when ON Semiconductor filed this lawsuit. Each patent should be considered separately, and for each patent, only the period of time after the patent was issued may be considered. The '827 patent was issued on March 19, 1991. The '001 patent was issued on November 1, 1994. The '594 patent was issued on October 8, 1996. And the '644 patent was issued on March 26, 2002.

Whether ON Semiconductor' s delay was unreasonably long is a question that must be answered by considering the facts and circumstances as they existed during the period of delay in the way that reasonably prudent businesspeople would have viewed them. Whether ON Semiconductor's otherwise unreasonably long delay was justified or should be excused also is a question that must answered by considering the facts and circumstances as they existed during

---

[86] Federal Circuit Bar Association Model Patent Jury Instruction No. 5.2 (Jan. 12, 2008); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992) (en banc).

the period of delay in the way that reasonably prudent businesspeople would have viewed them. While there is no set list of acceptable or unacceptable justifications for an otherwise unreasonable delay in bringing a lawsuit, and any particular justification or excuse offered by ON Semiconductor in this case must be evaluated in light of the facts and circumstances that existed during the period of delay in this case, evidence of the following may serve as a justification or excuse for any unreasonable delay in the filing of this lawsuit:

(1)     being involved in other litigation during the period of delay;

(2)     being involved in negotiations with the allegedly infringing party during the period of delay; or

(3)     only minimal amounts of allegedly infringing activity by Samsung during the period of delay.

Depending on the facts and circumstances, ON Semiconductor's justifications or excuses may only apply to part of the period of delay.  In that case, you must decide whether the period of delay that was not justified or excusable was unreasonably long.

Prejudice to Samsung as a result of any delay by ON Semiconductor in filing this lawsuit can be economic or evidentiary in nature.  Whether Samsung suffered evidentiary prejudice is a question that must be answered by evaluating whether any unreasonable delay in filing this case resulted in Samsung not being able to present a full and fair defense on the merit's to ON Semiconductor's infringement claim.  Not being able to present a full and fair defense on the merits to an infringement claim can occur due to the loss of important records, the death or impairment of an important witness or witnesses, the unreliability of memories about important events because they occurred in the distant past, or other similar types of things.  Whether Samsung suffered economic prejudice is a question that must be answered by evaluating whether

any unreasonable delay in filing this case resulted in Samsung changing its economic position in a significant way during the period of delay, and also whether Samsung's losses as a result of that change in economic position could have been avoided if ON Semiconductor had filed this lawsuit sooner.  Having to pay damages to ON Semiconductor if found to infringe on its patent does not amount to economic prejudice by itself.  But if Samsung' s liability for infringement damages, or other economic losses that may be incurred by Samsung if found to be an infringer, were avoidable had ON Semiconductor filed this lawsuit sooner, they constitute economic prejudice.

If you find that ON Semiconductor delayed filing this lawsuit for more than six years, then you must presume that all the elements of laches have been proved in this case unless you also find that the evidence introduced in this case proves that the delay in filing suit was reasonable or justified, or that Samsung suffered no prejudice as a result of ON Semiconductor's delay.  In all scenarios though, the ultimate determination of whether laches should apply in this case is a question of fairness given all the facts and circumstances.  Thus, while you may not find that laches applies if there is no evidence establishing each of the three elements noted above (unreasonable delay, lack of excuse or justification, and significant prejudice), you may find that even though all of the elements of laches have been proved, it should not, in fairness, apply given all the facts and circumstances in this case.

Although the question of whether the ON Semiconductor's right to damages is barred by laches is one that I will decide, I will ask for your findings so that I can consider them in making that decision.  You should make determinations on this issue as you would for any other issue in this case because I will consider them seriously in making my determination.

**7.1A    LACHES (ON SEMICONDUCTOR OBJECTS TO THIS INSTRUCTION)**

ON Semiconductor objects to this proposed instruction on laches as this issue should not be part of the trial on infringement, damages, and willfulness.  The issues relating to a laches defense are equitable in nature, to be tried to the Court, and not the jury.  If the Court determines that an instruction on this issue is appropriate, ON Semiconductor reserves the right to submit a proposed instruction.

## 7.2    ESTOPPEL[87] (SAMSUNG'S PROPOSAL)

The owner of a patent may forfeit its right to any relief from an infringer where: 1) the patent holder has knowledge of the true facts about an issue but communicates something, directly or indirectly, to the infringing party about that issue in a misleading way, 2) the infringer relies upon the misleading communication from the patent holder, and 3) the infringer will be significantly harmed if the patent holder is allowed to assert a claim relating to the issue that is inconsistent with the patent holder's prior misleading communication about the issue.  This is referred to as an "equitable estoppel," and it is a defense that Samsung contends precludes any recovery by ON Semiconductor in this lawsuit.  ON Semiconductor's conduct as to each patent should be considered separately.

A communication may be made through written or spoken words, conduct, silence, or a combination of words, conduct, and silence.  Conduct may include action or inaction.  If ON Semiconductor failed to speak or act when it had a clear duty to do so, that may be considered a misleading communication.  Whether in fact ON Semiconductor made a communication to Samsung, and whether in fact that communication, if you find there to have been any, was misleading, are questions that must be answered by considering the facts and circumstances as they existed at the time and in the way that reasonably prudent businesspeople would have viewed them.

Significant harm to Samsung can be economic or evidentiary in form.  Whether Samsung suffered evidentiary harm is a question that must be answered by evaluating whether Samsung will be unable to present a full and fair defense on the merits of ON Semiconductor's

---

[87] Federal Circuit Bar Association Model Patent Jury Instruction No. 5.3 (Jan. 12, 2008); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co*., 960 F.2d 1020 (Fed. Cir. 1992) (en banc).

infringement claims.  Not being able to present a full and fair defense on the merits of ON

Semiconductor's claims can occur due to the loss of important records, the death or impairment

of an important witness or witnesses, the unreliability of memories about important events

because they occurred in the distant past, or other similar types of things.  Whether Samsung

suffered economic prejudice is a question that must be answered by evaluating whether Samsung

changed its economic position in a significant way as a result of its reliance on any misleading

communication from ON Semiconductor, and whether Samsung's losses as a result of any

change in economic position could have been avoided if ON Semiconductor had not

communicated with Samsung in a misleading way.  Having to pay damages to ON

Semiconductor if found to infringe on its patent does not amount to economic prejudice by itself.

But if Samsung's liability for infringement damages, or any other economic losses that Samsung

may incur if ON Semiconductor is allowed to proceed with its claims, were avoidable had ON

Semiconductor not communicated with Samsung in a misleading way, they constitute economic

prejudice.

It is important to remember, however, that the ultimate determination of whether an

equitable estoppel should apply in this case is a question of fairness given all the facts and

circumstances.  While you may not find that equitable estoppel applies if the evidence does not

establish each of the three elements noted above (misleading communication, reliance on the

communication, and significant harm) you may find that even though all of the elements have

been proved, an equitable estoppel should not apply, in fairness, given all the facts and

circumstances in this case.

Although the question of whether equitable estoppel applies in this case is one that I will

decide, I will ask for your findings so that I can consider them in making that decision.  You

should make determinations on this issue as you would for any other issue in this case because I

will consider them seriously in making my determination.

**7.2A   ESTOPPEL (ON SEMICONDUCTOR OBJECTS TO THIS INSTRUCTION)**

ON Semiconductor objects to this proposed instruction on estoppel.  The issues relating to an estoppel defense are equitable in nature, to be tried to the Court, and not the jury.[88]  If the Court determines that an instruction on this issue is appropriate, ON Semiconductor reserves the right to submit a proposed instruction.

---

[88] "[t]he defense of inequitable conduct springs from equitable principles. As such, the ultimate determination of the issue generally lies with the court." *Isco International, Inc. v. Conductus, Inc.*, 279 F. Supp. 2d 489, 500 (D. Del. August 21, 2003).  *See also PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc., 225 F.3d 1315, 1318 (Fed. Cir. 2000), reh'g and reh'g en banc denied* (2000) ("The defense of inequitable conduct is entirely equitable in nature, and thus not an issue for a jury to decide.").

**7.3     UNCLEAN HANDS[89] (SAMSUNG'S PROPOSAL)**

The owner of a patent may be barred from enforcing the patent against an infringer where the owner of the patent acts or acted inequitably, unfairly, or deceitfully towards the infringer or the Court in a way that has immediate and necessary relation to the relief that the patent holder seeks in a lawsuit.  This is referred to as "unclean hands," and it is a defense that Samsung contends precludes any recovery by ON Semiconductor in this lawsuit.

There is no set formula for determining whether unclean hands applies in this lawsuit. Rather, you must consider and weigh all the facts and circumstances in view of the principles noted above to determine whether you believe that, on balance, ON Semiconductor acted in such an unconscionable way towards Samsung or the Court in the matters relating to the controversy between ON Semiconductor and Samsung that, in fairness, ON Semiconductor should be denied the relief it seeks in this lawsuit.

Although the question of whether ON Semiconductor's claims are barred by unclean hands is one that I will decide, I will ask for your findings so that I can consider them in making that decision.  You should make determinations on this issue as you would for any other issue in this case because I will consider them seriously in making my determination.

---

[89] Federal Circuit Bar Association Model Patent Jury Instruction No. 5.5 (Jan. 12, 2008).

**7.3A   UNCLEAN HANDS (ON SEMICONDUCTOR OBJECTS TO THIS INSTRUCTION)**

ON Semiconductor objects to this proposed instruction on unclean hands.  The issues relating to an unclean hands defense are equitable in nature, to be tried to the Court, and not the jury.  ON Semiconductor further objects to this proposed instruction on the grounds that ON Semiconductor was denied discovery on Samsung's unclean hands defense.  *See* Motion *In Limine* No. VIII (filed Nov. 7, 2008).  If the Court determines that an instruction on this issue is appropriate, ON Semiconductor reserves the right to submit a proposed instruction.

**7.4   IMPLIED LICENSE[90] (SAMSUNG'S PROPOSAL)**

A patent holder may grant permission for another to act in such a way as to infringe his patent.  This permission is called a "license."  If an infringer has a license to a patent, the patent holder cannot obtain relief for his infringement.  A license does not, however, have to be a written document.  No formal granting of a license is necessary.  The patent holder's language or conduct may constitute an implied license if the infringer reasonably inferred that the patent holder consents to his use of the technology claimed in the patent.  Samsung contends that it has such an implied license to ON Semiconductor's patents-in-suit and that it cannot be liable for infringement as a result.

In order to prove that it has an implied license to any of ON Semiconductor's patents, Samsung must show:

(1) a relationship or affiliation existed between Samsung and ON Semiconductor;

(2) within the context of that relationship or affiliation, ON Semiconductor's statements and/or conduct created the impression that it granted to Samsung a right to use the technology claimed in ON Semiconductor's patent or patents;

(3) ON Semiconductor received valuable consideration for that grant; and

(4) ON Semiconductor denies that Samsung had an implied license.

You should consider the entire course of ON Semiconductor's conduct and its relationship or affiliation with Samsung to determine whether Samsung reasonably inferred that it had permission to use the technology claimed in ON Semiconductor's patent or patents.  In

---

[90] *De Forest Radio Tel. Co. v. United States*, 273 U.S. 236 (1927); *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571 (Fed. Cir. 1997).

addition, valuable consideration means whether ON Semiconductor received a valuable benefit in return for its implicit grant of permission.

Although the question of whether Samsung had an implied license to any or all of ON Semiconductor's patents is one that I will decide, I will ask for your findings so that I can consider them in making that decision. You should make determinations on this issue as you would for any other issue in this case because I will consider them seriously in making my determination.

**7.4A   IMPLIED LICENSE (ON SEMICONDUCTOR OBJECTS TO THIS INSTRUCTION)**

ON Semiconductor objects to this proposed instruction on implied license.  The issues relating to an implied license defense are equitable in nature, to be tried to the Court, not the jury.  If the Court determines that an instruction on this issue is appropriate, ON Semiconductor reserves the right to submit a proposed instruction.

**7.5    PATENT MISUSE[91] (SAMSUNG'S PROPOSAL)**

A patent allows its owner to exclude all others from practicing the invention as claimed in the patent for a period of time. While the law allows a patent holder to assert its patent when there is a good faith belief of infringement, a patent will be unenforceable if a patent holder seeks to expand the scope of the patent beyond its statutory limits or when a patent holder uses its patent rights to obtain or coerce an unfair commercial advantage. This is referred to as "patent misuse," and it is a defense that Samsung contends precludes any recovery by ON Semiconductor in this lawsuit.

Patent misuse can be shown where a patentee attempts to collect royalties from two licensees of a patent for the same right, that is, where the patentee attempts to "double dip" by collecting two royalties for the same conduct. This requires showing that: (1) royalties were collected from two licensees (or from a licensee and an attempt to collect from an accused infringer) for the same product under the same patent; (2) collecting those two royalties impermissibly extends either the physical or temporal scope of the patent grant with an anticompetitive effect.

Although the question of whether ON Semiconductor's claims are barred by patent misuse is one that I will ultimately decide, I will ask for your findings so that I can consider them in making that decision. You should make determinations on this issue as you would for any other issue in this case because I will consider them seriously in making my determination.

---

[91] *B. Braun Med., Inc. v. Abbott Labs.,* 124 F.3d 1419 (Fed. Cir. 1997); *C.R. Bard, Inc. v. M3 Sys., Inc,* 157 F.3d 1340 (Fed. Cir. 1998); *PSC Inc. v. Symbol Techs., Inc*., 26 F. Supp. 2d 505, 509 (W.D.N.Y. 1998).

## 7.5A   PATENT MISUSE (ON SEMICONDUCTOR OBJECTS TO THIS INSTRUCTION)

ON Semiconductor objects to this proposed instruction on patent misuse.  The issues relating to a patent misuse defense are equitable in nature, to be tried to the Court, and not the jury.[92]  ON Semiconductor further objects to this proposed instruction on the grounds that ON Semiconductor was denied discovery on Samsung's patent misuse defense.  *See* Motion *In Limine* No. VIII (filed Nov. 7, 2008).  If the Court determines that an instruction on this issue is appropriate, ON Semiconductor reserves the right to submit a proposed instruction.

---

[92] "Patent misuse is an equitable defense to a charge of patent infringement."  *Bayer Ag v. Housey Pharmaceuticals, Inc.* 228 F. Supp. 2d 467, 469 (D. Del, October 22, 2002).

**7.6     WAIVER/ACQUIESCENCE[93] (SAMSUNG'S PROPOSAL)**

Samsung has raised the affirmative defense that ON Semiconductor waived its rights to enforce its patents against Samsung. In order to prove waiver as to a patent, Samsung must show either that ON Semiconductor, with knowledge of the relevant facts, intentionally relinquished its rights to enforce the patent, or that its conduct was so inconsistent with an intent to enforce its rights as to induce a reasonable belief that such right has been relinquished.

The defense of waiver, therefore, requires you to focus on the mental attitude of ON Semiconductor at the relevant time.  ON Semiconductor's intent to relinquish rights may have been shown by its statements or conduct. Silence or inactivity can also constitute a waiver if there was an obligation or duty to speak or otherwise take action.  Separately for each of the patents-in-suit, you should consider whether ON Semiconductor intended to relinquish its rights.

Samsung's waiver defense in this case may seem similar to Samsung's equitable estoppel defense.  However, detrimental reliance on the part of Samsung or prejudice suffered by Samsung is not required for waiver.

Although the question of whether ON Semiconductor's claims are barred by waiver is one that I will decide, I will ask for your findings so that I can consider them in making that decision. You should make determinations on this issue as you would for any other issue in this case because I will consider them seriously in making my determination.

---

[93] *Qualcomm Inc. v. Broadcomm Corp.,* No. 05CV1958-B, 2007 WL 1031373 (S.D. Cal. 2007); *Hynix Semiconductor Inc. v. Rambus Inc.,* No. C 00-20905 RMW, 2008 WL 1907909 (N.D. Cal. 2008).

**7.6A   WAIVER/ACQUIESCENCE (ON SEMICONDUCTOR OBJECTS TO THIS INSTRUCTION)**

ON Semiconductor objects to this proposed instruction on waiver/acquiescence.   The issues relating to a waiver/acquiescence defense are equitable in nature, to be tried to the Court, and not the jury.   ON Semiconductor further objects to this proposed instruction on the grounds that ON Semiconductor was denied discovery on Samsung's waiver/acquiescence defense.   *See* Motion *In Limine* No. VIII (filed Nov. 7, 2008).   If the Court determines that an instruction on this issue is appropriate, ON Semiconductor reserves the right to submit a proposed instruction.

8.      **DELIBERATION AND VERDICT**

8.1     **INTRODUCTION[94] (AGREED)**

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence.   Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.   If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.   The officer will give them to me, and I will respond as soon as I can.   I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.   Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages.   Do not ever write down or tell anyone how you stand on your votes.   For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.   That should stay secret until you are finished.

---

[94] *Affymetrix, Inc. v. Illumina, Inc.*, No. 04-901-JJF (Jury Instruction No. 6.1, dated Mar. 12, 2007, D.I. 422).

**8.2     UNANIMOUS VERDICT[95] (AGREED)**

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if you become convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges - judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.  You will then return to the courtroom and your foreperson will give your verdict.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

---

[95] *Affymetrix, Inc. v. Illumina, Inc*., No. 04-901-JJF (Jury Instruction No. 6.2, dated Mar. 12, 2007, D.I. 422).

**8.3    DUTY TO DELIBERATE[96] (AGREED)**

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that - your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

---

[96] *Affymetrix, Inc. v. Illumina, Inc*., No. 04-901-JJF (Jury Instruction No. 6.3, dated Mar. 12, 2007, D.I. 422).

**8.4     COURT HAS NO OPINION[97] (AGREED)**

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.

---

[97] *Affymetrix, Inc. v. Illumina, Inc*., No. 04-901-JJF (Jury Instruction No. 6.4, dated Mar. 12, 2007, D.I. 422).