IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA GENERAL, L.L.C., SAMSUNG SEMICONDUCTOR, INC., and SAMSUNG AUSTIN SEMICONDUCTOR L.L.C.,<br><br>   Plaintiffs,<br><br>  v.<br><br>ON SEMICONDUCTOR CORP. and SEMICONDUCTOR COMPONENTS INDUSTRIES, LLC,<br><br>   Defendants. | Civil Action No. 06-720 (JJF)<br><br>**REDACTED –**<br>**PUBLIC VERSION** |
| ON SEMICONDUCTOR CORP. and SEMICONDUCTOR COMPONENTS INDUSTRIES, LLC,<br><br>   Plaintiffs,<br><br>  v.<br><br>SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA GENERAL, L.L.C., SAMSUNG SEMICONDUCTOR, INC., and SAMSUNG AUSTIN SEMICONDUCTOR L.L.C.,<br><br>   Defendants. | Civil Action No. 07-449 (JJF) |

**SAMSUNG'S OPPOSITION TO**
**ON SEMICONDUCTOR'S MOTIONS *IN LIMINE***

## TABLE OF CONTENTS

**Page**

ARGUMENT ...........................................................................................................................1

I.  ON Semiconductor's Motion *In Limine* No. 1 Proposes A Self-Serving Order Of Proof That Will Result In A Needlessly Extended And Complex Trial That Misstates The Parties' Positions. ...........................................1

II.  ON Semiconductor's Motion *In Limine* No. 2 To Preclude Desi Rhoden Should Be Denied. ..................................................................................2

III.  ON Semiconductor's Motion *In Limine* No. 3 To Preclude The Jury From Hearing Evidence Concerning Samsung's Equitable Defenses Should Be Denied. ..............................................................................................8

IV.  ON Semiconductor's Motion *In Limine* No. 4 Improperly Seeks To Add Hundreds Of New Products To This Case That Were Never Timely Accused And Circumvent Its Burden Of Proving Infringement Concerning Those Products. ...........................................................................10

   A.  ON Semiconductor's Assertion That Samsung Withheld From Discovery Requested Information Concerning Accused Products Is Wrong. ....................................................................................11

   B.  ON Semiconductor's Motion Is An Improper Attempt To Shift The Burden Of Proof Concerning Hundreds Of Products That ON Semiconductor Never Timely Accused. ....................................12

V.  The Court Should Exclude The Issue Of Willful Infringement And Enhanced Damages For Both Parties. ....................................................14

VI.  ON Semiconductor's Motion *In Limine* No. 6 To Preclude Evidence Or Argument Regarding Laches Should Be Denied. ..................................15

VII.  ON Semiconductor's Motion *In Limine* No. 7 Should Be Denied Because It Improperly Seeks To Preclude Expert Testimony Concerning Prior Art That Was Disclosed In Samsung's Expert Reports. ...............................18

VIII.  ON Semiconductor's Motion *In Limine* No. 8 To Preclude Evidence Or Argument Regarding Samsung's Affirmative Defenses Of Waiver, Acquiescence, Misuse, And Unclean Hands Should Be Denied. .........................20

IX.  ON Semiconductor's Motion *In Limine* No. 9 Should Be Denied To The Extent It Seeks To Preclude Evidence Or Argument Regarding The Parties' Claim Construction Positions That Is Highly Relevant To Samsung's State Of Mind For Purposes Of Determining Willful And Indirect Infringement. ........................................................................22

i

X.    ON Semiconductor's Motion *In Limine* No. 10 To Preclude Evidence Or
      Argument Regarding Settlement Negotiations Should Be Denied Because
      ON Semiconductor's Own Expert Relies Upon The Negotiations And
      Because Such Evidence Is Highly Relevant To Willful And Indirect
      Infringement.........................................................................................................23

CONCLUSION................................................................................................................26

## ARGUMENT

I.   **ON Semiconductor's Motion *In Limine* No. 1 Proposes A Self-Serving Order Of Proof That Will Result In A Needlessly Extended And Complex Trial That Misstates The Parties' Positions.**

ON Semiconductor's proposed presentation of evidence—calling for back-to-back trials—should be rejected in favor of the more efficient and orderly one Samsung proposes herein.  As an initial matter, Samsung—not ON Semiconductor—is the plaintiff.  This case began after ON Semiconductor launched its "licensing program" attempting to extract hundreds of millions in royalties from Samsung and other DRAM manufacturers for use of open industry standards relating to DRAM—products ON Semiconductor does not even make.  Samsung filed this declaratory action to obtain an order vindicating its position that ON Semiconductor's attempts to stretch its patents to cover memory products and technology unrelated to the patents were without basis.  To be sure, ON Semiconductor bears the burden of proving infringement.  Thus, to resolve the issue of presentation of evidence, Samsung will agree to let ON Semiconductor attempt to prove its case-in-chief first subject to the jury understanding that it is Samsung—not ON Semiconductor—that is plaintiff for bringing this case.  Moreover, Samsung has its own patent-in-suit.  Accordingly, after ON Semiconductor presents its case-in-chief, Samsung should respond, as well as present its own case-in-chief, resulting in one trial rather than two.  The proper order should be as follows:

- ON Semiconductor presents its case-in-chief on its own patents.

- Samsung responds to ON Semiconductor's case and presents its own case-in-chief on its own patent.

- ON Semiconductor rebuts invalidity to its own patents and responds to Samsung's case.

- Samsung rebuts invalidity to its own patent.

1

This order of presentation results in a far more compact trial, and thus reduces the number of jury days and the number of times the same witnesses have to appear on the stand. By contrast, ON Semiconductor's proposal requires the jury to sit through two complete trials with overlapping witnesses and evidence, all for the sole benefit of assisting the party that fought so hard to avoid being in this forum to begin with.

This is especially significant to the extent ON Semiconductor continues to pursue its "willful" and indirect infringement claims. The jury should be permitted to hear that it was Samsung that brought the action, and that ON Semiconductor was unwilling to test its "licensing" assertions in a court of law.

## II.     ON Semiconductor's Motion *In Limine* No. 2 To Preclude Desi Rhoden Should Be Denied.

The Court should reject ON Semiconductor's motion to exclude Mr. Desi Rhoden from testifying at trial on *Daubert* grounds. Disagreement is not a valid ground for preclusion under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Mr. Rhoden is an expert on JEDEC practices and procedures, who has been qualified and testified on these issues in other cases, and who held a senior leadership position with JEDEC in the relevant time frame.

As an initial matter, it bears emphasis that it is ON Semiconductor that placed standards compliance at issue in this case with respect to infringement and damages through its opportunistic reading of its patents for purposes of its new "licensing program."

## REDACTED

(Ex. 1, Transcript of Deposition of Bradley J. Botsch ("Bostch Dep.") at 138:8-140:8; 148:3-19.) In fact, ON Semiconductor informed JEDEC of the patents

long after the standards and patents had issued, and only shortly before embarking on its efforts to extract hundreds of millions in royalties from the DRAM industry. As explained by Mr. Rhoden, if ON Semiconductor's present infringement contentions were true—and Samsung contends they are not—it would have important consequences with respect to ON Semiconductor's obligations to JEDEC, as well as its ability to enforce and seek patent infringement remedies from the semiconductor industry, which relies on JEDEC's open standards. ON Semiconductor does not want the jury to hear about the consequences of its litigation positions—its inconsistent positions on what its patents cover, its lack of technological contribution to the standards that it now contends infringe, and its promises and obligations that would have existed if its litigation positions were correct. But all of this evidence is the result of ON Semiconductor's own infringement positions, and ON Semiconductor fails to raise any meritorious issue with the reliability of Mr. Rhoden's report.

In a *Daubert* inquiry, "[t]he focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. "An expert is, nonetheless, permitted to base his opinion on a particular version of disputed facts and the weight to be accorded to that opinion is for the [fact-finder]." *Walker v. Gordon*, 46 Fed. Appx. 691, 695-96 (3d Cir. 2002). Disputes about whether the conclusions an expert drew from the evidence are the correct or best conclusions should be the subject of cross-examination, not a *Daubert* inquiry. *Id.*; *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414-15 (3d Cir. 2002) (affirming denial of *Daubert* motion where the movant argued that the limited evidence relied on by the expert was inadequate); *Reis v. Barley, Snyder, Senft & Cohen LLC*, No. 05-CV-01651, 2008 WL 2653670, at *9 (E.D. Pa. July 3, 2008) ("Plaintiffs' disagreement with the conclusions and opinions of Mr. Glusman is also appropriate for cross-examination and

argument, but is not a proper *Daubert* attack."); *see also Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

ON Semiconductor purports to challenge the reliability of Mr. Rhoden's expert opinion by raising the following three objections: (1) that Mr. Rhoden allegedly "ignores" that the JEDEC patent policy requires its members to disclose all patents relevant to, or involving, the work of JEDEC of which the member is aware; (2) that Mr. Rhoden allegedly "confuses" a distinction between JEDEC "members" and "participants" in the JEDEC patent policy; and (3) that allegedly "Mr. Rhoden Is Wrong that ON Semiconductor 'Must Have Known' About the Patents at Issue." (D.I. 282 at 9-12.)[1]  All of these objections, however, simply reflect ON Semiconductor's unsupported disagreements with Mr. Rhoden's view of the evidence and the conclusions he has drawn, rather than a challenge to his reasoning or methodology.  Such disagreements do not amount to a proper *Daubert* challenge and should instead be pursued in cross-examination.  Moreover, an inspection of these disagreements reveals that they are ill-founded.[2]

---

[1] Docket citations to civil action no. 07-449 unless otherwise noted.

[2] In a seeming attempt to object to the "fit" of Mr. Rhoden's testimony, ON Semiconductor avers in a brief footnote in its motion that Mr. Rhoden's testimony would not assist the fact-finder. (D.I. 282 at 11 n.9.)  Neither the jury nor this Court, however, has the extensive experience and knowledge that Mr. Rhoden possesses regarding the policies and practices of JEDEC.  Mr. Rhoden has over twenty years of experience in JEDEC, including as a member of its Board of Directors and as a committee chairman. (Ex. 2, Ex. A to Rhoden Expert Report, at 1.)  Even ON Semiconductor recognizes that his expertise and credentials in this area are irreproachable as it does not challenge or criticize any aspect of his qualifications.  Further, Mr. Rhoden's testimony is not limited to the interpretation of a few documents.  He has offered helpful opinions and insights regarding the expectations of JEDEC members with regard to JEDEC policies, the technical requirements of JEDEC procedures, and the role and importance of the duty to disclose at JEDEC, among other topics. (*E.g.*, D.I. 283, Ex. 5 ¶¶ 25-35, 56-63.)  Significantly, ON

(Continued...)

First, ON Semiconductor argues that Mr. Rhoden "ignored" certain JEDEC documents allegedly indicating that the JEDEC patent policy requires "actual knowledge" of a patent before it must be disclosed. (D.I. 282 at 9-10.) Far from "ignoring" these documents, Mr. Rhoden listed them amongst the materials he considered. (Ex. 3, Ex. B to Rhoden Expert Report (listing the JEDEC website and SAMSUNG0309231-32)[3].) He further made clear that his conclusions regarding the JEDEC patent policy were based on his detailed review of these and other documents as well as specific aspects of his twenty-plus years of experience in JEDEC. (D.I. 283, Ex. 5 ¶¶ 14-15, 25-35.) Mr. Rhoden expressly addressed ON Semiconductor's knowledge of its patents-in-suit in his expert report, and he explained those views still further at his deposition as well as discussing the issue of knowledge and the JEDEC patent policy in general. (*Id.* ¶¶ 53-55;                                                    **REDACTED**

Accordingly, ON Semiconductor's allegation that Mr. Rhoden "ignored" evidence is simply wrong and amounts to a disagreement with Mr. Rhoden's interpretation of that evidence.

Second, ON Semiconductor argues (incorrectly) that certain JEDEC documents indicate that the JEDEC patent policy makes a distinction between "members" and "participants," which Mr. Rhoden allegedly failed to acknowledge but later admitted. (D.I. 282 at 10-11.) Here, ON

---

Semiconductor has not disputed that Mr. Rhoden's testimony is relevant to the issues and controversy of this case.

[3] ON Semiconductor relies on Exs. 10-11 to its Motions *in Limine*. Ex. 10 is a printout from the JEDEC website (http://www.jedec.org/Home/patent_related/JEDEC_Patent_Policy_Stmt.pdf), and Ex. 11 is the same document as SAMSUNG0309231-32 (*compare* D.I. 283, Ex. 11, *with* Ex. 4, SAMSUNG0309231-32).

Semiconductor misrepresents Mr. Rhoden's testimony[4]—

ON Semiconductor's disagreement with this view is irrelevant for *Daubert* purposes. Curiously, ON Semiconductor relies on an argument expressly rejected by the *Daubert* Court: "Mr. Rhoden's [opinion] does not comply with the **generally accepted** interpretation of JEDEC policy." (D.I. 282 at 11 (emphasis added)); *see Daubert*, 509 U.S. at 597 ("'General acceptance' is not a necessary precondition to the admissibility of scientific evidence under the Federal Rules of Evidence...").

Finally, ON Semiconductor's last disagreement lacks merit inasumuch as it alleges that "Mr. Rhoden Is Wrong that ON Semiconductor 'Must Have Known' About the Patents at Issue." In this regard, ON Semiconductor contends that Mr. Rhoden's conclusions regarding ON Semiconductor's knowledge of its patents-in-suit are "belied by the factual record." (D.I. 282 at 12.) ON Semiconductor can proffer nothing more than a conclusory allegation that Mr.

---

[4] ON Semiconductor also alleges that Mr. Rhoden "has had, and continues to have, an ongoing consulting relationship with Samsung for at least the past year...." (D.I. 282 at 8.) This insinuation of bias is both irrelevant to the *Daubert* inquiry and misrepresents facts to the Court. As this is the subject of another pending motion before the Court (*see* D.I. 264-67), however, Samsung will respond to this false allegation in its Answering Brief to that motion.

Rhoden's opinions regarding ON Semiconductor's knowledge of its patents-in-suit are "built solely on his unsupported assumptions, subjective beliefs and speculation." (*Id.*) But Mr. Rhoden's report and testimony make clear that his opinions have a sound basis in the documents he reviewed, the contentions of ON Semiconductor itself, and his own extensive knowledge and experience in JEDEC.

**REDACTED**

. (*Id.* ¶¶ 41, 45, 48.) Based on all of these facts and his own knowledge and experience in JEDEC—and assuming *arguendo* that ON Semiconductor's view of the scope and importance of its patents-in-suit is correct—Mr. Rhoden concluded that

(*Id.* ¶¶ 53-55.) Far from being based on his subjective belief or unsupported assumptions, Mr. Rhoden's report clearly demonstrates that his opinions are reliable and grounded in his review and analysis of the facts . and evidence.

7

ON Semiconductor has failed to raise a valid objection as to the reliability or fit of Mr. Rhoden's testimony. Nor has it challenged Mr. Rhoden's expertise or qualifications. As such, the Court should deny ON Semiconductor's motion *in limine* to preclude Mr. Rhoden's expert testimony.

### III.    ON Semiconductor's Motion *In Limine* No. 3 To Preclude The Jury From Hearing Evidence Concerning Samsung's Equitable Defenses Should Be Denied.

ON Semiconductor's motion to exclude evidence on equitable issues should be denied because the merits of the legal and equitable issues in this case are inextricably intertwined. While the ultimate decision on equitable issues is for the Court, where, as here, the underlying facts are also relevant to jury issues such as infringement and damages, the evidence is properly tried to the jury.[5] *Isco Int'l, Inc. v. Conductus, Inc.*, 279 F. Supp. 2d 489, 500 (D. Del. 2003) ("As such, the court will treat as advisory the jury's verdict regarding inequitable conduct, and adopt it if it is supported by substantial evidence."); *Revlon Consumer Prods. Corp. v. L'Oreal S.A.*, No. 96-192, 1997  WL 158281, at *3  (D. Del. Mar. 26, 1997) ("[T]he Court will opt to submit to the jury special interrogatories on the facts of materiality and intent. The Court will then weigh the findings on these two elements 'in light of all the circumstances,' and decide the ultimate question of inequitable conduct."); *Genentech, Inc. v. Wellcome Found. Ltd.*, Nos. 88-330, 89-407, 1990 WL 69187, at *14 (D. Del. Mar. 8, 1990) (holding that "overlapping of

---

[5] The authorities relied on by ON Semiconductor reflect that preclusion is possible when ***no factual overlap exists***. *Schering Corp. v. Amgen Inc.*, 969 F. Supp. 258, 269 (D. Del. 1997) ("As such, and without an apparent factual overlap in the current record among jury issues and Amgen's equitable defenses, any testimony regarding laches and estoppels would be heard by the Court."); *THK Am., Inc. v. NSK, Ltd.*, No. 90 C 6049, 1996 WL 33398071, at *1 (N.D. Ill. Jan. 9, 1996) (recommending bifurcation because evidence relating to equitable issues had "no relevance" to issues to be decided by the jury). These authorities are thus inapposite here.

evidence" as to patent validity, inequitable conduct, and antitrust claims "counsels toward a unified trial").

Here, ON Semiconductor's infringement case and damages case squarely place, for example, industry standards at issue, and the same evidence forms the foundation for Samsung's equitable defenses such as laches and equitable estoppel.

## REDACTED

ON Semiconductor also alleges that Samsung's supposed infringement was "willful," despite having never mentioned the patents until years after the standards were adopted by the industry.                    ## REDACTED

(Ex. 8, 1/20/2005 Letter from Botsch to McGhee, at ON_00129758; Ex. 9, 2/15/2005 Letter from Botsch to McGhee, at ON_00129757.)  But ON Semiconductor now seeks exorbitant royalty damages and an injunction,                    To be sure, ON Semiconductor's reversal of position on what its patents cover  ## REDACTED

is embarrassing to ON Semiconductor.  But it is not unfairly prejudicial.  ON Semiconductor should not be permitted to tell only the portion of its story that it likes to the jury, and its effort to exclude evidence related to both equitable defenses and jury issues should be denied.[6]

---

[6] With respect to whether the Court would like an advisory jury verdict on equitable issues, Samsung defers to the Court's preference but does not oppose those issues being decided solely by the Court.

**IV.    ON Semiconductor's Motion *In Limine* No. 4 Improperly Seeks To Add Hundreds Of New Products To This Case That Were Never Timely Accused And Circumvent Its Burden Of Proving Infringement Concerning Those Products.**

ON Semiconductor's motion *in limine* no. 4 is a veiled attempt to add—after the close of discovery and long after the Court-ordered deadline—hundreds of additional Samsung products to this case that ON Semiconductor never timely accused. Indeed, ON Semiconductor's motion deceptively omits the fact that the reason it lacks complete information concerning all the "accused products" is that it did not even accuse nearly half of those products during the discovery period. And ON Semiconductor brazenly requests that the Court effectively sanction Samsung for not producing information concerning those newly-identified products by precluding Samsung from disputing that they differ from the hundreds of other products that were timely accused and the subject of discovery.

Moreover, ON Semiconductor's assertion that "Samsung has refused to produce any information correlating the processes and designs to individual products" is demonstrably false. Samsung incurred substantial expense responding to ON Semiconductor's numerous discovery requests concerning the products actually accused during the discovery period—including providing the requested correlation information. Yet ON Semiconductor did not even bother to review the circuit schematics for all those products because its expert felt that "[t]here are way too many." (Ex. 10, Transcript of Deposition of Martin G. Walker at 86:11-17.)  Nothing justifies ON Semiconductor's attempt to add hundreds of new products to this case in violation of the parties' agreement and Court's order when it failed to even consider all the products that it timely accused. And nothing justifies ON Semiconductor's attempt to falsely assert that those new products are no different than the few it actually analyzed, as it seeks to do through its motion. Accordingly, ON Semiconductor's motion *in limine* no. 4 should be denied.

**A.      ON Semiconductor's Assertion That Samsung Withheld From Discovery Requested Information Concerning Accused Products Is Wrong.**

The agreed upon and Court ordered deadline for completing contention discovery was over seven months ago, on April 11, 2008. (D.I. 86.)  In accordance with that deadline, ON Semiconductor contended in response to Samsung's Interrogatory No. 1 that hundreds of Samsung products infringe the three circuit patents-in-suit:[7]

- 176 accused products for the '644 patent;

- 181 accused products for the '594 patent; and

- 176 accused products for the '001 patent.

(Ex. 11.)  Fact discovery concerning the parties' April 11, 2008, contentions ended August 29, 2008.  (D.I. 86, 151.)  During that time, Samsung incurred substantial expense producing documents, databases, witnesses for deposition, and providing interrogatory responses concerning each of the hundreds of accused products.[8]

The underlying basis for ON Semiconductor's motion—that "Samsung has refused to produce any information correlating the processes and designs to individual products"—is demonstrably false.  Indeed, the requested product schematics and information correlating end products to those schematics were provided to ON Semiconductor multiple times and in various formats.  For example, on February 22, 2008, Samsung provided ON Semiconductor with

---

[7] ON Semiconductor's "circuit" patents include U.S. Patent No. 6,362,644 ("the '644 patent"), U.S. Patent No. 5,563,594 ("the '594 patent"), and U.S. Patent No. 5,361,001 ("the '001 patent").  ON Semiconductor also asserted a "process" patent, U.S. Patent No. 5,000,827 ("the '827 patent"), that is not at issue in this motion.

[8] It appeared that a small number of part numbers identified by ON Semiconductor were erroneous because they were either never manufactured or not even SDRAM products, but the requested information was provided for the remaining products.

electronic versions of product schematics for the accused products, including a cross-reference table correlating each of the nearly 200 different accused Samsung part numbers with its corresponding schematic file name. (Ex. 12.)  Similarly, beginning in March 2008, at great expense, Samsung provided ON Semiconductor with access to its Basecamp and Virtuoso databases to ensure that ON Semiconductor had complete access to everything it allegedly needed to analyze the accused products—and repeatedly answered ON Semiconductor's questions concerning the databases and correlation information.  (*See, e.g.*, Exs. 13-16.)  And finally, the requested "correlating" information was again provided to ON Semiconductor in response to its Interrogatory Nos. 9, 28, and 29.  (Exs. 17-18.)[9]  ON Semiconductor's assertion that Samsung refused to provide discovery concerning the accused products is thus clearly incorrect.

**B.     ON Semiconductor's Motion Is An Improper Attempt To Shift The Burden Of Proof Concerning Hundreds Of Products That ON Semiconductor Never Timely Accused.**

The real dispute underlying ON Semiconductor's motion—which ON Semiconductor neglects to tell the Court—concerns the hundreds of Samsung products that ON Semiconductor never timely accused.  Indeed, months after the Court-ordered and agreed upon deadline for raising new contentions, and beginning just two weeks before the parties served opening expert reports, ON Semiconductor served a series of new interrogatory responses purporting to add hundreds of brand new "accused products" to the case:

---

[9] ON Semiconductor's assertion that Samsung's Rule 30(b)(6) deposition witnesses failed to provide "correlation" information (D.I. 282 at 15) is likewise misplaced.  None of the deposition topics even sought such information.  (D.I. 283 Exs. 14, 15.)  Nor were the witnesses even asked to correlate any specific circuitry to any accused product.  Moreover, as discussed herein, all requested correlation information was provided to ON Semiconductor through Samsung's documents and interrogatory responses.

- 163 new accused products (339 total products) for the '644 patent;

- 180 new accused products (361 total products) for the '594 patent; and

- 163 new accused products (339 total products) for the '001 patent.

(Exs. 6, 19-21.)  But ON Semiconductor never sought nor obtained leave of the Court to nearly double the number of accused products after the close of discovery and over four months after the Court-ordered deadline for raising new contentions.  Indeed, permitting such a massive and unwarranted expansion of the case in violation of the Court's order and the parties' agreement (D.I. 86) would require substantial modification to the schedule, including re-opening discovery, and substantially prejudice Samsung.

Moreover, ON Semiconductor should not be permitted to profit from its own blatant disregard of the parties' agreement and Court's order setting the April 11, 2008, deadline for raising new contentions.  (D.I. 86.)  Indeed, no legal precedent permits a patentee to accuse hundreds of new products after the close of discovery and then simply assume that those products infringe, as ON Semiconductor seeks to do here.  To the contrary, the Federal Rules of Civil Procedure strictly prohibit such trial by ambush tactics.  *See, e.g., Macaulay v. Anas*, 321 F.3d 45, 50 (1st Cir. 2003) ("[A]n important object of these rules is to avoid trial by ambush ..."); Fed. R. Civ. P. 26(e).  And ON Semiconductor bears the burden of proving that each and every accused product infringes.  *L & W, Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1318 (Fed. Cir. 2006) (rejecting patentee's assertion that the accused infringer was obligated to refute its assumption that the design of all the accused products was "substantially similar").  Accordingly, ON Semiconductor's motion seeking to preclude Samsung from challenging its unsupported assertion that hundreds of Samsung products that were not at issue during the discovery period

13

are no different than those products actually accused and analyzed by ON Semiconductor, should

be denied.[10]

## V.   The Court Should Exclude The Issue Of Willful Infringement And Enhanced Damages For Both Parties.

This Court should exclude the issue of willful infringement from the case for both sides.

Indeed, Samsung and ON Semiconductor both filed nearly identical motions to exclude evidence

of willfulness and there is no meaningful distinction between them.  (D.I. 277, 282.)  Samsung

proposed that the parties limit the issues in the case by eliminating willful infringement.  ON

Semiconductor never responded, apparently because it wanted to file one more motion to compel

(D.I. 270-272) months after the required deadline on an issue never before raised and which is

predicated on a fundamental misunderstanding of basic principles of the attorney-client privilege.

Samsung submits the better course is to grant both parties' motions to exclude willfulness since

ON Semiconductor has no interest in such an agreement.  Notably, ON Semiconductor conflates

the notion of exceptional case and willfulness—they are different.  *See Sepracor, Inc. v. Dey*,

No. 06-113-JJF, 2008 WL 4377570 at *3 (D. Del. Sept. 26, 2008).  Willfulness is a jury issue

that may result in enhanced damages by the Court.  Exceptional case is an issue for the Court

after the case is over should the prevailing party seek attorney fees under 35 U.S.C. § 285.  The

motions *in limine* are limited to the issue of willfulness.  Accordingly, this Court should exclude

the issue of willful infringement from the case for both sides.

---

[10] The motion should also be denied as moot in view of Samsung's Motion *In Limine* No. 1 (D.I. 273), because ON Semiconductor's infringement case should be limited to the two sets of circuitry actually analyzed for each asserted patent.  The other Samsung products are thus not relevant.

**VI.    ON Semiconductor's Motion *In Limine* No. 6 To Preclude Evidence Or Argument Regarding Laches Should Be Denied.**

Samsung should not be precluded from offering any evidence or argument on its laches defense because it provided sufficient evidence to support this defense. Samsung contends that ON Semiconductor delayed at least three-and-a-half years in asserting its infringement claims and that such delay is "unreasonable and inexcusable."[11]   Regardless of whether the six-year presumption is present in this case, a three- to four-year delay in asserting a claim has been found "unreasonable" by the Federal Circuit. *MCV, Inc. v. King-Seeley Thermos*, 870 F.2d 1568, 1571-72 (Fed. Cir. 1989) (finding four-year delay in bringing a claim of co-inventorship and co-ownership unreasonable); *Rosemount v. Beckman Instruments, In*c., 727 F.2d 1540, 1550 (Fed. Cir. 1984) (finding three-year delay in amending infringement complaint to add additional product unreasonable).

Under Federal Circuit law, a two-year delay can also be "unreasonable and inexcusable" and support the defense of laches. In *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, the Federal Circuit explicitly recognized that "[t]he length of time which may be deemed unreasonable has no fixed boundaries but rather depends on the circumstances." 960 F.2d 1020, 1032 (Fed. Cir. 1992).   The circumstances in this case prove that any delay by ON Semiconductor in asserting the patents-in-suit is "unreasonable and inexcusable":

---

11 r

_____ , but ON Semiconductor did not file suit on these patents until December 4, 2006.  (D.I. 35.)

**REDACTED**

: prior to filing suit.  (*Id.* at 147:18-148:10; The '644 patent issued on March 26, 2002. but ON Semiconductor did not file suit on this patent until December 4, 2006.  (D.I. 35.)

# REDACTED

- The undisputed evidence shows it was well-publicized that Samsung purchased the accused Novellus machine as early as 1999 and that Novellus was selling the accused machines even before 1999 (*see, e.g.*, Ex. 23, http://www.secinfo.com/dr6nd.34Ux.htm at 23; Ex. 24, http://www.shareholder.com/novellus/history.cfm);

- The undisputed evidence shows Samsung has openly and notoriously sold the accused products on the market since at least 2001 and is a leader in the marketplace (*see* Ex. 25, Mulhern 10/20/2008 Rep. at 15-16; Ex. 26, Reed 9/22/2008 Rep. at 4-6, 10-11);

- The undisputed evidence shows Samsung was an active participant in developing the JEDEC standards and products that ON Semiconductor now asserts infringe the patents-in-suit years prior to ON Semiconductor's assertion (*see, e.g.*, Ex. 27, SAMSUNG0147155-167, SAMSUNG0147388-390); and

- The undisputed evidence shows ON Semiconductor was also a member of JEDEC as early as 1999 and even attended meetings during the development of the accused standards by JEDEC and Samsung (*see* Ex. 28, Amended Responses to Samsung's RFAs at No. 135, 142).

Based on this undisputed evidence, ON Semiconductor knew, or reasonably should have known, of Samsung's alleged infringement for years prior to filing suit, and any delay by ON Semiconductor is unreasonable and inexcusable.

The evidence also supports Samsung's claim of material prejudice. For instance, ON Semiconductor does not dispute that the loss of memory of a witness can be evidence of material prejudice. *See Aukerman*, 960 F.2d at 1033. Samsung has presented evidence that Mr. Virgil Schuster, an inventor of the '827 patent, was unable to recall highly relevant facts, such as details related to the conception and reduction to practice of the '827 patent. (*See, e.g.*, Ex. 29, Schuster Dep. at 78:22-79:1; 86:23-87:7, 89:6-90:1, 93:6-14, 99:16-25, 101:19-25, 150:1-6, 151:6-152:13, 190:14-25, 196:9-22.) Not only was Mr. Schuster unable to answer these highly relevant

16

questions, Mr. Bhagubhai Patel, another inventor, similarly was unable to recall these relevant facts. (*See, e.g.*, Ex. 30, Patel Dep. at 48:22-49:4,107:8-12, 109:3-8, 110:12-17, 125:4-15.)[12]

The evidence is also undisputed that Samsung invested a significant amount of time and resources developing and promoting the accused products during ON Semiconductor's delay and had significant growth in sales of the accused products during this time due to these developments. (*See, e.g.*, Ex. 26, Reed 9/22/2008 Rep. at 4-6, 10-11; Ex. 25, Mulhern 10/20/2008 Rep. at Ex. 10, 13.)  Importantly, Samsung's and ON Semiconductor's technical experts agree that non-infringing alternatives to the alleged patented technology existed at the time of first infringement back in 2002 and 2003. (*See* Ex. 31, McAlexander 10/14/2008 Rep. ¶¶ 166-179; Ex. 32, Bravman 10/14/2008 Rep. ¶¶ 89-93; Ex. 7, Walker 9/16/2008 '594 Rep. ¶ 112; Ex. 33, Walker 9/16/2008 '644 Rep. ¶ 146, Ex. 34, Walker 9/16/2008 '827 Rep. ¶¶ 161-162, Ex. 35, Walker 9/16/2008 '001 Rep. ¶ 112.)  If ON Semiconductor had not delayed in its assertion, Samsung and the rest of the SDRAM industry could have avoided the alleged infringing sales altogether by opting for the non-infringing alternatives available at the time.  This is sufficient evidence to support a finding of material prejudice and laches under Federal Circuit law.  *See Aukerman*, 960 F.2d at 1033 (finding that although "[t]he courts must look for a change in the economic position of the alleged infringer during the period of delay, ... this does not mean that a patentee may intentionally lie silently in wait watching damages escalate, particularly where an infringer, if he had had notice, could have switched to a noninfringing product.") (citation omitted).

---

[12] The deposition of Mr. Patel took place following the end of fact discovery on September 16, 2008.

Because Samsung has presented sufficient evidence to support its defense of laches, ON

Semiconductor's motion *in limine* to preclude any evidence of laches should be denied.[13]

**VII.   ON Semiconductor's Motion *In Limine* No. 7 Should Be Denied Because It Improperly Seeks To Preclude Expert Testimony Concerning Prior Art That Was Disclosed In Samsung's Expert Reports.**

Samsung agrees that both parties' expert testimony should be limited to what was timely

disclosed in their expert reports.   ON Semiconductor's motion *in limine* no. 7, however,

effectively seeks to strike large portions of Samsung's expert reports by restricting Samsung's

expert testimony to a narrow subset of the disclosed prior art references in an effort to undermine

Samsung's ability to present evidence that would assist the jury in understanding the patents-in-

suit and the state of the art leading up to the patents-in-suit—core issues in the determination of

obviousness, among other things.

Notably, ON Semiconductor's assertion that Samsung's experts "only discuss[ed] 20

references" in their expert reports is clearly incorrect.   While Samsung's experts relied upon

20 core prior art references as part of their invalidity analyses (Ex. 36 ¶¶ 94-101; Ex. 37 ¶¶ 64-

65, 68-69, 70-71), they also expressly disclosed that their obviousness opinions were based in

part upon the "knowledge and teachings of the prior art" and the "general knowledge of one of

ordinary skill in the art."   (Ex. 36 ¶¶ 95, 97, 99, 100; Ex. 37 ¶¶ 65, 69, 71.)   In that regard,

substantial portions of Samsung's expert reports discuss such knowledge and teachings of the

prior art and general knowledge of one of ordinary skill in the art in view of numerous prior art

references in addition to the 20 core references relied upon by the experts in their ultimate

invalidity conclusions.   (*See, e.g.,* Ex. 36 ¶¶ 25-45, 64-73; Ex. 37 ¶¶ 6, 16-18, 39-42, Ex. A ¶¶ 3-

---

. [13] ON Semiconductor's motion *in limine* should also be denied to the extent it seeks to preclude Samsung from presenting any evidence that is also relevant to other defenses in this case.

6, 16-17, Ex. B ¶¶ 3-7, Ex. C ¶¶ 2-5, 16-20, Ex. D.)  That additional prior art brings context, for example, to the background of the technology, prosecution history of the patents-in-suit, and general knowledge of those of ordinary skill in the arts of the patents-in-suit.

Moreover, ON Semiconductor provides no legal basis for effectively striking the substantial portions of Samsung's expert reports concerning the general knowledge and teachings of the prior art by restricting the experts' testimony to the specific core references underlying the anticipation and obviousness conclusions.  Indeed, the background of the technology and general knowledge of those of skill in the art discussed throughout the expert reports are key aspects of the obviousness analysis, specifically relied upon by Samsung's experts.  *See, e.g., Para-Ordnance Mfg., Inc. v. SGS Importers Int'l, Inc.*, 73 F.3d 1085, 1090 (Fed. Cir. 1995) (affirming finding of obviousness that was based upon "both the prior art and the teachings of the prior art ... and also ... general knowledge of one skilled in the art.") (citation omitted); *DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1361 (Fed. Cir. 2006) ("The motivation need not be found in the references sought to be combined, but may be found in any number of sources, including common knowledge, the prior art as a whole, or the nature of the problem itself."); *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1337 (Fed. Cir. 2004) ("It has long been the law that the motivation to combine need not be found in prior art references, but equally can be found 'in the knowledge generally available to one of ordinary skill in the art.'") (citation omitted).

Accordingly, because Samsung's experts are already bound by the disclosures in their expert reports under Fed. R. Civ. P. 26(a)(2)(B), there is no reason to further restrict Samsung and its experts to a subset of the disclosed prior art references.  ON Semiconductor's motion should therefore be denied.

19

**VIII. ON Semiconductor's Motion *In Limine* No. 8 To Preclude Evidence Or Argument Regarding Samsung's Affirmative Defenses Of Waiver, Acquiescence, Misuse, And Unclean Hands Should Be Denied.**

ON Semiconductor's motion *in limine* no. 8 asks the Court to exclude Samsung's properly pled defenses of waiver, acquiescence, misuse, and unclean hands based on Samsung's alleged failure to identify factual bases for these defenses during discovery. But ON Semiconductor never asked about these defenses during discovery. And, even despite ON Semiconductor's failure to seek that discovery, the factual bases for these defenses were nevertheless disclosed during discovery. There is therefore no basis for excluding these defenses.

In its answer to ON Semiconductor's counterclaims, Samsung asserted that ON Semiconductor is "barred by ... the doctrines of laches, estoppel, implied license, waiver, acquiescence, misuse and unclean hands from enforcing the claims of the '594, '644, '001 and '827 patents." (D.I. 133 (civil action no. 06-720).) ON Semiconductor now complains that Samsung never expressly mentioned waiver, acquiescence, misuse, or unclean hands in response to ON Semiconductor's Interrogatory No. 10. But Samsung was not required to do so because neither Interrogatory No. 10 nor any of ON Semiconductor's other interrogatories requested information about these defenses.

Rather, Interrogatory No. 10 requests that Samsung "[s]tate in detail each factual and each legal basis for any allegations that Samsung has not directly or indirectly infringed and are not directly or indirectly infringing any claims of any of the ON Semiconductor Patents." (Ex. 38.) The defenses of waiver, acquiescence, misuse, and unclean hands are not based on a theory of "noninfringement," as Interrogatory No. 10 addresses, but are instead based on the contention that even if Samsung were found to infringe ON Semiconductor's patents, ON Semiconductor should not be allowed to enforce the patents and collect damages from Samsung.

20

Interrogatory No. 10 was not—as ON Semiconductor would have the Court interpret it—a catch-all interrogatory requiring Samsung to explain all of its defenses in this case. ON Semiconductor should not be allowed to exclude Samsung's defenses based on ON Semiconductor's own failure to seek discovery on the defenses.

Moreover, to the extent ON Semiconductor now argues that it would be prejudiced if Samsung were allowed to pursue these defenses at trial, they are wrong. For instance, although ON Semiconductor never sought discovery on these defenses, Samsung did disclose information concerning these defenses—including a motion to compel arguing that ON Semiconductor's failure to identify its licensees and its attempts to receive double compensation for the same patent rights should render its patents unenforceable in this case. (*See, e.g.*, D.I. 207 at 10-11.) Additionally, in response to ON Semiconductor's Interrogatory Nos. 10 and 13, Samsung stated facts pertaining to, among other things,                    **REDACTED**

ON Semiconductor's conduct with respect to JEDEC, and ON Semiconductor's delay in filing suit. These filings and disclosures provided sufficient notice of the factual allegations supporting Samsung's waiver, acquiescence, misuse, and unclean hands defenses.[14] (Ex. 39, 4/11/08 Supp. Response to Defendants' Interrog. No. 10; Ex. 40, 8/8/08 Second Supp. Response to Defendants' Interrog. No. 13.) ON Semiconductor cannot, therefore, claim any surprise or prejudice as to the factual bases for these defenses.

Samsung should therefore be permitted to pursue its properly pled defenses of waiver, acquiescence, misuse, and unclean hands.

---

[14] Indeed, ON Semiconductor concedes that these responses were sufficient with respect to Samsung's equitable estoppel, implied license, and laches defenses. ON Semiconductor's motion *in limine* no. 8 is limited to waiver, acquiescence, misuse, and unclean hands.

IX.   **ON Semiconductor's Motion *In Limine* No. 9 Should Be Denied To The Extent It Seeks To Preclude Evidence Or Argument Regarding The Parties' Claim Construction Positions That Is Highly Relevant To Samsung's State Of Mind For Purposes Of Determining Willful And Indirect Infringement.**

ON Semiconductor's motion *in limine* no. 9 seeks two things:  (i) to preclude experts from reasserting claim construction arguments that differ from the Court's claim construction rulings; and (ii) from "pointing out where the party's arguments have differed from the Court's claim construction."  The first is not disputed—Samsung agrees that neither party's experts should be permitted to re-assert claim construction positions that differ from the Court's constructions.

The second, however, should be denied to the extent ON Semiconductor is permitted to proceed with willful infringement and/or indirect infringement claims.[15]   Indeed, the determination of both willful infringement and indirect infringement depend in part upon Samsung's state of mind.  *See, e.g., BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1381 (Fed. Cir. 2007) ("[I]ndirect liability requires evidence of 'specific intent' to induce infringement.  Another form of indirect infringement, contributory infringement under § 271(c), also requires a mens rea (knowledge) and is limited to sales of components or materials without substantial noninfringing uses."); *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) ("[T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent....  [T]he patentee must also demonstrate that this objectively-

---

[15] Samsung has moved to preclude ON Semiconductor's assertions of willful infringement and indirect infringement. (D.I. 274, 277.)

defined risk ... was either known or so obvious that it should have been known to the accused infringer.") (citation omitted).

Clearly, the various assertions of the parties throughout their negotiations and this case—including claim construction positions—evidence the reasonableness of Samsung's belief that it does not infringe and that the asserted patent claims are invalid. *See, e.g., Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1374 n.4 (Fed. Cir. 2008) ("[W]e conclude that the proper claim construction was a sufficiently close question to foreclose a finding of willfulness...."). Indeed, in the nearly two years this case has been pending, ON Semiconductor has never articulated any basis for asserting infringement under any of Samsung's proposed claim constructions. And ON Semiconductor's infringement contentions under its own claim construction theories have changed significantly throughout the course of the parties' negotiations and this case, further evidencing the reasonableness of Samsung's own belief that it does not infringe any valid ON Semiconductor patent claim. Samsung should not, therefore, be precluded from explaining to the jury the various positions taken by the parties as part of its defense to willfulness and indirect infringement, to the extent that those issues remain in the case.

Accordingly, to the extent ON Semiconductor is permitted to proceed with willful infringement and/or indirect infringement claims, its motion to preclude Samsung from "pointing out where the party's arguments have differed from the Court's claim construction" should be denied.

**X.   ON Semiconductor's Motion *In Limine* No. 10 To Preclude Evidence Or Argument Regarding Settlement Negotiations Should Be Denied Because ON Semiconductor's Own Expert Relies Upon The Negotiations And Because Such Evidence Is Highly Relevant To Willful And Indirect Infringement.**

Based on Federal Rule of Evidence 408, ON Semiconductor's motion *in limine* no. 10 asks the Court to exclude—categorically—evidence "concerning" licensing and settlement

negotiations between Samsung and ON Semiconductor. ON Semiconductor mischaracterizes Samsung's expert report on damages and ignores the limited purpose and scope of the exclusion contemplated by Rule 408.

First, while ON Semiconductor claims that Samsung's damages expert—Carla Mulhern—improperly relies on the settlement negotiations in her rebuttal expert report, it is ON Semiconductor's own damages expert—Brett Reed—whose report expressly relies on the offers made during those negotiations. In his opening report, Mr. Reed discusses the parties' settlement negotiations, including the royalty rate and term (Ex. 26, Reed Opening Report at 21-22), and in concluding that the hypothetical negotiation in this case would lead to a

**REDACTED**

(Ex. 26, *id.* at 25). To rebut that opinion, Ms. Mulhern's rebuttal report discusses the settlement negotiations only to clarify the background surrounding the negotiations. If Mr. Reed is permitted to present opinions based on the parties' settlement offers, then Samsung and Ms. Mulhern must be permitted to rebut those opinions with evidence regarding the settlement negotiations.

Second, evidence concerning the parties' infringement and invalidity positions during the negotiations is highly relevant to rebutting ON Semiconductor's willful infringement and indirect infringement theories, and using the evidence for that purpose is not prohibited by Rule 408.

**REDACTED**

(*See, e.g.*, Ex. 41, ON_00005284-97.)

That evidence is highly relevant to rebutting a willful infringement charge and to rebutting the

intent prong of an indirect infringement claim.[16]  For instance, as Samsung explained in response

to ON Semiconductor's Interrogatory No. 14 (Ex. 39) regarding willful infringement,

## REDACTED

Seagate, 497 F.3d at 1371 (willful infringement requires showing "an

objectively high likelihood that its actions constituted infringement of a valid patent" and that

"this objectively-defined risk … was either known or so obvious that it should have been known

to the accused infringer"); In re Hayes Microcomputer Prods., Inc. Patent Litig., 982 F.2d 1527,

1543 (Fed. Cir. 1992) (willful infringement depends on totality of the circumstances, including

"whether the infringer, once on notice of the patented invention, investigated the scope of the

patent to form a good-faith belief that it was invalid or not infringed").

## REDACTED

y

. DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1307

(Fed. Cir. 2006) (required intent for inducement not shown: "[T]he record contains evidence that

[defendant] did not believe its [product] infringed.  Therefore, it had no intent to infringe.").

Rule 408 does not preclude Samsung from using this kind of evidence for the purpose of

rebutting willfulness and the intent element of indirect infringement.  That is because Rule 408

does not require exclusion of evidence offered to prove a material fact in issue other than the

validity or amount of the claim that is the subject of the settlement discussions.  See, e.g., Orzel

---

[16] Samsung moved in limine to preclude ON Semiconductor from pursuing willful infringement
(D.I. 277, Samsung MIL No. 5) and indirect infringement claims (D.I. 274, Samsung MIL No. 2,
§ I).

*v. City of Wauwatosa Fire Dept.*, 697 F.2d 743, 757 n.26 (7th Cir. 1983) (noting that settlement discussions were admitted to prove collateral issue of mitigation of damages); *Am. Standard Inc. v. Pfizer Inc.*, 722 F. Supp. 86, 136 n.55 (D. Del. 1989) (settlement evidence admissible because "Plaintiff did not offer the evidence to show infringement liability but instead offered it solely for the purpose of proving commercial success" to support patent's validity). Willful infringement and Samsung's alleged intent to induce others to infringe are collateral to the infringement and validity claims that were the subject of the parties' negotiations. Evidence concerning the negotiations is therefore admissible for the purpose of defending against allegations of willfulness and intent.

To the extent Mr. Reed is permitted to offer opinions based on the parties' settlement offers, and to the extent ON Semiconductor is permitted to pursue willful infringement and indirect infringement theories at trial, Samsung respectfully requests that the Court deny ON Semiconductor's motion *in limine* seeking to exclude evidence concerning licensing and settlement negotiations between Samsung and ON Semiconductor.

## CONCLUSION

For the foregoing reasons, Samsung respectfully requests that this Court deny ON Semiconductor's motions *in limine* except as otherwise set forth herein.

26

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Andrew A. Lundgren (No. 4429)
Megan C. Haney (No. 5016)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
302-571-6600
*alundgren@ycst.com*

*Attorneys for Samsung Electronics Co., Ltd.,
Samsung Electronics America, Inc., Samsung
Telecommunications America General, L.L.C.,
Samsung Semiconductor, Inc., and Samsung
Austin Semiconductor, L.L.C.*

OF COUNSEL:

John M. Desmarais
Gregory S. Arovas
Jon T. Hohenthaner
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, NY 10022-4611
212-446-4800
*jdesmarais@kirkland.com*
*garovas@kirkland.com*
*jhohenthaner@kirkland.com*

Edward C. Donovan
Chong S. Park
Gregory F. Corbett
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793
202-879-5000
*edonovan@kirkland.com*
*·cpark@kirkland.com*
*gcorbett@kirkland.com*

Dated:  November 19, 2008

27

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, Esquire, hereby certify that on December 2, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Karen Jacobs Louden, Esquire [*klouden@mnat.com*]
> Morris Nichols Arsht & Tunnell
> 1201 North Market Street
> PO Box 1347
> Wilmington, DE 19899-1347

I further certify that on December 2, 2008, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### BY E-MAIL

> Behrooz Shariati, Esquire [*bshariati@jonesday.com*]
> T. Gregory Lanier, Esquire [*tglanier@jonesday.com*]
> Jones Day
> 1755 Embarcadero Road
> Palo Alto, CA 94303

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *Andrew A. Lundgren*
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
302-571-6600
*alundgren@ycst.com*